# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN¤
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey 07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
*Civil Trial Attorney
°Matrimonial Attorney
^Workers' Compensation Attorney
¤Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

October 13, 2009
Via Electronic Filing & FedEx Overnight Delivery

Hon. Esther Salas, U.S.M.J.
US District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

Re: **Grossbaum vs. Genesis Genetics, et al.**
**Civil Action No.: 07-CV-1359 (HAA)**

Dear Judge Salas:

[Please be advised that the electronic filing of this letter is made without exhibits attached, which are being forwarded via Federal Express overnight delivery.]

This letter will update the Court on the compliance with the Discovery Order entered on September 23, 2009 and set forth reasons why the denial of limited further fact discovery is unfair and prejudicial to the Plaintiffs. This letter also supports our informal application for reconsideration of the Court's ruling on fact discovery. Compliance with the Order of September 23rd is as follows:

1. By Friday, September 25th, the plaintiff provided the *curriculum vitae*s of its experts and treating physician, namely:

    - Dr. Garry Cutting, Professor of Pediatrics and Medicine and Director of the DNA Diagnostic Laboratory, Institute of Genetic Medicine at Johns Hopkins University

    - Dr. Charles Strom, Medical Director, Genetic Testing Center, Nichols Institute, Quest Diagnostics

Hon. Esther Salas, U.S.M.J.
October 13, 2009
Page Two

- Linda Lajterman, RN, a certified life care planner of Life Care Associates

- Dr. Arthur Atlas, Director, Respiratory Center for Children at Morristown Memorial Hospital

- Dr. Matityahu Marcus, an economist

(See copy of the *curriculum vitae*s of Plaintiffs' experts annexed hereto as Exhibit A.)

2. In addition, Dr. Cutting's report (as represented to the Court as being on its way), was received, dated September 29th, and immediately forwarded to the Defendants.

3. As discussed with the Court at oral argument on September 21st, Dr. Charles Strom has now agreed to act as an expert and will be providing a report as anticipated by November 19th.

As may be recognized from a perusal of the *curriculum vitae*s of Dr. Cutting and Dr. Strom, the Court may appreciate that their areas of expertise are different: Dr. Cutting is a treating physician specialist in genetic medicine in a medical center/hospital setting and Dr. Strom is a laboratory based scientist in genetic medicine.

Needless to say, fact discovery in this case is not similar to that which occurs in the ordinary trauma case where eyewitnesses and parties offer empirical facts and circumstances usually known to both sides. In this type of case with specialized and highly technical medicine, counsel depends on the experts to guide our fact investigation. In this case, the record will show as reported in our prior correspondence to the Court, that Plaintiffs have assiduously pursued fact discovery of the Defendants (Defendant Hughes and five NYU employees in New York City) as these witness were made available by defense counsel, albeit spread over a number of months, largely due to the availability of the medical service providers. Likewise, when discovery was not forthcoming from the Defendants, it was our letters, not those of the Defendants (a fact which seemed to escape the Court's attention at oral argument) that resulted in several case management conferences and subsequent case management orders (see our letter dated September 2, 2009 annexed hereto as Exhibit B).

For example:

| Our letter to Court | Case Management Conference |
| --- | --- |
| Letter dated 2/21/08 | 3/3/08 Second Case Management Order |
| Letter dated 1/22/09 | Conference 2/11/09 |
| Letter dated 5/6/09 | Conference 6/3/09 |
| Letter dated 8/25/09 | Conference 9/21/09 |

Furthermore, our letter expressly put forth my concern that delays by the Defendants prompted addressing the scheduling order would adversely affect the Plaintiff (see copy of letter to Your Honor dated January 22, 2009 annexed hereto as Exhibit C).

In addition, if the Court would further review our letter of September 9, 2009, it would be reminded that the complete chart of Genesis Genetics was not made available to the Plaintiffs until May 9, 2009, notwithstanding our numerous requests that began pre-litigation in January 2007.

My request at this time is to allow the following fact discovery:

1. A deposition of the Laboratory Director at Genesis Genetics to be taken in Detroit at any mutually convenient time hereafter;

2. Demand for documents relating to the operation of the Genesis Genetics Laboratory, licensing and accreditation; and

3. Request for admissions to eliminate the need for time-consuming proofs on facts that cannot be disputed.

One further comment is deemed appropriate on arguments of the Defendants made at oral argument and in a subsequent letter from Mr. Hamad on behalf of NYU dated September 30, 2009 insinuating that plaintiff is burning experts (see Mr. Hamad's letter annexed hereto as Exhibit D). The disingenuousness of this claim may be appreciated by the following:

(a) The literature on this subject as reflected in the *curriculum vitae*s of Dr. Strom and Dr. Cutting lists a number of co-authors who are available with similar specialties to Dr. Cutting and Dr. Strom who certainly have not been involved in consultation with the Plaintiffs;

Hon. Esther Salas, U.S.M.J.
October 13, 2009
Page Four

(b) The Defendants have not identified any attempts to gain an evaluation of the case which was refused because of Plaintiffs' prior contact. Also, the Defendant's should advise the Court whether experts have been consulted who have agreed to review the case which would certainly moot their complaint. Failing to do so renders Defendant's complaint specious; and

(c) Enclosed is a list of clinics (see a copy of the list annexed hereto as Exhibit E), many of them university medical center based fertility clinics, where similar genetic testing (albeit except PGD) is provided to that offered by NYU throughout the United States.

While Plaintiffs attempted to contact several, there were no responses and therefore the entire field is available to the Defendants as a source of expertise. Of course it goes without saying that the merits of the defense, or the lack thereof, may have something to do with the availability of defense experts. Furthermore, Dr. Hughes is a member of the leading societies on genetic testing and PGD, both national and international which entire membership may be available to him for consultation.

Finally, if the Court is not disposed to deal with this request in the arena of an in person or telephone conference call, then we respectfully request leave to file a formal motion for which permission is required by the Court's original case management order.

Respectfully submitted,

Lewis Stein

LS:lh/svd
cc: Sarah Blaine, Esq.- via electronic filing
Stephen N. Leuchtman, Esq.- via electronic filing
Jay A. Hamad, Esq.- via electronic filing