

**Sarah Blaine**
Associate

Tel  973 422 6728
Fax  973 422 6729

sblaine@lowenstein.com

October 16, 2009

VIA THE COURT'S ECF SYSTEM
Honorable Esther Salas, U.S.M.J.
United States District Court
for the District of New Jersey
Martin Luther King, Jr.
Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ  07101

Re:    *Grossbaum v. Genesis Genetics, LLC, et al.;*
       **Civil Action No. 07-1359(GEB)(ES)**

Dear Judge Salas:

This firm, along with Stephen N. Leuchtman, of counsel to the Trowbridge Law Firm, represents defendants Genesis Genetics Institute, LLC and Dr. Mark R. Hughes (collectively, "Genesis") in the above-referenced civil litigation.  We write in response to Plaintiffs' October 13, 2009 letter to the Court, in which Plaintiffs requested that the Court reopen fact discovery.[1]  Plaintiffs' request should be denied.

## Relevant Procedural History

As the Court no doubt recalls, pursuant to the Court's June 10, 2009 case management order ("June 10th CMO"), fact discovery closed on August 3, 2009.  On August 25, 2009, Plaintiffs wrote to the Court asking for additional time to meet the June 10th CMO's deadline for service of expert reports, which had passed 11 days earlier.  Defendants objected.  On September 21, 2009, the Court held an in-person status conference.  On September 23, 2009, the Court issued its seventh case management order, which readjusted the expert discovery schedule in accordance with Plaintiffs' request.

At the September 21, 2009 conference, it also came to the Court's attention that although Plaintiffs had not petitioned the Court for permission to take additional fact discovery, they had mentioned this possibility to Genesis.  *See Exhibit A* (Aug. 24, 2009 Letter from L. Stein to S. Leuchtman); *Exhibit B* at 14:1-11 (September 21, 2009 Transcript of Case Management Conference) (requesting deposition of Genesis's laboratory director).  Genesis had refused the

---

[1] Plaintiffs' letter also addresses defendants' "insinuation" that plaintiff was engaged in a campaign to "burn experts."  To the extent that this discussion merits a response, Genesis would like to assure the Court that it has identified its experts and is taking steps to ensure that its reports are served in a timely fashion.

Honorable Esther Salas, U.S.M.J.                                    October 16, 2009
Page 2

request, and the Court upheld Genesis's position, ruling that there was no way it was going to reopen fact discovery. *Exhibit A* at 4:21-5:5; *see also* 28:23-25 ("There will be no additional fact discovery taken in this case").

Nevertheless, Plaintiffs have now requested that the Court either grant their "informal application" to reopen fact discovery or allow them to file a formal motion seeking additional fact discovery. Specifically, Plaintiffs request that the Court allow them to take additional document discovery, conduct at least one additional deposition, and propound requests for admissions. Because Plaintiffs' request is both procedurally and substantively deficient, it should be denied.

### Plaintiffs' Application Is Procedurally Defective And Should Be Denied

Procedurally, Plaintiffs have effectively moved for permission to file a motion for reconsideration. Local Civil Rule 7.1(i) governs motions for reconsideration in this district. It provides: "A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge." The tenth business day after the Court's September 21, 2009 bench ruling was October 5, 2009. Yet Plaintiffs -- without explanation -- did not seek leave to reopen the fact discovery question until October 13, 2009.[2] Plaintiffs' failure to comply with the Local Rules, without more, is reason enough to deny their request. *See, e.g. XL Specialty Insurance Co. v. Westmoreland Coal Co.*, 2006 U.S. Dist. LEXIS 54233 (D.N.J. Aug. 4, 2006) (Brown, J.) ("Defendants failed to offer an explanation regarding why they failed to file their motion in a timely fashion, or make any request for an extension of time to file the motion beyond the ten-day limitation period set by the local rules. This alone is sufficient to deny Defendants' motion").

Plaintiffs' application to make a formal motion seeking additional fact discovery (whether styled as a motion for reconsideration or a new application) should also be denied. Plaintiffs were given the opportunity to make their record on this issue at the September 21st conference. They then followed that opportunity up with this untimely and frivolous application for reconsideration. Plaintiffs are not entitled to a third bite at the apple.

### Plaintiffs' Application is Substantively Defective And Should Be Denied

Even if the Court is not inclined to deny the Plaintiffs' request due to their violation of the Local Rules, Plaintiffs' request for reconsideration of the ruling that fact discovery is now closed should be denied on substantive grounds. Local Civil Rule 7.1(i) requires Plaintiffs to set out the "matter or controlling decisions . . . which the party believes the Judge or Magistrate Judge has overlooked." Plaintiffs have not -- and cannot -- identify any matter the Court overlooked in reaching its September 21, 2009 ruling that fact discovery is -- and remains -- closed.

---

[2] Fact discovery was not addressed (except in its absence) in the Court's September 23, 2009 Case Management Order ("Sept. 23 CMO"). But even if September 23rd is the relevant date from which to compute Plaintiffs' time to move to reconsider, Plaintiffs' time elapsed on October 7, 2009.

**LOWENSTEIN Sandler**
ATTORNEYS AT LAW

Honorable Esther Salas, U.S.M.J.                                           October 16, 2009
Page 3

Plaintiffs' October 13th letter sets out three arguments in favor of reopening fact discovery. *First*, it states (incorrectly) that it was Plaintiffs' letters alone which resulted in several case management conferences, and notes that this "fact seemed to escape the Court's attention at oral argument." The argument is irrelevant. The question of which party's letters led the Court to schedule prior case management conferences is irrelevant to whether fact discovery should be reopened. Indeed, it weighs against Plaintiffs' position, as it demonstrates that Plaintiffs have the capacity and knowledge to timely petition the Court for relief when it suits them to do so. The point is that Plaintiffs never requested an extension of the August 3rd fact discovery deadline from the Court; defendants raised the issue at the September 21 conference to forestall any such application, which had been hinted at in correspondence they had received from Plaintiffs. For Plaintiffs to seek additional fact discovery at this late date makes a mockery of the Cour's prior case management orders, regardless of whether those orders were the product of conferences held at the request of Plaintiffs or defendants. Furthermore, Plaintiffs made this same argument at the September 21, 2009 hearing. *See Exhibit A* at 6:19 - 7:1. Far from overlooking it, the Court found Plaintiffs' recitation of the history of past discovery disputes to be unpersuasive.

*Second*, Plaintiffs reiterate that they received Genesis's complete chart on May 9, 2009 and imply that because the chart was not complete earlier, this somehow entitles them to additional fact discovery now. But May 9, 2009 was a month *before* the Court issued its June 10th CMO, which closed fact discovery on August 3, 2009. Thus, Plaintiffs had all materials owing from Genesis almost three months before the close of fact discovery (and weeks before the final fact discovery deadline was set) -- yet Plaintiffs did nothing during those three months to pursue the fact discovery they now claim to so desperately need. Again, Plaintiffs' own arguments weigh in favor of denying their request.

