# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN¤
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey 07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
*Civil Trial Attorney
°Matrimonial Attorney
^Workers' Compensation Attorney
¤Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

December 28, 2009

Hon. Garrett E. Brown Jr., Chief Judge
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 E. State Street
Trenton, NJ 08608

    Re:  Grossbaum v. Genesis Genetics Institute, LLC, et al.
          Case # 07-CV-1359 (GEB)

Dear Judge Brown:

Kindly accept this letter memorandum in rebuttal to defendant Genesis Genetics' and Mark R. Hughes' response to the Motion under consideration. It may be of interest to the Court to know that the defendant's response does not address the following important facts:

1. Defendant Genesis Genetics does not, and cannot, dispute plaintiffs' contention that it took plaintiffs almost 2 1/2 years and three letters to the Magistrate Judge to obtain the basic information from which almost all medical malpractice evaluations emanate – the complete medical record of the patient from defendant Genesis Genetics;

2. That the plaintiffs' efforts were met with (a) stonewalling until an extension of time was needed to answer the complaint which brought forth what purported to be the complete record as requested, but was not; (b) the misrepresentation as to the incomplete status of the record by defense counsel Leuchtman as late as March 14, 2008; and (c) this defendant finally submitting an appropriate "color-coded" record on May 8, 2009;

3. The significance of the incomplete record was not and could not be minimized. The color-coded record that was not provided represented the entire study of the father's genetic mutation as contained in a graph, a copy of which is attached to plaintiffs' Certification submitted herewith for the Court's perusal;

4. Although defense counsel Blaine certifies to her recollection of the first status conference in Dec. 2007 (and even that presentation is misleading since plaintiffs by that time had the agreement of Dr. Cutting to review the record), she does not in any way challenge the plaintiffs' description of the "in-chambers" conference with the Magistrate Judge before all counsel were ordered into the courtroom on September 21, 2009.

Turning to the claims made in the response of defendant Genesis Genetics and Mark Hughes, plaintiffs respectfully urge

2

that it is sly, misleading, and suggests conclusions of fact not supportable in the record – all seemingly intent on accusing the plaintiffs' counsel of inattention and even incompetence.

We demonstrate this harsh criticism of Defendant Genesis Genetics' submission to the court, as follows:

> 1. (Brief in Opposition at Page 1) "…a classic attempt to obtain a second bite at the apple and should be denied as such ... their own belated realization that they have not gathered the facts they need to win their case."

If litigation is more than a game, then one would think that the role of a court is to assist in bringing to a fact finder all of the facts necessary to do justice. Is the defendant by these words conceding there are facts known to the three employees of Genesis Genetics whose depositions are sought which support plaintiffs' claims of Genesis Genetics' bad practices?

> 2. (Brief in Opposition at Page 2) "...Plaintiffs failed to identify, much less engage, the experts they needed to "guide" their fact investigation until well after the close of fact discovery. Realizing their error ..." etc.

This statement is in direct contravention of the record and is refuted by plaintiffs' confidential communication to the Magistrate Judge submitted to this Court as Exhibit C in support of the Motion which specifically identifies Dr. Cutting, Professor of Pediatrics and Medicine, and Director of the DNA Dignostic Laboratory, Institute of Medicine, at Johns Hopkins University, who had agreed to review the records and act as an

3

expert. Needless to say, as of that writing we did not have an opinion from Dr. Cutting. Likewise contrary to the defendants' further statement on the top of Page 2 of its memorandum, plaintiff was receiving advice from Dr. Cutting as early as February 2008 as to some of the needed discovery. See letter dated February 21, 2008 to the Magistrate Judge submitted as Exhibit D in support of the Motion.

> 3. (Brief in Opposition at Page 2.) "Discovery did not get underway in this case for more than a year, largely because plaintiffs' were waiting to see if they would identify any expert – anywhere . . ."

