# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN¤
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey  07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
*Civil Trial Attorney
°Matrimonial Attorney
^Workers' Compensation Attorney
¤Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

June 2, 2010
Via Electronic Filing

Hon. Esther Salas, U.S.M.J.
US District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

Re:   Grossbaum vs. Genesis Genetics, et al.
      Civil Action No. 07-CV-1359 (HAA)

Dear Judge Salas:

In addition to our letter of June 1, 2010 please accept this letter pursuant to requirements of Local Rule 37.1(a)(1). The depositions of Defendant Genesis Genetics' two experts, namely Dr. Kangpu Xu, Director of the Laboratory of Preimplantation Genetics at The Center for Reproductive Medicine and Infertility, and the Defendant himself, Dr. Mark Hughes, were held on May 13th and 14th respectively in New York and Detroit. These depositions raised some significant fact issues which go to the heart of the negligence claims. In all likelihood the issues I raise within this letter require a formal motion and, by this letter, we seek permission to file said motion.

The basis for our motion is as follows:

(1)   As more particularly set forth in my Certification, which is enclosed herewith and would be attached to our motion, the Plaintiff received the two reports of the above named defense experts dated February 26th and March 2nd in which there was a substantial amount of identical language, i.e. even to the extent of identical mispunctuation. Inherent in this curiosity is the question of who prepared and supplied the opinions, one to the other, to be used in connection with the defense of this matter. The

Hon. Esther Salas, U.S.M.J.
June 2, 2010
Page Two of Four

    syntactical errors appearing in the February 26th opinion letter of Dr. Kangpu Xu were attributed at his deposition to the fact that English was his second language to Chinese (country which he left at age 31). However, these appear principally in the biographical section and not in the opinion section of his report, suggesting that he was provided with the significant language and opinion of his report by the Defendant, Genesis Genetics.

    Incredibly, Dr. Hughes at his deposition quickly admitted that he did not even write his own report, but that it was written entirely by his lawyer, Mr. Leuchtman, and moreover, he was not even able to adopt all of the opinions expressed therein and expressly disclaimed at least two sections of the report. The curiosities relative to Dr. Hughes' report of March 2nd even go to the authenticity of the signature, which he claimed to be electronically inserted. In addition, a document purporting to supply the requirement of a *curriculum vitae* of Dr. Mark Hughes was indicated by him as not being written by him and totally being unfamiliar as to its origination. No representations were made regarding authorship in their submission by the Defendants' counsel, Stephen Leuchtman.

    To this end, it is respectfully submitted that these circumstances should allow, and even require, defense counsel Stephen Leuchtman to explain under oath at a deposition his role in the creation of the experts' reports submitted to the Plaintiff in this matter.

(2)    A second area of interest- according to the testimony of Dr. Mark Hughes at his deposition, documents submitted as part of the Genesis Genetics laboratory records are not what they appeared to be. The basic report concerning the laboratory studies at Genesis Genetics apparently forwarded to NYU, and the only report that NYU acknowledges receiving, was explained by Dr. Hughes to be a document not prepared or signed by him, even though the only signature contained thereon is his. This disclaimer of authorship by Dr. Hughes to the basic report is a significant change in the factual picture painted by Dr. Hughes both at his fact deposition in February 2009 and the impressions created by the records at NYU. Exploration of the authorship of this basic Genesis Genetics report is now essential to the factual underpinnings of the case and liability as it relates between Genesis Genetics and NYU.

Hon. Esther Salas, U.S.M.J.
June 2, 2010
Page Three of Four

(3) Moreover, in connection with this basic report, it was indicated for the first time by Dr. Hughes at this deposition that the basic report, which is the subject of Paragraph 2 above, was in fact not intended to be the final report, but was a preliminary report sent pursuant to the request of NYU. This now raises a factual issue as to whether NYU did in fact request a preliminary report, and whether the characterization of the designated report, which gave no indication of being preliminary, now provides an explanation for a second report which was part of the Genesis Genetics' file, but was never a part of the NYU record.

To this end, we seek leave to take the re-depositions of NYU personnel: (a) Dr. Grifo, who headed the Division of Reproductive Endocrinology; and (b) Alexis Adler, the embryologist, who was involved in requesting and receiving the reports from Genesis Genetics.

(4) As may be seen from the reports submitted on behalf of the Plaintiff's two experts, Dr. Garry Cutting of Johns Hopkins and Dr. Charles Strom of Quest Diagnostics (reports previously provided in discovery applications as Document Nos. 38 and 34 respectively), a critical issue in this case is whether or not Genesis Genetics utilized the "state of the art" testing to provide the Plaintiffs with their preimplantation diagnosis. This analysis called "linkage analysis" was testified to by Dr. Hughes as not being generally available in the laboratory community at the time of the Grossbaum's study. Dr. Kangpu Xu, who headed a laboratory similar to Genesis Genetics at Weill Cornell Medical Center, offered a similar opinion in his report. However, on deposition, Dr. Xu admitted that this type of analysis was in use at Cornell several years prior to the Grossbaum's study, albeit he was uncertain as to whether this type of analysis was used specifically with the kind of mutations that the Plaintiffs' presented. Therefore, this uncertainty has created a cloud over the factual underpinnings of his opinions, and certainly justifies further inquiry of Weill Cornell as to what the "state of the art" analyses were back several years prior to the Grossbaum's study.

To this end, we seek leave to take the oral deposition of Dr. Zev Rosenwaks, the head of the fertility clinic at Weill Cornell, who is well known to be involved in PGD studies back into the 1990's.

(5) As a part of the opinions set forth by Dr. Kangpu Xu in his deposition he testified that the Weill Cornell experience with respect to the failure of a type of single cell analysis that was done for the Grossbaum's due to a

Hon. Esther Salas, U.S.M.J.
June 2, 2010
Page Four of Four

particular technical shortcoming experientially occurred 5% to 10% of the time. This is in contrast to the report and testimony of Dr. Charles Strom dated November 12, 2009, referred to above in Paragraph 4, in which he indicated that this type of failure (called allele dropout) existed in the literature to the extent of 20% to 70%. An investigation of the Cornell experience to establish the statistical basis for this testimony is now significant. This subject was not a part of Dr. Kangpu Xu's opinion letter in response to the reports of the Plaintiffs' expert, and was raised for the first time in his deposition.

(6) A further issue that has raised its ugly head in connection with the depositions of the Defendants' two experts was the conduct at the depositions by defense counsel. Included herewith attached to the Certification are the entire deposition transcripts (even though the Rules suggest that deposition transcript submission should be limited to an area of controversy) in which the Court will find that there were more than 20 instances of improper intrusions into the questioning by defense counsel in the form of speaking objections as well as baseless objections as to form. This type of attorney practice will be cited to the Court in questioning Mr. Leuchtman's continued *pro hac vice* status. The conduct during depositions by counsel for the Defendant NYU should also argue in favor of the Plaintiffs' applications herein.

For the foregoing reasons, Plaintiffs seek leave to file a motion:

(1) With regard to the additional discovery listed above; and

(2) Raising a question as to the continued appearance of Stephen N. Leuchtman as attorney for the Defendant, challenging his *pro hac vice* status.

Needless to say, the number of issues raised by our letter of June 1st and this letter suggests to the Court that this telephonic Status Conference of June 3rd at 4:30 p.m. be an on the record conference.

Respectfully submitted,

Lewis Stein

LS:svd
cc: Stephen N. Leuchtman, Esq.- via email
Sarah Blaine, Esq.- via electronic filing
Jamele A. Hamad, Esq.- via electronic filing