*Third*, if it were really true that Plaintiffs required the guidance of experts to adequately develop the factual record, then it was incumbent upon Plaintiffs to engage their experts in time to guide fact discovery, rather than waiting until months after fact discovery closed to even identify their experts. *See Exhibit C* (Oct. 13, 2009 Letter from L. Stein to the Court) ("In this type of case with specialized and highly technical medicine, counsel depends on the experts to guide our fact investigation"). Plaintiffs' failure to develop the factual record during the fact discovery period should not be rewarded by granting them a "do-over" of their apparently inadequate factual investigation.

## Genesis Should Be Awarded Its Attorneys' Fees and Costs

Finally, because Plaintiffs have once again failed to comply with the Local Rules, and because they have failed to offer a shred of new argument, a single new fact, or any new controlling authority in favor of their application for reconsideration, Genesis respectfully requests that the



Honorable Esther Salas, U.S.M.J.                                    October 16, 2009
Page 4

Court -- pursuant to Federal Rule of Civil Procedure 37(a)(5)(B) -- award it the attorneys' fees and costs it incurred opposing this application.

Respectfully submitted,

Sarah Blaine

SB:ep

10/16/09 12800278.1
Enclosures
cc:       All counsel via the Court's ECF system



# EXHIBIT A

Aug. 24. 2009 4:01PM   Nusbaum Stein Goldstein Bronstei         No. 2054   P. 1/1

# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN‡
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey 07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
*Civil Trial Attorney
•Matrimonial Attorney
^Workers' Compensation Attorney
‡Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

August 24, 2009
Sent Via Fax 313-259-3474

Stephen N. Leuchtman, PC
1380 East Jefferson Avenue
Detroit, MI 48207

    Re:   Grossbaum v. Genesis Genetics Institute, etal

Dear Mr. Leuchtman:

    Thank you for your letter of August 19th . You are correct that we have been acutely aware of the calendar dates in the current Court Management Order. However it being August, we are on vacation two-thirds of every week during this month.

    More significantly, we have been awaiting, almost daily, receipt of our expert's report. I am sure I need not remind you that plaintiff was not provided with the full and complete records of the studies performed at Genesis Genetics until approximately three months ago - after pursuing the records for a year and a half. Frankly we were only moments away from advising the US Magistrate of the circumstances concerning the delay in providing this expert report.

    In addition, we have determined to seek the deposition of the Laboratory Director at Genesis Genetics which by this letter I now ask that you arrange, via a discussion with my office staff, a convenient date for this to occur.

    Under separate cover we will forward a copy of our letter to the Magistrate advising of the delay in submitting the expert's report.

    Very truly yours,

Lewis Stein

LS:lh
Cc:  R. Scott Eichhorn, Esq. via Fax 973-618-0685
     Sarah Blaine, Esq. via Fax 973-597-2400

# EXHIBIT B

1              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
2    _____
     CHAYA GROSSBAUM, et al.,      :   Case No. 07-cv-1359(GEB)
3                                  :
              Plaintiffs,          :
4                                  :
         vs.                       :
5                                  :
     GENESIS GENETIC INSTITUTE,    :   Newark, New Jersey
6    LLC, of the State of          :   Monday, September 21, 2009
     Michigan, et al.,             :   2:29 p.m.
7                                  :
              Defendants.          :
8    _____

            TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
9         BEFORE THE HONORABLE ESTHER SALAS, U.S.M.J.

10
     APPEARANCES:
11   For the Plaintiffs:            LEWIS STEIN, ESQ.
                                    (Nusbaum, Stein, Goldstein,
12                                  Bronstein & Kron, PA)
                                    20 COMMERCE BOULEVARD
13                                  SUCCASUNNA, NJ 07876

14   For the Defendants:
     Genesis Genetic Institute,     SARAH LYNN BLAINE, ESQ.
15   LLC, and Mark R. Hughes        (Lowenstein Sandler, PC)
                                    65 LIVINGSTON AVENUE
16                                  ROSELAND, NJ 07068

17                                  STEPHEN N. LEUCHTMAN, ESQ.
                                    (Stephen N. Leuchtman, P.C.)
18                                  1380 East Jefferson Ave
                                    Detroit, MI 48207
19
     New York University           JAMELE A. HAMAD, ESQ.
20   Hospitals Center              (Marshall, Dennehey, Warner,
     (Telephonically)              Coleman & Goggin)
21                                  425 Eagle Rock Avenue - Suite 302
                                    Roseland, NJ 07068
22
     Transcription Company:         KLJ Transcription Service
23                                  246 Wilson Street
                                    Saddle Brook, NJ  07663
24                                  (201)703-1670 - Fax (201)703-5623

25   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.

1

I N D E X
9/21/09

2

                                            Page
3    REVIEW OF PREVIOUS CMO                   3

4

     ARGUMENT
5      By Mr. Stein                           5
       By Mr. Leuchtman                      16
6      By Ms. Blaine                         21
       By Mr. Hamad                          22

7

8    COURT DECISION                          24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy

3

1        (Proceedings begin at p.m.)

2        THE COURT:  Be seated.

3        Okay.  We're on the record in the matter of <u>Grossbaum</u>

4  <u>v Genesis Genetics, et al</u>., Civil Action Number -- Civil Action

5  Number 07-1359.

6        Can I have appearances of counsel please?

7        MR. STEIN:  Yes.  For the plaintiff, Lewis Stein of

8  Nusbaum, Stein, Goldstein, Bronstein & Kron.

9        THE COURT:  For the defendants.

10       MS. BLAINE:  For the defendants Sarah Blaine of

11 Lowenstein Sandler.

12       MR. LEUCHTMAN:  Stephen Leuchtman of Stephen N.

13 Leuchtman, PC, appearing pro hac vice on behalf of defendants

14 Genesis Genetics and Hughes.

15       MR. HAMAD:  (Telephonically) . . . Hamad from the law

16 firm of Marshall Dennehey on behalf of the NYU defendants.

17       THE COURT:  All right.  And Mr. Hamad is joining us

18 telephonically today due to a conflict.

19       The Court would note that I conducted an in-chambers

20 conference with the attorneys to address a series of letters

21 that I received.  I would note that, indeed, discovery in this

22 case, pursuant to my last scheduling order which is dated June

23 10th, 2009, I had ordered that all fact discovery, including

24 depositions is to be concluded no later than August 3rd, 2009.