Plaintiffs' complete and open disclosure to the Court and defense counsel of their attempt to interest what amounts to a small group of professionals involved in preimplantation genetic diagnosis belies the disparaging language used. To describe plaintiffs' action as "waiting" is disingenuous. Likewise to use the term "foot dragging" (Page 2) is a mischaracterization.

> 4. (Brief in Opposition at Page 3) "In April of that year [2009] plaintiffs first notified Genesis that they needed color copies . . ." "Plaintiffs did not seek any further document discovery . . ."

Needless to say, plaintiffs' counsel would not be expected to know the significance of "color-coded records", but certainly the defendant Hughes would know, and yet made no effort to provide the records in the form required until a request was made.

> 5. (Brief in Opposition at Page 3) "Plaintiffs'

4

> August 24, 2009 response not only failed to identify when Plaintiffs' expert reports (which were now ten days late) might become available. . ."

In fact, plaintiff was anxiously awaiting Dr. Cutting's report having forwarded the deposition of the embryologist on August 4, 2009 and soliciting his immediate attention.

> 6. (Brief in Opposition at Page 4) "Plaintiffs filed a letter to Magistrate Judge Salas informing the Court for the first time that despite plaintiffs' possession of all needed discovery from Genesis since May 8, 2009, plaintiffs had not yet completed (much less served) *any* of their expert reports."

Again defendant overstates the facts with the terms "possession of all needed discovery" and ignores Dr. Cuttings' request at our meeting of July 7, 2009 to review the deposition of the embryologist at NYU. It also disregards any issues that were presented in connection with Dr. Hughes' explanation in his deposition of Feb 19, 2009 for the failure of the Genesis Genetics' laboratory studies in this case – which, as plaintiff alleges, was a substantial contributing factor to the cystic fibrosis baby.

> 7. (Brief in Opposition at Page 4.) "The Judge [Salas] also determined that plaintiffs had not – in argument both on and off the record – offered any persuasive reason for reopening fact discovery, and ruled unequivocally that '[t]here will be no additional fact discovery taken in this case.'"

We find it difficult to characterize the Magistrate Judge's reaction to plaintiffs' request for further fact discovery in chambers on September 21, 2009 as deliberative.

5

> 8. (Brief in Opposition at Page 6.) ". . .for permission to force Genesis to redact more than *one thousand* sets of patient records, which plaintiffs then intend to inspect . . ."

This is another distortion of plaintiffs' discovery request. In his deposition at Page 19 submitted as Exhibit A in support of the Motion Dr. Hughes testified that over his entire career doing PGD testing, he tested more than 1,000 babies. He further testified that he began work at Genesis Genetics in 2004, thus it is likely that there will be records of only a small portion of the "1,000 babies". However, the defendant must know how many studies were done at Genesis and could advise the Court and plaintiffs with specificity as to the number of records that need to be redacted before a claim of an unnecessary and burdensome document request.

> 9. (Brief in Opposition at Page 9.) "Thus it is plaintiffs' failure to engage the appropriate experts early enough to guide the development of the factual record that has caused plaintiffs' frantic attempts to obtain a fact discovery mulligan now. . .etc."

In engaging Dr. Charles Strom, Medical Director, Genetic Testing Center, Quest Diagnostics Nichols Institute, plaintiff was able, within four months of obtaining the complete chart, to identify and gain access to one of the pioneers in the development of PGD testing (albeit all the way in California), a laboratory scientist to complement Dr. Cutting's clinical based practice at Johns Hopkins. Again, plaintiffs' work in pursuing expertise is

belittled by characterizations of "failure" and "frantic attempts". As to plaintiffs' efforts in piercing the inner circle of PGD specialists to get the most knowledgeable and respected expertise, plaintiffs stand behind the diligence of these efforts and object to defendants' characterizations.

Finally, the defendants continue to urge the application of rules applicable to formal motions to informal proceedings in case management as a bar to this Court's consideration of the merits – clearly an effort to place form over substance. From a review of the process of case management herein, it would appear that numerous orders of the Court were revised and reconsidered without formality and based on telephonic communications with the Court. Was plaintiffs' counsel in error in assuming that that process was characteristic of case management and not subject to the formality urged by the defendant?