25 Plaintiff is to provide all liability and damage expert reports

Colloquy                    4

1   no later than August 14th, 2009.  Defendants' expert reports

2   are to be served on later -- no later than October 1.  And a

3   telephonic conference was to be held on Wednesday, October 7th

4   at 10:30 before this Court.

5            I would note that in light of the August 25th letters

6   and the series of letters that came thereafter, I moved up the

7   conference from the 7th of October to today to address -- to

8   address the -- the nature of these letters, in particular, Mr.

9   Stein's advising the court that he was not going to be able to

10  make the August 14th deadline that is set forth in the last

11  scheduling order that was issued in this case and that August

12  14th letter, again -- August 14th deadline, again, was for all

13  liability and damage expert reports.  I only received notice

14  that, indeed, that deadline was not met through the -- the,

15  rather, August 25th letter.  And that, of course, I addressed

16  off the record with counsel.

17           I would also note that I have advised counsel that

18  it's my intention to allow each side to make their respective

19  argument, however, I was going to permit Mr. Stein, over the

20  objections of defendants, additional time to submit his

21  liability and damages expert.  There's also an issue that was

22  raised, apparently by Mr. Stein to a letter to counsel with

23  respect to requesting to -- to open or reopen fact discovery,

24  which as I said earlier, closed on August 3rd of this year and

25  I have already advised Mr. Stein that I am not inclined, in

Argument - Stein                                          5

1   light of the procedural history of this case and in light of

2   the fact that, quite frankly, I have had to set a number of

3   scheduling orders in this case, that there is no way I was

4   going to reopen fact discovery, which, again, closed on August

5   3rd.  And I have yet to have any formal notification of that

6   intention.

7           So, Mr. Stein, I'll let you make whatever arguments

8   you want to make, but I've pretty much indicated to decide

9   where I'm going with this one.  Now it's just an issue of

10  timing and getting these reports in and allowing -- counsel has

11  already requested -- defense counsel, that is, has already

12  requested 60 days, which was the original agreement to respond

13  to any and all expert reports that are served upon them.

14          I'll hear you now, sir.

15          MR. STEIN:  Thank you, Your Honor.

16          Your Honor, I don't need -- think it's necessary for

17  me to repeat everything that was said in our conference in

18  chambers; however, I would just like to point out one aspect of

19  the adherence to the discovery orders that the Court -- to the

20  management orders that the Court has entered.

21          I take note that the Court's initial scheduling order

22  was entered in, I believe, March of 2008.

23          THE COURT:  No.  December 12th was the original one.

24          MR. STEIN:  Okay.  Well, I had a second pretrial

25  scheduling order.  I'm sorry, I misread that.

1          THE COURT:  December 12th, '07 was the first

2   scheduling order --

3          MR. STEIN:  Okay.

4          THE COURT:  -- ever issued in this case.

5          MR. STEIN:  All right.  Then on -- on -- in March of

6   2008, I have a second pretrial scheduling order, which provided

7   that interrogatories -- the parties may serve limited 25 single

8   -- number five questions, which shall be responded to by May

9   12th of 2008.  That was the Court's order.

10          I take note that on November 18th -- I have a letter

11   here, I don't know if I provided it to the Court, to Mr.

12   Leuchtman, it was a three-line letter which said that "My

13   attention is to notify Judge Salas tomorrow that we do not have

14   answers to interrogatories on behalf of the defendants Mark

15   Hughes and Genesis Genetics in the above referenced matter.

16   That letter was faxed on November 18th, 2008."

17          That's just an example of some of the delay in

18   pretrial discovery that was entered into in this case.

19          In addition to that, I have sent -- I think four

20   letters to the Court over the life of the discovery case

21   management advising the Court of the difficulties that we were

22   having in obtaining discovery in this case, indicating that,

23   first, we did not at any time disrespect the Court's orders and

24   ignore it, and at one time even expressed our concern that the

25   plaintiff should not be harmed as a result of the delays in the

1    presentation of our case.

2          Now with that background, and I think -- and I ask the

3    -- and, in fact, I sent a letter to the Court early on that I

4    was reading here, I forgot the date of it, which I -- I have

5    the date of it, in January of 2008, I sent the Court a letter

6    which I believe was a confidential letter, total pages three,

7    because I don't see any copies, it was faxed, in which I

8    summarized for the Court some of the difficulties that the

9    plaintiff was having in obtaining expertise.

10         To draw the picture here of expert, as I indicated to

11   the Court, there are only three laboratories in the United

12   States that I knew of and there may be four, which have the --

13   which do the same kind of analysis that this defendant does.

14   And we were running into a problem with getting expertise in

15   that context because when I contacted the people in Chicago --

16   there's one in Chicago, one in Detroit, on e in -- and one was

17   in New Jersey at St. Barnabas.  And I understand the St.

18   Barnabas Laboratory didn't do the same kind of testing

19   entirely, but they had a relationship with NYU that made it

20   improbable that NYU was going -- that they were going to be

21   available to me as an expert.  But I was even -- it was even

22   suggested I might have to go to Europe.

23         We have been able to -- we have been able to get

24   consultation with Dr. Cutting, who I believe I describe to the

25   Court at one point as being the -- the director at Johns

1   Hopkins of the infertility clinic and that process, and have

2   him advise us, in view of the very specialized nature of the

3   issues connected to this case.

4          We, at the present -- and I would also only mention to

5   the Court by way of personal privilege, that for many years,

6   and since the time when the state court system was essentially

7   quiet and -- in August, I have -- I take my vacation during the

8   month of August to a home in the Berkshires, I come down two

9   days a week just to try to keep things going, but I'm away five

10  nights a week during August, so when this -- these things were

11  all happening.

12         I did not want to inject my own personal needs, but I

13  think that in light of some of the other comments that were

14  made, I think the Court should recognize in this case that the

15  last thing that we are, are disrespectful of the Court or its

16  court orders, as indicated by our numerous that we've made.  We

17  work at these cases and we try to put them together and we --

18  and we appreciate that delay -- that this Court and the role of

19  the court system and the magistrate judge system is to reduce

20  the time between litigation events, so as to reduce delay in

21  connection with the courts.

22         Another personal aside, I had privilege to be at the

23  National Conference on Court Delay Reduction in Denver in 1981

24  or '2, which first set up this system of moving cases by

25  reducing the time.

Argument - Stein                                9

1          So I have full respect for what you're doing, but I

2     ask the Court only to respect the fact that we -- we, too, are

3     doing our best.

4          Now here's where we're at in this case.  I have -- I

5     have Dr. Cutting, and I believe as a result of a phone call I

6     had last week that I should be able to have his report, I

7     should be able to have his report within the next ten days to

8     two weeks, Dr. Cutting's report.