The Court should also be apprised of a recent request by counsel for defendant NYU to extend the time to produce their expert reports. See copy of letter dated December 24, 2009 which is attached hereto.

Respectfully submitted,

s/ Lewis Stein
Lewis Stein

A REGIONAL DEFENSE LITIGATION LAW FIRM

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
A PROFESSIONAL CORPORATION   www.marshalldennehey.com

PENNSYLVANIA — Bethlehem, Doylestown, Erie, Harrisburg, King of Prussia, Philadelphia, Pittsburgh, Scranton, Williamsport
NEW JERSEY — Cherry Hill, Roseland
DELAWARE — Wilmington
OHIO — Akron
FLORIDA — Ft. Lauderdale, Jacksonville, Orlando, Tampa
NEW YORK — New York

425 Eagle Rock Avenue, Suite 302 · Roseland, NJ 07068
(973) 618-4100 · Fax (973) 618-0685 Joseph A. Manning, Resident Managing Attorney

Direct Dial: 973-618-4154
Email: rseichhorn@mdwcg.com



December 22, 2009

Via e-mail: Lauren_kostinas@njd.uscourts.gov
Regular Mail and Fax

Honorable Esther Salas
United States District Court
Federal Building and Courthouse
50 Walnut Street
Newark, NJ 07102

    RE:    Grossbaum v. New York University School of Medicine, et al.
            Case No.: 07-CV-1359 (HAA)
            Our File No.: 02981.00101-RSE

Dear Judge Salas:

    Please accept the following correspondence in lieu of a more formal submission requesting an emergent telephone conference to address potential unforeseen complications in complying with the time frame set forth in Your Honor's prior Discovery Order.

    As Your Honor is aware, this litigation involves a highly technical, cutting edge field of medicine. Over the past two years, Your Honor has worked with counsel in order to move this matter along. Based upon counsel for the plaintiff's requests and explanation that obtaining experts in this field of medicine was a daunting task (due to the extremely limited availability of experts), counsel was granted multiple extensions of time to serve expert reports until November 16, 2009.

    After expending an immense amount of effort on attempting to obtain qualified experts, we were finally successful in retaining the necessary experts. However, in light of the fact that the months which were allotted to the defense included Thanksgiving, Chanukah, Christmas and New Years, along with unforseen personal developments for one of our experts (recently placed a close relative in hospice care) we have been informed that time constraints, due to the holiday schedule/travel and family responsibilities, will not allow for the completion of reports by the current January 20th, 2010 deadline.

    In keeping with the spirit of Your Honor's statements during the most recent Case Management Conference, I am writing this letter in order to initiate a pro-active effort to address the need to extend the

December 22, 2009
Page 2

deadline for the production of expert reports by the defense <u>prior</u> to the lapse of such a deadline. To this end, I have contacted counsel for the plaintiff in order to seek his consent to this extension. Counsel for the plaintiff indicated that he would be willing to consent to the extension, <u>if</u> co-defendant's attorney also consented to the production of two fact depositions of Genesis Genetics'. I have reached out to counsel for Genesis Genetics with counsel's above-referenced offer. Counsel for Genesis has agreed to consent to the extension of time to serve expert reports but <u>declined</u> the demand for the production of Genesis employees for depositions.

In light of the foregoing, I respectfully request that Your Honor grant my request for a <u>30 day</u> extension of the deadline for the production of expert reports by defendants as to liability, causation, and damages. In the alternative, I also request a telephonic conference with the Court and all counsel in order to address the above-referenced issues.

Thank you for your consideration of this request.

Respectfully submitted,

R. Scott Eichhorn Esq.

JAH/pg
cc: Lewis Stein, Esq.
    Stephen N. Leuchtman, Esq.
    Sarah Blaine, Esq.

11/1006191.v1