9          I have -- I have been advised as a result of

10    information that's come to me recently that there are -- there

11    is a wealth of knowledge about this subject matter that has not

12    been available to me, and that involves microbiologists and the

13    people who were very early on in the development of this type

14    of what we call PGD studying, that's all new and much of the

15    literature since 1998.  I only this last week -- I was promised

16    two weeks ago a battery of materials that I did not have and I

17    was not exposed to, which discussed PGD testing and the

18    involvement of Dr. Hughes in the -- who is a national figure in

19    terms of producing this kind of material.

20         So I now have these materials.

21         THE COURT:  Who was -- where did you get these

22    materials from?  Are you saying that the defendants owed you

23    these materials?

24         MR. STEIN:  No, I'm not saying -- the defendants

25    didn't owe me that material.  What the defendant owed me and

1   what we mentioned in chambers that this is -- that these pages

2   were only a small element, I can explain that to you.  The

3   testing of these gene mutations is done on graphs which show

4   what's called -- and it's a very technical term, allele drop

5   out; meaning, the cells that are studied sometimes are not

6   available in the study.  They drop out of the study and when

7   that happens, that increases the risk that there -- that the

8   mutation will not be identified, when they approve of the

9   embryo.

10          And so when they -- when they do these studies, they

11  do of both the father and the mother.  And when they do these

12  studies, the studies are reflected in this graph of two colors.

13  Well, we didn't get -- maybe only a few pages, but we didn't

14  get from -- and I would not know this, from the defendant

15  Genesis Genetics the father's study of the -- of these genes.

16  We got only the mothers.  So I was then told after Dr. Cutting

17  got the records, that you don't have the whole record and if

18  they don't -- if they didn't study the father and if they

19  didn't do appropriate work on the father's, then that's a major

20  -- it was incomprehensible that you could have his final report

21  without doing that, that's what I was told.

22          So that's why it's not an insignificant matter, what

23  they were -- what we didn't get, whether it was wilful or

24  inadvertent from Genesis Genetics.  And so that's why it's --

25  we didn't get from our own expert a concrete opinion as to the

1    standard of care that was being used by the laboratory.

2          There's another issue, too.  There is a strong

3    indication that Dr. Hughes did not use the state of the art

4    methodology that was being used to analyze these embryos, and

5    so we have been -- and that's what we were focusing on and the

6    -- when Dr. Hughes explained why he didn't use these things at

7    his deposition in February -- and, you know, we take a

8    deposition February 18th, we don't get the transcript back for

9    two or three weeks, so we're working in the middle of March on

10   this subject.  And that's when we didn't -- that's when it

11   became important for us to have the rest of the records and

12   that's when I first began to understand some of the issues in

13   the case.

14         THE COURT:  So you're telling me in March.

15         MR. STEIN:  In March is the first time I began to

16   understand some of the issues, but I didn't have a complete

17   understanding of the issues until the January -- the July

18   meeting with Dr. Cutting, where I traveled to Baltimore to meet

19   with him and he explained to us what was going on.

20         In fact, even at that time he said he had to consult

21   with one of his laboratory technicians about the nature of the

22   -- of the graphs that we had.

23         So, you know, while -- it is easy for the Court to

24   look retrospectively and say you could have done this and you

25   could have done that, we're working in an area where we don't

1   always appreciate the significance of what we're getting.

2   Where does this lead us?

3           I am exposing now to the defendants a fact that --

4   that probably to their benefit, but to -- it does involve a

5   knowledge of what's going on.

6           I said there are only three laboratories in the United

7   States.  I was under the impression until last week that the

8   laboratory in Chicago would provide me with an expert whose

9   name I mentioned in the letter to you, Dr. Sharitzki

10  (phonetic).  I had spoken to her and she had indicated that she

11  would be available to us.  But, candidly, she's not -- her

12  employer, the laboratory, said uh-uh, we're too close to Dr.

13  Hughes, we're a competitor of Dr. Hughes, we meet him on too

14  many occasions, they backed down.  But I got enough -- before

15  they backed down, I got enough information about the literature

16  and other persons that I have been in contact with another --

17  the other laboratory in California, who appears to be willing

18  to -- to help us.

19          So because of the limited places we could go for

20  expertise, and it became -- that's where I'm at now with regard

21  to the liability.

22          I would hope that -- and expect that I will have -- as

23  I said, Dr. Cutting's report within two weeks.  I would ask the

24  Court for 45 days to get whatever subsequent expert report

25  report I needed from -- from the laboratory in California.  I

1   would ask the Court -- now I've also met -- after my meeting

2   with Dr. Cutting in July, I met with Dr. Atlas, who was the

3   treating doctor at the Cystic Fibrosis Center at Morristown

4   Memorial Hospital, who I'm confident -- I believe would give me

5   a letter within the next 30 days so I would have the treating

6   doctor's evaluation and prognosis.

7          I've also spoken to the life care planner at -- at --

8   I forgot her name, but it's a North Jersey life care planner

9   who has previous experience in cystic fibrosis.  And I would

10  think that I could have her analysis and report within 60 days,

11  Your Honor.

12         And I ask for only one other --

13         THE COURT:  Wait a minute.  I'm trying to understand

14  even for the request that you're making.  You're asking for --

15  for not 60 days from the date in which you receive other days.

16         MR. STEIN:  No.  Sixty --

17         THE COURT:  Sixty days from --

18         MR. STEIN:  -- days from today.

19         THE COURT:  -- today.

20         MR. STEIN:  Absolutely.

21         THE COURT:  Okay.

22         MR. STEIN:  Yes.

23         THE COURT:  For everything?

24         MR. STEIN:  For everything.

25         THE COURT:  Okay.

1         MR. STEIN:  And I asked for only one opportunity,

2   within the next two weeks, I would like to -- and this is not

3   an extensive request to open discovery.  I indicated that I --

4   I asked for the person who -- the laboratory -- did the

5   laboratory -- was in charge of the laboratory work at Genesis

6   Genetics.  I would just like to go to Detroit and take that

7   deposition so that I could fill in one -- there is one -- when

8   it was explained to me, and just last week, when -- because I

9   was trying to find out why Dr. Hughes didn't do the testing.

10  It was explained to me that there were various possibilities

11  and I wanted to go to Detroit and find that out.

12        So it's not a -- you know, as I said in my last letter

13  to you, in a lot of respects, whether it fits into the -- I

14  know the Court has guidelines and dates and God forbid a case

15  should be started in 2007, but we really didn't start a lot of

16  this case until the beginning of May of 2009.  So I ask the

17  Court to be considerate in that regard, under -- taking into

18  consideration the uniqueness of the medicine that's involved in

19  this case and give us the privilege of undertaking discovery in

20  the fashion that we have.

21        And I'm sure the Court would recognize that we are not

22  and were not dilatory.  The biggest piece of dilatoriness that

23  we did, as I would freely admit to having made a mistake on, is

24  not having that written that letter ten days earlier to Your

25  Honor when that last date came.  And that -- you know, it was

Colloquy                                    15

1    August and I was otherwise occupied.

2            THE COURT:  All right.  The record will reflect there

3    are five -- actually, six scheduling orders that were issued in

4    this case; and then, of course, I'll hear from defense counsel.

5            The first scheduling order was issued on December

6    12th, 2007.  The second scheduling order was issued on March

7    3rd, 2008.  The third scheduling order was issued on June 4th,

8    2008.  The fourth scheduling order, amended scheduling order

9    was issued on October 14th, 2008.  The fifth amended scheduling

10   order was issued on February 19th, 2009.  The sixth amended

11   scheduling order was issued on June 10, 2009.

12           And I would also note that, quite frankly, I think the

13   Court has done the exact opposite.  Whenever counsel on either

14   side has expressed a problem with respect to scheduling,

15   whether, indeed, they were in receipt of all discovery and so

16   forth, I gladly entered into amended scheduling orders with the

17   parties, I gladly held conference calls.  And, in fact, the

18   record will also reflect that this Court, upon notification by

19   either side made itself ready, willing, and able to address any

20   and all issues.  In fact, I held a conference call on May 27th,

21   2007.  I held another conference call on October 6th, 2007.  I

22   held another conference call on -- on February 11th, 2009.  And

23   I held another conference call on June 3rd, 2009, of which I

24   discussed with counsel that day what remained, what we needed

25   time on.  And I set what I thought all counsel were in

Argument - Leuchtman                16

1   agreement with, which was a -- a final scheduling order.  I

2   come to find out that, indeed, it's not, that we yet again have

3   additional problems with respect to discovery.

4          But I think -- I wanted to make sure that the record

5   did reflect that this Court has entered and set six different

6   scheduling orders based on counsel's request.

7          I'll hear from you now, Counsel.

8          MR. LEUCHTMAN:  Your Honor, thank you.

9          If I may, I just want to -- for the record Stephen

10  Leuchtman on behalf of Genesis and Hughes.

11         I would like to address a couple of points and then if

12  I may turn the floor over to Ms. Blaine, who has a more

13  detailed response.

14         But something came up -- if I may.  Is that okay?

15         THE COURT:  Absolutely.

16         MR. LEUCHTMAN:  All right.  Two things, and I think we

17  can probably dispose of this quickly.  The last deposition

18  taken in this case was of Alexis Adler, who is an embryologist

19  at NYU, and that deposition was taken in the afternoon of July

20  13.  At that time, Mr. Stein mentioned to me that he would like

21  to take the deposition of some employee of Genesis Genetics,

22  and I said, well, all right, and then I never heard anything

23  since.  And this conversation -- it's the only time Mr. Stein

24  and I ever talked about any further depositions of any Genesis

25  personnel.  And that conversation was held exactly three weeks

1    before the discovery cutoff.  I got no letter.  I got no

2    notice.  I got no follow-up phone call.  And I figured that we

3    had all just moved on and the discovery deadline not only came

4    and went on August 3rd, but it's very long gone.

5            The other thing -- and I'm not exactly sure what

6    context to put this in, but as Mr. Stein has been talking about

7    his contact with various experts, there is a practice that I

8    have witnessed that is disturbing to me,  I've seen it happen

9    other times, where there are a limited number of experts in a

10   field.  It may be, let's say, pediatric endocrinology, or some

11   very narrow subspecialty of a subspecialty, where an attorney

12   representing someone will go out and consult and there may be

13   only three or four experts available nationwide, or people at

14   least who will do forensic work.  And so at least a couple of

15   which are typically hired by defendants.  So plaintiffs will

16   send records to all of them, and this practice is known as

17   burning experts.  And I now know that of the three or maybe

18   four people in North America who do this work, besides Mark

19   Hughes, Mr. Stein has talked to one, who begged off, and now

20   he's approached another and shared facts with that person.

21           So I'm concerned that two potential experts for the

22   defendant have been burned, have been put in a position where

23   if we go to them after we get an affirmative report, assuming

24   we ever get one, and we go to these experts and say, well, we

25   would like you to help Mark Hughes out and they say, well,

1   geeze, sorry, we ethically can't do that because we talked to

2   Lewis Stein.

3           And even on this late date, we don't know the name of

4   the lab in California or the name of the individual there who

5   does PGD, and I'd certainly at least like to know that, but I'm

6   more concerned, and this is why we think summary judgment is

7   perhaps appropriate at this juncture in this case, with the

8   fact that not only has the Court had the plaintiff's nose

9   thumbed at it, but the bridges to our potential experts have

10  been burned in the process.  And at the very least, do what

11  I've already done, is state on the record that this is a major

12  concern in this case with a limited availability of experts,

13  but also ask Mr. Stein on the record, who is this lab in

14  California and who is the physician or Ph.D. who he intends to

15  potentially use as an expert.  That's information that's vital

16  before we do anything else.  And with that said, I'll ask that

17  the Court ask counsel for that information and then turn the

18  Court over to Ms. Blaine.

19          THE COURT:  Mr. Stein, identify for the record the lab

20  in California and the physician you spoke to.

21          MR. STEIN:  Yes.  His name is Charles Sturm.  And

22  it's --

23          THE COURT:  Charles what?

24          MR. STEIN:  Sturm, I believe it is, S-t-u-r-m.

25          And I'll be candid with the Court, exactly what Dr.

1   Sturm told me.  Dr. Sturm said that he wants to help me;

2   however, he is chief of genetic medicine for Quest Laboratories

3   in the United States and that he would have to get permission

4   from his board to be an expert in my case.  He knows -- when I

5   -- he knows about some of the problems associated with genetic

6   -- Genesis Genetics and he said if his board doesn't allow him,

7   he will give me the name of someone else connected to that

8   program and I will have it.

9           Now that conversation took place ten days ago and I

10  haven't heard back from Dr. Sturm to indicate that the board at

11  Genesis -- you know, the Quest Laboratories --

12          THE COURT:  So you don't have an expert, as you stand

13  here be -- today?

14          MR. STEIN:  I expect to have the name of the person

15  there who will help me, but I can't say to the Court, other

16  than that they've indicated that they will help me in a matter

17  of a week.  So, you know, I would expect that I could -- it's

18  been ten days since we sent the letter out to California and I

19  expect that I would -- I didn't get a chance to call him today,

20  but I will be calling there tomorrow to find out, you know, the

21  fact that --

22          THE COURT:  Wouldn't it have been prudent for you to

23  call?

24          I mean, we started this conference today at 1:30.

25  Wouldn't it have been prudent?  Not only have we blown the

1   expert deadline, which was August 14th, as you stand here today

2   you're telling me you don't have an expert; and, yet, you're

3   making representations to me that you're going to be able to

4   have a report within a specified period and we still don't know

5   who the expert is.

6           MR. STEIN:  Precisely -- that's correct.  Precisely,

7   no.  But I do know -- I do have some identification of where

8   the expert is coming from.  And, frankly, I didn't choose to

9   call California before I left, 12 o'clock, to come down here --

10  until after 12 to come down here and knowing the three-hour

11  difference.  It occurred to me to call California this morning,

12  but because of the time difference, I deferred on that.

13          And I would ask the Court for a matter of personal

14  privilege.  There was a doctor's deposition scheduled.  I

15  didn't appreciate that I had to be -- that our -- that our

16  meeting would be taking -- can I make a phone call?

17          THE COURT:  Not right now.

18          MR. STEIN:  Okay.

19          THE COURT:  Counsel, we're in the middle of oral

20  argument --

21          MR. STEIN:  All right.

22          THE COURT:  -- in which I'm trying to get to the

23  bottom.  I still have an oral argument on a patent case in

24  about 45 minutes, I didn't anticipate that on a status

25  conference I'd be now well into three o'clock now.

1          So, quite frankly, I'm going to allow Miss Blaine -- I

2    have some serious reservations as to whether, indeed, any --

3    any time frame that I afford counsel in this case is going to -

4    - to be reached, in light of what I just found out, which is we

5    really don't have an identifiable expert at the -- at the

6    current moment.

7          Miss Blaine.

8          MS. BLAINE:  Yes, Your Honor.

9          THE COURT:  I'll hear you now.  I'm going to ask

10   counsel to be brief because I am going to go ahead and set some

11   dates.  And if these dates aren't met, there will be no other

12   dates offered.

13         MS. BLAINE:  Yes, Your Honor.

14         MR. HAMAD:  Will I have an opportunity to be heard, as

15   well, or --

16         THE COURT:  Yes, Mr. Hamad, you will.

17         MR. HAMAD:  Thank you.

18         MS. BLAINE:  Yes, Your Honor.  We just have two points

19   to make.  The first point is just on the issue of the missing

20   chart that Mr. Stein has tried to make a big issue of this.

21   However, this first came up in February of 2009, it was quickly

22   remedied, we weren't aware that there was a color copy issue.

23   As soon as we were made aware that there was a color copy issue

24   in late April, we provided that in early May.  And that

25   happened almost a month before the conference call that led to

1    the June scheduling order.  So everybody had all of the facts

2    available to them, all of the written discovery was available

3    at that time, and we were under the impression that at that

4    time that was a final scheduling order and those dates were

5    real dates that needed to be met by all counsel.  And we

6    proceeded as if that was the case.

7          The second point is that that happened, fact discovery

8    closed on August 3rd.  We anticipated receiving expert reports

9    on August 14th.  On August 17th, when we hadn't seen anything,

10   we sent a letter to Mr. Stein asking for the status.  We did

11   not hear back from him for another week.  By that point, he

12   said that he did not have experts available and he wrote to the

13   Court the next day.

14         It's now a month after that, it's September 21st, and

15   we do not have any expert reports, no dates for expert reports

16   and we believe, Your Honor, that after -- that we respectfully

17   request after six scheduling orders that at this time Your

18   Honor enter an order barring plaintiffs from producing experts.

19         THE COURT:  All right.  Thank you, Miss Blaine.

20         Mr. Hamad.

21         MR. HAMAD:  Judge, I'll keep it very brief and simple.

22   I think while we -- I appreciate your kind order in allowing

23   Mr. Stein additional time to get his order, I must, just for

24   the record, stipulate that my client is prejudiced

25   significantly by the delay because as Mr. Leuchtman astutely

1  pointed out, we don't have an infinite number of these experts

2  out there.  So if he's taking an extra two months to talk to

3  this guy and another person all over the country, we're out

4  experts and that limits our ability to defend the case for our

5  client.

6         Now with that being said, I have a couple suggestions

7  if Your Honor would be so -- if Your Honor's willing to include

8  them.

9         Now the thing I really care about, Judge, is the fact

10 that we need to know who his experts are.  Now if he wants 60

11 days or 45 days to get experts and get -- Your Honor's willing

12 to do that, apparently, that's fine; however, within a certain

13 amount of -- within a week or ten days I would request that Mr.

14 Stein have the -- must identify his experts.  And he can't go

15 beyond these experts.  And the reason why I'd ask that, Judge,

16 is because the minute I get their CV's I want to start looking

17 to hire my own experts so that I don't blow deadlines.  I would

18 request that the Court enter an order demanding that Mr. Stein

19 identify and produce CVs of any and all experts he's going to

20 call in this case regarding any and all issues, be it

21 causation, damages, or liability.

22         And last, but not least, Judge, as far as the issue of

23 -- you know, record production or discovery -- discovery

24 process in this case.  I just want to stipulate for the record,

25 my client has complied.  We have produced five people, very

Argument - Hamad / Court Decision                    24

1   busy, very well -- highly thought of people, all for

2   depositions for Mr. Stein.    We have produced records.  We

3   have been -- we have complied with any and all requests; and,

4   yet, here it is, it's a month after for expert reports and we

5   left here with nothing.  So that's just our position.

6            THE COURT:  All right.  I appreciate everybody's

7   positions.

8            Here's --

9            MR. STEIN:  Excuse me.

10           THE COURT:  Mr. Stein, how long did you need for Mr. -

11  - your expert, Cutting's report?

12           MR. STEIN:  I asked for -- well, I was hoping to have

13  it in 10 to -- 10 to 14 days.  If the Court setting fixed

14  orders, then I would ask for 20 days.

15           THE COURT:  And how long -- you're going to identify

16  your expert, along with the -- their CVs no later than the end

17  of business day on September 25th.  That's Friday.

18           MR. STEIN:  Thank you.

19           THE COURT:  You have five days to do that, Mr. Stein.

20  You don't identify those experts and you will be limited to

21  those experts.

22           MR. STEIN:  Thank you.

23           THE COURT:  You have until September 16th to come up

24  with Dr. Cuttings' report.

25           MR. STEIN:  I'm sorry, September?

Court Decision                                    25

1          THE COURT:  I'm sorry, October 16th, rather.

2          MR. STEIN:  Right.

3          THE COURT:  For Cutting's report.  And you have an

4    additional -- you have until November 20th to get all your

5    expert reports in.  That includes your damages, the life plan

6    report, as well as any and all other reports that need to be

7    provided.  All affirmative reports, the firm cutoff is November

8    20th.  Counsel will have 60 days to do their responsive

9    reports; however they'll have the CVs in hand to address any of

10   Mr. Hamad's concerns by the end of this week.

11         MR. HAMAD:  Thank you, Judge.

12         THE COURT:  All right.  And we have -- that brings us

13   to January 20th for responsive reports.  And, finally, February

14   26th to depose experts.

15         MR. HAMAD:  Judge, on the issue of depositions, if I

16   may be heard, I'll make it very brief.

17         THE COURT:  Sure, Mr. Hamad.

18         MR. HAMAD:  These experts may be all over the country

19   and I don't know about in Federal Court if the Court is so

20   inclined, but in State Court, generally, plaintiffs' experts

21   have to be deposed first, then the defense experts.  If we

22   could split it up, if we can have maybe 45 days, 25 to depose

23   the plaintiffs, 25 to depose the defendants.  I guess that

24   makes -- that's adds up to 50 and I said 45, obviously, you

25   know, I'm a lawyer, not a mathematician.

1          THE COURT:  I am -- so what you're asking for is 20

2   days to depose plaintiffs and then what -- an additional what?

3          MR. HAMAD:  Not additional.  Twenty days for us -- 20

4   or 30 days for us to depose the plaintiffs' experts, maybe by

5   February 20th, and then a month for the plaintiff to depose our

6   experts.

7          MR. LEUCHTMAN:  Your Honor, if I might, may I amplify

8   what Mr. Hamad has said?

9          THE COURT:  Go ahead.

10          MR. LEUCHTMAN:  And he makes a good point.  Typically,

11   as I'm sure Your Honor knows, claims experts are deposed, the

12   depositions are transcribed, they're given to defense experts

13   and then the defendants' experts are deposed.

14          THE COURT:  That's not what typically happens in

15   Federal Court, Counsel, but, okay.

16          MR. LEUCHTMAN:  Okay.

17          THE COURT:  At least in this district.

18          MR. LEUCHTMAN:  All right.  Typically, in my

19   experience, which is limited.

20          All right.  Forgetting whether the deps are

21   transcribed and given to the experts, there's at least time to

22   inform the defense experts of what took place in the

23   plaintiffs' experts' deps, and I would respectfully suggest

24   that the cutoff for plaintiffs' experts' depositions be a month

25   after the January 20 --

Court Decision                    27

1          THE COURT:  I have February 19th for plaintiffs'

2     experts and I have March 19th for defendants' experts.

3          MR. LEUCHTMAN:  Perfect.  Thank you.

4          MR. HAMAD:  Thank you, Judge.

5          THE COURT:  Okay.  We need to address dispositive

6     motions because I will not be entertaining any further

7     extensions in this case.

8          When will counsel be ready to submit dispositive

9     motions?

10         MR. HAMAD:  Judge, I think if we can have a 20 days

11    after the expert depositions are concluded in order to account

12    for any potential causation arguments that may give rise to

13    motions for summary judgment motion.

14         THE COURT:  Counsel, how many days after March 19th?

15         MR. HAMAD:  That would be great, Your Honor.

16         MR. LEUCHTMAN:  Okay.  Yeah, that works for us.

17         THE COURT:  All right.  We have dispositive motions

18    due and owing, opening briefs, let's make it April 19th.  We

19    have opposition May 3rd.  And we have reply May 10th.

20         Has counsel ever engaged in settlement negotiations?

21         MR. HAMAD:  No, Judge.

22         THE COURT:  I take it that, indeed, we wouldn't even

23    be close to entertaining settlement negotiations until the

24    reports are done, expert reports.

25         MR. HAMAD:  Judge, we don't know what the liability is

1   at this point.  We don't have an idea as to what the claim is,

2   actually.

3          THE COURT:  All right.  Well, we're going to have

4   another conference call in any event.  I'm going to make sure

5   that you all are keeping these dates and I'm going to tell

6   counsel on the record right now, I am not adjourning any of

7   these dates unless there are exigent circumstances.  And

8   exigent, quite frankly, Counsel, obviously, things happen.  I

9   would never want anything terrible to happen, so I won't even

10  venture to put examples of exigent circumstances on, but I

11  think the record is very clear that, indeed, this will be our

12  seventh scheduling order.

13         As I've indicated already to counsel off the record,

14  Judge Brown is now the District Judge assigned this matter.  He

15  has given this case some priority in the date of -- the case

16  number is 07-1359.  I have advised counsel that I have set

17  these dates.  I will not deviate from these dates.  And for

18  whatever reason we have non-compliance with these dates, I want

19  to know immediately, on either side.

20         I'm going to ask that -- yes, Mr. Stein.

21         MR. STEIN:  Your Honor, just one other item.  May I go

22  into the next three to Detroit to take that one request --

23         THE COURT:  Oh, the request for -- to reopen fact

24  discovery is denied.  There will be no additional fact

25  discovery taken in this case.

1          So we now have the following dates.  September 25th,

2   2009, that's this Friday, by the end of business, the

3   identification of any and all experts, along with the CVs.  We

4   have Dr. Cutting's reports -- report that is due on October

5   16th, '09.  We have any and all other affirmative expert

6   reports due on November 20th, '09.  We have responsive reports

7   due in this case by January 20, 2010.  We have defendant --

8   plaintiffs' experts that must be deposed no later than February

9   19th, 2010.  We have experts for the defendants that need to be

10  deposed, if, indeed, they are going to be deposed, by March 19,

11  2010.  We have dispositive motions that are set for April 19th,

12  opening brief, May 3rd opposition, and May 10th reply.

13         I am going to ask that the defendants in this case do

14  the order memorializing all the dates, as well as my rulings

15  here today.

16         Anything further?

17         MR. HAMAD:  No.  Thank you, Judge.

18         MR. LEUCHTMAN:  Your Honor, you said you wanted to

19  have a conference call and I didn't --

20         THE COURT:  Oh, my law clerk will set a conference

21  call.  I want to have a conference call when all reports are

22  in.  So let's go ahead and have a conference call towards the

23  end of January.  Jamie Lieberman, my law clerk, who is seated

24  in front of me, will come out with a day at the end of January

25  for our call.  And that call is to be initiated -- who

1    initiated our last call?  Does anyone recall?

2            MR. LEUCHTMAN:  I think it was our responsibility, but

3    I'm not sure.

4            THE COURT:  All right.  Well, let's go ahead and have

5    -- Mr. Hamad, have you initiated a call yet?

6            MR. HAMAD:  I don't think so, but I'll be more than

7    happy to do so, Judge.

8            THE COURT:  Thank you so much.  NYU -- defendant NYU

9    will initiate.

10           Thank you so much, Counsel.  Have a good day.

11           MR. LEUCHTMAN:  Thank you, Your Honor.

12           MR. HAMAD:  Thank you, Judge.

13               (Proceedings concluded at 3:21 p.m.)

14           I, certify that the foregoing is a correct transcript

15   from the electronic sound recording of the proceedings in the

16   above-entitled matter.

17   9/30/09                       **S / Lisa Mullen**
     Date                          Lisa A. Mullen
18                                 KLJ Transcription Service

19

20

21

22

23

24

25

# EXHIBIT C

# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN☒
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey  07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
  *Civil Trial Attorney
  °Matrimonial Attorney
  ^Workers' Compensation Attorney
☒Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

October 13, 2009
Via Electronic Filing & FedEx Overnight Delivery

Hon. Esther Salas, U.S.M.J.
US District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

Re:   **Grossbaum vs. Genesis Genetics, et al.**
      **Civil Action No.:  07-CV-1359 (HAA)**

Dear Judge Salas:

[Please be advised that the electronic filing of this letter is made without exhibits attached, which are being forwarded via Federal Express overnight delivery.]

This letter will update the Court on the compliance with the Discovery Order entered on September 23, 2009 and set forth reasons why the denial of limited further fact discovery is unfair and prejudicial to the Plaintiffs.  This letter also supports our informal application for reconsideration of the Court's ruling on fact discovery.  Compliance with the Order of September 23rd is as follows:

1.   By Friday, September 25th, the plaintiff provided the *curriculum vitae*s of its experts and treating physician, namely:

   •   Dr. Garry Cutting, Professor of Pediatrics and Medicine and Director of the DNA Diagnostic Laboratory, Institute of Genetic Medicine at Johns Hopkins   University

   •   Dr. Charles Strom, Medical Director, Genetic Testing Center, Nichols Institute, Quest Diagnostics

Hon. Esther Salas, U.S.M.J.
October 13, 2009
Page Two

- Linda Lajterman, RN, a certified life care planner of Life Care Associates

- Dr. Arthur Atlas, Director, Respiratory Center for Children at Morristown Memorial Hospital

- Dr. Matityahu Marcus, an economist

(See copy of the *curriculum vitae*s of Plaintiffs' experts annexed hereto as Exhibit A.)

2. In addition, Dr. Cutting's report (as represented to the Court as being on its way), was received, dated September 29th, and immediately forwarded to the Defendants.

3. As discussed with the Court at oral argument on September 21st, Dr. Charles Strom has now agreed to act as an expert and will be providing a report as anticipated by November 19th.

As may be recognized from a perusal of the *curriculum vitae*s of Dr. Cutting and Dr. Strom, the Court may appreciate that their areas of expertise are different:  Dr. Cutting is a treating physician specialist in genetic medicine in a medical center/hospital setting and Dr. Strom is a laboratory based scientist in genetic medicine.

Needless to say, fact discovery in this case is not similar to that which occurs in the ordinary trauma case where eyewitnesses and parties offer empirical facts and circumstances usually known to both sides.  In this type of case with specialized and highly technical medicine, counsel depends on the experts to guide our fact investigation.  In this case, the record will show as reported in our prior correspondence to the Court, that Plaintiffs have assiduously pursued fact discovery of the Defendants (Defendant Hughes and five NYU employees in New York City) as these witness were made available by defense counsel, albeit spread over a number of months, largely due to the availability of the medical service providers.  Likewise, when discovery was not forthcoming from the Defendants, it was our letters, not those of the Defendants (a fact which seemed to escape the Court's attention at oral argument) that resulted in several case management conferences and subsequent case management orders (see our letter dated September 2, 2009 annexed hereto as Exhibit B).

Hon. Esther Salas, U.S.M.J.
October 13, 2009
Page Three


For example:

| Our letter to Court | Case Management Conference |
|---|---|
| Letter dated 2/21/08 | 3/3/08 Second Case Management Order |
| Letter dated 1/22/09 | Conference 2/11/09 |
| Letter dated 5/6/09 | Conference 6/3/09 |
| Letter dated 8/25/09 | Conference 9/21/09 |

Furthermore, our letter expressly put forth my concern that delays by the Defendants prompted addressing the scheduling order would adversely affect the Plaintiff (see copy of letter to Your Honor dated January 22, 2009 annexed hereto as Exhibit C).

In addition, if the Court would further review our letter of September 9, 2009, it would be reminded that the complete chart of Genesis Genetics was not made available to the Plaintiffs until May 9, 2009, notwithstanding our numerous requests that began pre-litigation in January 2007.

My request at this time is to allow the following fact discovery:

1.   A deposition of the Laboratory Director at Genesis Genetics to be taken in Detroit at any mutually convenient time hereafter;

2.   Demand for documents relating to the operation of the Genesis Genetics Laboratory, licensing and accreditation; and

3.   Request for admissions to eliminate the need for time-consuming proofs on facts that cannot be disputed.

One further comment is deemed appropriate on arguments of the Defendants made at oral argument and in a subsequent letter from Mr. Hamad on behalf of NYU dated September 30, 2009 insinuating that plaintiff is burning experts (see Mr. Hamad's letter annexed hereto as Exhibit D).  The disingenuousness of this claim may be appreciated by the following:

(a)   The literature on this subject as reflected in the *curriculum vitae*s of Dr. Strom and Dr. Cutting lists a number of co-authors who are available with similar specialties to Dr. Cutting and Dr. Strom who certainly have not been involved in consultation with the Plaintiffs;

Hon. Esther Salas, U.S.M.J.
October 13, 2009
Page Four

(b)  The Defendants have not identified any attempts to gain an evaluation of the case which was refused because of Plaintiffs' prior contact.  Also, the Defendant's should advise the Court whether experts have been consulted who have agreed to review the case which would certainly moot their complaint.  Failing to do so renders Defendant's complaint specious; and

(c)  Enclosed is a list of clinics (see a copy of the list annexed hereto as Exhibit E), many of them university medical center based fertility clinics, where similar genetic testing (albeit except PGD) is provided to that offered by NYU throughout the United States.

While Plaintiffs attempted to contact several, there were no responses and therefore the entire field is available to the Defendants as a source of expertise.  Of course it goes without saying that the merits of the defense, or the lack thereof, may have something to do with the availability of defense experts.  Furthermore, Dr. Hughes is a member of the leading societies on genetic testing and PGD, both national and international which entire membership may be available to him for consultation.

Finally, if the Court is not disposed to deal with this request in the arena of an in person or telephone conference call, then we respectfully request leave to file a formal motion for which permission is required by the Court's original case management order.

Respectfully submitted,

Lewis Stein

LS:lh/svd
cc:  Sarah Blaine, Esq.- via electronic filing
     Stephen N. Leuchtman, Esq.- via electronic filing
     Jay A. Hamad, Esq.- via electronic filing