# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHAYA GROSSBAUM and
MENACHEM GROSSBAUM, her
spouse, individually and as *guardians ad
litem* of the infant ROSIE GROSSBAUM,

          Plaintiffs,

  -vs-

GENESIS GENETICS INSTITUTE, LLC, of
the State of Michigan, MARK R. HUGHES,
NEW YORK UNIVERSITY SCHOOL OF
MEDICINE and NEW YORK UNIVERSITY
HOSPITALS CENTER, both corporations in
the State of New York, ABC CORPS. 1-10,
JOHN DOES 1-10,

          Defendants.

Civil Action No. 07-CV-1359 GEB)

---

## BRIEF IN OPPOSITION TO PLAINTIFFS' APPEAL OF MAGISTRATE JUDGE SALAS'S JULY 13, 2010 LETTER ORDER

---

**LOWENSTEIN SANDLER** PC
A Professional Corporation
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
*Attorneys for Defendants Genesis Genetics
Institute, LLC and Dr. Mark R. Hughes*

Of Counsel:
      Stephen N. Leuchtman
      Of Counsel to Trowbridge Law Firm, P.C.
      1380 East Jefferson Avenue
      Detroit, MI  48207
      313.259.6900 x. 126

On the Brief:
      Thomas E. Redburn, Jr.
      Sarah Blaine

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................ii

PELIMINARY STATEMENT ............................................................ 1

PROCEDURAL HISTORY ............................................................... 2

FACTS ........................................................................................... 5

ARGUMENT ................................................................................... 8

POINT I:    TO SUCCEED ON APPEAL, PLAINTIFFS MUST DEMONSTRATE THAT MAGISTRATE JUDGE SALAS ABUSED HER DISCRETION BY DENYING THEIR APPLICATION FOR ADDITIONAL FACT DISCOVERY. ......... 8

POINT II:    THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUESTS TO DEPOSE MR. LEUCHTMAN AND TAKE ADDITIONAL EVIDENCE FROM GENESIS. ............................ 9

POINT III:    THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUEST TO RE-DEPOSE NYU PERSONNEL OR TAKE FURTHER DISCOVERY FROM GENESIS REGARDING THE PARTIES' STANDARD PRACTICES WITH RESPECT TO THE IVF REPORTS. ............................... 16

POINT IV:    THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUEST TO DEPOSE DR. ZEV ROZENWAKS. .................... 17

POINT V:    PLAINTIFFS' REQUEST TO CHALLENGE THE PRO HAC VICE STATUS OF LEAD COUNSEL STEPHEN N. LEUCHTMAN MUST BE DENIED. ........................... 19

CONCLUSION ................................................................ 22

# TABLE OF AUTHORITIES

**Pages**

CASES

*Chambers v. Heidelberg, USA, Inc.*,
  2007 WL 1544255 (D.N.J. May 25, 2007) ....................................................................20, 21

*Cooper Hospital/University Med. Ctr. V. Sullivan*,
  183 F.R.D. 135 (D.N.J. 1998) ...............................................................................13, 17, 19

*Diaz v. Demane*,
  2007 U.S. Dist. LEXIS 94069 .......................................................................................... 19

*Eisai Co. v. Teva Pharms. USA, Inc.*,
  629 F. Supp. 2d 416 (D.N.J. 2009)...................................................................................... 8

*Glazewski v. Corzine*,
  2008 U.S. Dist. LEXIS 103322 (D.N.J. Dec. 15, 2008)....................................................... 8

*Intelli-Check, Inc. v. Tricom Card Technologies, Inc.*,
  2005 U.S. Dist. LEXIS 38794 (D.N.J. Nov. 10, 2005) ...................................................... 15

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*,
  130 F.R.D. 348 (D.N.J. 1990) ...............................................................................4, 9, 10, 15

*Jordan v. Tapper*,
  143 F.R.D. 567 (D.N.J. 1992) ...............................................................................13, 17, 19

*Kresefky v. Panasonic Commc'ns & Sys. Co.*,
  169 F.R.D. 54 (D.N.J. 1996) .............................................................................................. 8

*Rocker Mgmt. v. Lernout & Hauspie Speech Products, N.V.*,
  2008 U.S. Dist. LEXIS 30127 (D.N.J. Apr. 10, 2008)........................................................ 8

*WPI Termiflex, Inc. v. Meritor Automotive, Inc.*,
  1999 WL 814338 (D.N.H. 1999)....................................................................................... 13

RULES

Fed. R. Civ. P. 16 ............................................................................................................ 8, 9

Fed. R. Civ. P. 26 .......................................................................................................... 8, 13

L. Civ. R. 16.1................................................................................................................ 8, 9

L. Civ. R. 72.1.............................................................................................................. 8, 19

L. Civ. R. 101.1(c)(4) ....................................................................................................... 21

Defendants Genesis Genetics Institute, LLC ("Genesis Genetics") and Dr. Mark Hughes (collectively, "Genesis") submit this memorandum of law in opposition to Plaintiffs' appeal of Magistrate Judge Salas's July 13, 2010 Letter Order denying Plaintiffs' request for further discovery.

## PRELIMINARY STATEMENT

Before the Court is Plaintiffs' appeal of Magistrate Judge Salas's July 13, 2010 Letter Order (the "July 13 Letter Order") denying Plaintiffs' sixth bid for additional discovery since the close of the fact discovery period on August 3, 2009. As set forth in the July 13, 2010 Letter Order, Plaintiffs seek five categories of additional fact discovery: "(1) Mr. Leuchtman's [Genesis's lead counsel] deposition relating to the authorship of Dr. Xu and Mr. Hughes's expert reports; (2) exploration of the authorship of a Genesis Genetics report based on testimony at Dr. Hughes's deposition; (3) re-deposition of two NYU personnel; (4) deposition of Dr. Zev Rosenwaks; [and] (5) an investigation of the "Cornell experience."   Like Plaintiffs' five previous (unsuccessful) bids for additional discovery, Plaintiffs' appeal of Magistrate Judge Salas's July 13 Letter Order should be flatly denied.   Plaintiffs have failed to set forth any evidence demonstrating good cause for modifying Judge Salas's scheduling orders, much less that there was an abuse of discretion sufficient to justify overturning the July 13, 2010 Letter Order.

Furthermore, the substance of the additional discovery sought is wholly inappropriate.  First, Plaintiffs have failed to demonstrate good cause for deposing Mr. Leuchtman given that they have already obtained full discovery from the experts themselves concerning the authorship of their respective expert reports. Second, Plaintiffs were afforded plenty of opportunity during the fact discovery

period to ask questions pertaining to the authorship and preliminary or final status of reports submitted to NYU by Genesis Genetics: Plaintiffs' failure to ask these questions at the appropriate time is not good cause to reopen fact discovery now. Third, Plaintiffs have already had adequate opportunity to depose the two NYU personnel. They were aware at the time of those depositions of the existence of the two reports submitted by Genesis, and any failure on their part to ask appropriate questions concerning those reports at that time is not good cause to reopen their depositions now, especially given that liability expert discovery is almost concluded in this case. Fourth, Plaintiffs have demonstrated no good cause for them to depose the boss of Genesis expert Dr. Xu: Dr. Rosenwaks has no connection whatsoever to the facts of this case. Finally, to the extent Plaintiffs seek evidence regarding "the Cornell experience" in the field in 2004, this is not an appropriate fact inquiry more than a year after the close of fact discovery. The Magistrate Judge's decision denying Plaintiffs further discovery should be affirmed.

## PROCEDURAL HISTORY

This personal injury case was filed in March of 2007. The first pretrial scheduling order was issued in December of 2007. Declaration of Sarah Blaine (hereinafter "Blaine Decl. __"), Ex. 1 at 15:2-4. Discovery did not get underway in this case for more than a year, largely because Plaintiffs were waiting to see if they could identify an expert who might be willing to draft a report supporting their position. *See, e.g.*, Blaine Decl. ¶¶ 3, 4, Ex. 2 (Plaintiffs' Feb. 21, 2008 Letter to Judge Salas (notifying the Court that Plaintiffs had not yet been able "to determine the viability of the plaintiffs' claims in this litigation" and therefore seeking a revised Pretrial Scheduling Order before proceeding with discovery)).

As a result of Plaintiffs' foot-dragging on determining the "viability" of their claims, Initial Disclosures were not even exchanged until mid-May of 2008. Blaine Decl. ¶ 4.

On May 8, 2009, Genesis and Hughes fulfilled the last of Plaintiffs' (timely) fact discovery requests directed to them. Blaine Decl. Ex. 3. From May of 2009 through the close of fact discovery on August 3, 2009, Plaintiffs did not seek any further document discovery, nor did they notice any additional Genesis depositions. Blaine Decl. Ex. 1 at 16:16-17:4. On August 3, 2009, the fact discovery period closed without comment. Blaine Decl. ¶ 5. According to the Court's June 10, 2009 scheduling order, Plaintiffs' expert reports were due to be served by August 14, 2009. Blaine Decl. Ex. 5.

On September 21, 2009, the Court held a status conference in which it addressed certain expert and fact discovery issues before it. Blaine Decl. Ex. 1. Judge Salas extended expert discovery but ruled unequivocally that "[t]here will be no additional fact discovery taken in this case." *Id.* at 28:24-25. On October 13, 2009, Plaintiffs sought reconsideration of Judge Salas's refusal to reopen fact discovery. Blaine Decl. Ex. 9. For both procedural and substantive reasons, the Magistrate Judge denied the motion for reconsideration. Blaine Decl. Ex. 10.

Plaintiffs appealed that Order. On February 9, 2010, this Court upheld Magistrate Judge Salas's September 21, 2009 and November 23, 2009 Orders. Blaine Decl. Ex. 11. As this Court explained, "Plaintiffs failed to demonstrate good cause to reopen discovery before Magistrate Judge Salas and have not persuaded this Court." *Id.* Plaintiffs did not, however, abandon their campaign to open fact discovery in this matter. On May 3, 2010, Plaintiffs submitted a request, by letter to Magistrate Judge Salas, seeking the fact depositions of "two of Defendant Hughes' employees who are situated in Detroit at the Genesis Genetics location on the same day as Dr. Hughes' [expert] deposition

of May 14th." Blaine Decl. Ex. 12. Genesis opposed this request, and on May 14, 2010 the Magistrate Judge entered an order that "No additional fact discovery may be taken in this matter." Blaine Decl. Ex. 13, 14. Plaintiffs did not move for reconsideration of or appeal the May 14, 2010 Order -- although the issues raised in this appeal are based on the expert deposition of Dr. Hughes, which took place that very same day.

However, on June 1, 2010 and June 2, 2010 (after the time for reconsideration or appeal had run), Plaintiffs submitted yet another request for fact discovery. Blaine Decl. Ex. 15, 16. At that time, Plaintiffs sought (1) the deposition of Genesis counsel Stephen N. Leuchtman; (2) additional discovery from Genesis regarding the authorship of a laboratory report at issue in the case; (3) the re-depositions of two NYU personnel, Dr. Grifo and Alexis Adler; (4) the deposition of Dr. Zev Rosenwaks, who is the boss of Genesis's expert Dr. Xu -- but otherwise wholly unfamiliar with this case; and (5) an "investigation of the Cornell experience" with a particular technical shortcoming of the technology at issue in the matter; as well as (6) leave to "question" Mr. Leuchtman's continued *pro hac vice* status. Again, Genesis opposed this application. Blaine Decl. Ex. 17. Magistrate Judge Salas's July 13 Letter Order denied Plaintiffs' application for additional fact discovery as well as Plaintiff's application to "question" Mr. Leuchtman's *pro hac vice* status. Blaine Decl. Ex. 19. Before the Court now is Plaintiffs' appeal of the July 13 Letter Order.

The July 13 Letter Order denied the relief sought in Plaintiffs' June 2010 letters in its entirety. Magistrate Judge Salas's July 13 Letter Order explained that scheduling orders cannot be modified absent a showing of good cause. Here, the Magistrate Judge held, Plaintiffs had not demonstrated good cause for the Court to modify its scheduling order and reopen fact discovery. Specifically, the Magistrate Judge properly applied the *Johnston Development*

*Group, Inc. v. Carpenters Local Union No. 1578* standard to determine that Plaintiffs had failed to demonstrate good cause to depose defense counsel Stephen N. Leuchtman where (1) the information sought from Mr. Leuchtman is also available from the experts themselves; (2) Plaintiffs had the opportunity to depose both experts on this point; and (3) the quality of information in Mr. Leuchtman's knowledge is disproportional to Plaintiffs' needs. The Magistrate Judge also found that Plaintiffs had failed to demonstrate good cause to depose Dr. Rozenwaks, reopen the depositions of two NYU personnel and seek additional discovery pertaining to the "Cornell experience" where "Plaintiffs have not pointed to any evidence to demonstrate why they could not have explored these issues during the two years of fact discovery." July 13 2010 Letter Order, 2-3. Finally, the Magistrate Judge denied Plaintiffs' request to file a motion challenging Mr. Leuchtman's *pro hac vice* status on the basis of his allegedly improper conduct at depositions because "Plaintiffs have not pointed this Court to any evidence to support the contention that Mr. Leuchtman acted improperly during depositions in this case." *Id.* at 3.

## FACTS

Plaintiffs, who were both carriers of genes for cystic fibrosis, chose to undergo pre-implantation genetic diagnosis ("PGD") in order to minimize (but, as they themselves repeatedly acknowledged, not eliminate) their risk of giving birth to a child with cystic fibrosis. Defendant Genesis performed this testing for Plaintiffs. In June of 2004, when the testing was performed, Genesis was one of only four or five laboratories in the United States that offered this testing. Certification of Lewis Stein, Esq. (hereinafter ("Stein Cert.") Ex. G at 76:18 - 79:7; Despite the fact that Plaintiff Chaya Grossbaum gave birth to a child who was

diagnosed with cystic fibrosis, Plaintiffs have not been able to collect any evidence demonstrating that Genesis negligently performed the testing, and therefore, a key dispute in this matter is what the standard of care for performing PGD was in 2004.

On May 13, 2010, Plaintiffs took the deposition of outside defense expert Dr. Kangpu Xu, who is one of the laboratory directors at Weill Cornell's Center for Reproductive Medicine and Infertility.  Stein Cert. Ex. G.  On May 14, 2010, Plaintiffs took the expert deposition of Dr. Mark Hughes, who is also a defendant in this litigation.  Stein Cert. Ex. H.  Because Dr. Hughes is also one of the seminal experts in the field of PGD, Genesis chose to have Dr. Hughes submit an expert report so that he could opine on the standard of care and the limits of PGD technology in 2004.  Stein Cert. Ex. D.

As even Plaintiffs admit, at Dr. Xu's May 13, 2010 deposition, Dr. Xu unequivocally testified that he wrote his own expert report without assistance. Stein Cert. Ex. G. at 36:4 - 37:17; *Pl. Br.* at 6.  Nevertheless, despite the absence of any evidence to the contrary, Plaintiffs refuse to accept this basic fact.  *See Pl. Br.* at 18 ("Is the Plaintiff required to accept Dr. Xu's testimony that he is the author without assistance of his own report?").  Plaintiffs' purported "evidence" that Dr. Xu could not have authored his own report is that Dr. Xu's and Dr. Hughes's report contain identical language. *Pl. Br.* at 18.  A comparison of the two reports, however, reveals that nothing nefarious was afoot -- rather, Dr. Hughes's expert report openly states that it is <u>quoting</u> Dr. Xu's (earlier) expert report.  Stein Cert. Ex. F ("As Dr. Kangpu Xu has pointed out in his report . . .").  To the extent that Plaintiffs disbelieve Dr. Xu's testimony, they are certainly entitled to vigorously cross-examine Dr. Xu at trial.

Dr. Xu also gave testimony concerning the incidence of allele drop out and Weill Cornell's experience with the use of multiplex markers in PGD in 2004.  Stein Cert. Ex. G at 71:21-73:18; 87:22 - 88:18).  However, these were facts

that were clearly in (hot) dispute between the parties, and Plaintiffs' claim (without any citation to the record) that "Dr. Xu clearly went beyond any comment made in his report and thus, created the necessity for fact investigation into the subject of the Weill Cornell experience" is wholly unsupported.  *Pl. Br.* at 22.

Genesis does not dispute the testimony given by Dr. Hughes at his May 14, 2010 deposition concerning the circumstances under which his report was drafted.  Stein Cert. Ex. H at 6:2 - 8:20.  Indeed, Mr. Leuchtman allowed Plaintiffs considerable latitude with their deposition questions given Dr. Hughes's dual role as a defendant and an expert -- but any further inquiry of Dr. Hughes or Mr. Leuchtman would clearly encroach into the protection of the attorney-client relationship.

Plaintiffs have also attempted to make much of a purported "inconsistency" between Dr. Hughes's testimony at his fact deposition and his testimony at his expert deposition regarding the two PGD reports issued by his laboratory to NYU, and use this "inconsistency" to bootstrap themselves into a request to reopen the depositions of at least two NYU personnel plus take additional unspecified discovery from Genesis on this issue.  *Pl. Br.* at 21-22; Blaine Decl. Ex. 16.  However, Plaintiffs have not addressed the fact that both of these reports were produced well before the close of the discovery period (and before many of the fact depositions). *Id.* Plaintiffs therefore had ample opportunity to question Dr. Hughes, other Genesis employees, and NYU employees about the reports before the close of fact discovery.  Plaintiffs' failure to explore this topic fully during fact discovery does not justify reopening fact discovery now.

## ARGUMENT

**POINT I:   TO SUCCEED ON APPEAL, PLAINTIFFS MUST DEMONSTRATE THAT MAGISTRATE JUDGE SALAS ABUSED HER DISCRETION BY DENYING THEIR APPLICATION FOR ADDITIONAL FACT DISCOVERY.**

Where an appeal seeks review of a matter within the exclusive purview of the Magistrate Judge, such as entry of a scheduling order or adjudication of a discovery dispute, courts in this district have held that the proper standard of review is whether there was an abuse of discretion by the Magistrate Judge. *See Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 433-34 (D.N.J. 2009) (quoting *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("A magistrate judge's ruling on a non-dispositive matter such as a discovery motion is 'entitled to great deference and is reversible only for abuse of discretion.'"); *Glazewski v. Corzine*, 2008 U.S. Dist. LEXIS 103322 (D.N.J. Dec. 15, 2008) (where the Magistrate Judge has managed the case from the outset, and thus has a thorough knowledge of the proceedings "an abuse of discretion standard is appropriate to determine whether a scheduling order should be reversed"); *Rocker Mgmt. v. Lernout & Hauspie Speech Products, N.V.*, 2008 U.S. Dist. LEXIS 30127 (D.N.J. Apr. 10, 2008) ("Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion").

A Magistrate Judge's authority to guide case management has been thoroughly established by Local Civil Rule 16.1 and Local Civil Rule 72.1(a). Local Civil Rule 16.1(b)(1) requires the Magistrate Judge to "enter a scheduling order" and Local Civil Rule 72.1(a)(3) tasks Magistrate Judges with "[c]onducting pretrial conferences as set forth in Fed. R. Civ. P. 16 and 26(f), which include but are not limited to scheduling, settlement, discovery, preliminary and final pretrial conferences, and entry of appropriate orders, including scheduling orders in

accordance with L. Civ. R. 16.1 and Fed. R. Civ. P. 16." Thus, case management and entry of scheduling orders are tasks that fall within the Magistrate Judge's express jurisdiction, and Magistrate Judge Salas's denial of additional discovery must be reviewed for abuse of discretion.

This is an appeal of Plaintiffs' _fifth_ attempt to reopen fact discovery in this matter. _See_ Blaine Decl. Ex. 1, 10, 11, 12, 14, 19. Plaintiffs have proffered no argument supporting their contention that Magistrate Judge Salas abused her discretion by denying Plaintiffs' fifth attempt to reopen fact discovery. Indeed, Plaintiffs have failed to set out any stronger a basis for their fifth attempt to reopen fact discovery than they did in any of their four previous (unsuccessful) attempts.

## POINT II:  THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUESTS TO DEPOSE MR. LEUCHTMAN AND TAKE ADDITIONAL EVIDENCE FROM GENESIS.

Plaintiffs' first request for additional discovery is a request to depose Genesis's lead counsel in this matter, Mr. Leuchtman.   Depositions of opposing counsel are highly disfavored. _Johnston Development Group, Inc. v. Carpenters Local Union No. 1578_, 130 F.R.D. 348 (D.N.J. 1990), relied on by the Magistrate Judge, sets out the test governing whether a party may take the deposition of opposing counsel.  Although there is no general prohibition against obtaining the deposition of adverse counsel for the purpose of obtaining _relevant, non-privileged_ information, the Court is nevertheless required to balance the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself. _Id._ at 352.  Specifically, the Court must consider "(1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources

that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony." *Id.* at 353.

Here, as Magistrate Judge Salas effectively explained, Plaintiffs have failed to demonstrate that the information they seek from Mr. Leuchtman's deposition is proportionate to Plaintiffs' needs. As the Court explained:

> The information sought from Mr. Leuchtman is available from other sources, namely the experts themselves. In fact, Plaintiffs had the opportunity to depose Dr. Xu and Dr. Hughes about the authorship of both expert reports at each expert's deposition. Any further inquiry is appropriate during cross examination, not in a deposition of Genesis's attorney. Plaintiffs have cited no case law which merits the Court permitting such a deposition. On the contrary, Defendant Genesis has cited to ample reasons and relevant case law as to why such a deposition would be improper. *See* Letter dated June 3, 2010, Docket No. 63 at 2 - 4.

July 13 Letter Order at 2.

Magistrate Judge Salas got it right, and certain did not abuse her discretion. Plaintiffs have failed to demonstrate that the information they seek from Mr. Leuchtman's deposition is (a) relevant and (b) non-privileged. Plaintiffs offer three justifications for their request to depose Mr. Leuchtman. First, Plaintiffs claim they are entitled to Mr. Leuchtman's deposition because "[t]he authorship of Dr. Xu's report is unknown." *Pl. Br.* at 17. However, as even Plaintiffs admit, at his deposition Dr. Xu testified unequivocally that he had no assistance in preparing his report. *Pl. Br.* at 17. Plaintiffs, however, argued that "there was a substantial amount of identical language, *i.e.* even to the extent of identical mispunctuation" in Dr. Hughes's and Dr. Xu's reports. Plaintiffs use this

"fact" to draw the mistaken inference that Mr. Leuchtman must have authored both reports, and thereby "made [him]self a fact witness in this case."   Blaine Decl. Ex. 16.

       This argument is refuted by the reports' plain language.  To the extent that Dr. Hughes's report contains portions that mirror the language in Dr. Xu's report, there is no question that this is because Dr. Hughes's report specifies that it is quoting Dr. Xu's expert report.  Stein Cert. Ex. F.  Plaintiffs' arguments to the contrary, the only "curiosity" here is how Plaintiffs could have failed to note that the bolded sections in Dr. Hughes's report that contain language identical to that in Dr. Xu's report also contain prefatory language indicating that Dr. Hughes is directly quoting Dr. Xu, such as "As Dr. Kangpu Xu has pointed out in his report. . ."  *Cf.* Stein Cert. Ex. E, F. [1]  Dr. Xu testified unambiguously that he wrote his own report.  *See* Stein Cert. Ex. G at 36:13-16 ("Well, I read the package and then form an opinion and then I put a few points that I think I wanted to express my opinion, then I typed in my computer and I printed."); 34:7-16; 44:11-14.

       Dr. Xu finalized his report on February 26, 2010 and Mr. Leuchtman, in compliance with the Court's then-current scheduling order, submitted it to Plaintiffs' counsel that same day.  Stein Cert. Ex. G at 37:6-9  One cannot possibly infer that Dr. Xu lied about writing his own report from the mere fact that Dr. Hughes's March 2, 2010 report quoted Dr. Xu's earlier report.  Plaintiffs' attempt to convince the court to order Mr. Leuchtman's deposition to allow Plaintiffs to attempt to "establish[ ] that Dr. Xu's report was also authored in large measure by Attorney Leuchtman," is nothing more than garden variety harassment. To the

---

[1] Indeed, examination of Exhibits E and F of the Stein Certification quickly reveals that Plaintiffs' counsel bolded the identical language, but not the "As Dr. Kangpu Xu has pointed out in his report" phrase that indicates that this language is intended to be a direct quotation.  The only conclusion to be drawn is that Plaintiffs failed to highlight the language indicating the quotations in an effort to deliberately mislead the Court.

extent that Plaintiffs would like to further inquire into the authorship of Dr. Xu's report, they are entitled to do this through cross-examination at trial.

Plaintiffs' second justification for demanding that this Court reopen fact discovery to allow Mr. Leuchtman's deposition is that Dr. Hughes's testimony concerning the origin of his report indicates that due to Dr. Hughes's busy travel schedule, Mr. Leuchtman provided him with an initial draft of the report. *See, e.g.,* Stein Cert. Ex. H. at 8:19-20 ("He [Mr. Leuchtman] wrote this document, which I edited electronically, signed, and sent back to him, yes."). As Dr. Hughes immediately and candidly disclosed at his deposition, Mr. Leuchtman assisted in the creation of Dr. Hughes's March 2, 2010 report, which, as discussed above, quoted liberally from Dr. Xu's report. Stein Cert. Ex. H at 6:2 - 8:20; 9:21-10:3. Dr. Hughes explained that the expert deadlines were looming near. *Id.* He was traveling and did not have Plaintiffs' records with him. *Id.* Dr. Hughes, who is also Mr. Leuchtman's *client* in this matter, therefore requested that *his attorney*, Mr. Leuchtman, provide him with an initial draft of the expert report, which Dr. Hughes then edited and finalized by putting it on his own letterhead and affixing his electronic signature.[2] *Id.* No one hid the ball here.

The fact that Mr. Leuchtman participated in the authorship of an initial draft of Dr. Hughes's report cannot justify a deposition of Mr. Leuchtman because Plaintiffs have already obtained all permissible discovery about Mr. Leuchtman's authorship role from their deposition of Dr. Hughes. At Dr. Hughes's deposition, he immediately and forthrightly answered questions concerning the authorship of his report. He did not attempt to conceal, evade, or otherwise hide the genesis of this report. To the extent that Plaintiffs wanted to

---

[2] Plaintiffs also attempt to make much of the fact that Dr. Hughes affixed an electronic signature to the report. There is no question that this was Dr. Hughes's signature meant to authenticate the report as having been issued by him.

establish Mr. Leuchtman's role in the authorship of Dr. Hughes's report, they were able to do so.[3]

However, once Plaintiffs attempted to move beyond the discussion of how the report came to be written and into discussions of Mr. Leuchtman's and Dr. Hughes's communications about their legal theories, case strategy, and other privileged information, Mr. Leuchtman asserted that these communications were protected by the attorney-client privilege and the work product doctrine.  Mr. Leuchtman's assertion of privilege in the unusual circumstance before the Court was entirely justified.  That is, where the deponent is both a defendant and the expert, federal courts have held that Fed. R. Civ. P. 26(a)(2) does not force the client to waive the protections of the attorney-client privilege and attorney work product doctrine.  *See WPI Termiflex, Inc. v. Meritor Automotive, Inc.*, 1999 WL 814338 (D.N.H. 1999) (holding that where a 30(b)(6) designee also serves as expert witness, Rule 26(a)(2)(B)'s disclosure requirements "do not operate to annul the attorney-client privilege between defense counsel and their client.").

Furthermore, <u>Plaintiffs never challenged Genesis's assertion of privilege over these communications before the Magistrate Judge</u>, and any attempt to do so now is waived.  *See Jordan v. Tapper*, 143 F.R.D. 567, 570-571 (D.N.J. 1992) (holding "parties who are before a magistrate judge [must] raise any and all arguments before the magistrate, and not wait to raise new arguments before the district court"); *Cooper Hospital/University Med. Ctr. V. Sullivan*, 183 F.R.D. 135, 142 (D.N.J. 1998) ("parties who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal.").  Because Genesis's assertion of

---

[3] Plaintiffs also attempt to impugn the origin of Dr. Hughes's *curriculum vitae*.  As Dr. Hughes unequivocally testified, he recognized the *curriculum vitae*, it has been used many times to introduce him at functions, and although it was not originally prepared by him, it is an accurate summary of his background and qualifications.

privilege is valid, Plaintiffs cannot obtain additional information regarding the contents of these privileged communications through a deposition of Mr. Leuchtman, who will also be required to assert the privilege with respect to these communications.  Thus, Plaintiffs cannot obtain any further facts from a deposition of Mr. Leuchtman than they have already elicited from Dr. Hughes.

   Finally, Plaintiffs' assertion that Dr. Hughes backed away from opinions expressed in his report is categorically false, and, in any event, would not justify a deposition of Genesis's attorney.   As is appropriate at an expert deposition, Dr. Hughes clarified his opinions.  Specifically, he testified that a common cause of misdiagnosis in the PGD context is due to unprotected intercourse, but that there is no way to prove that this is "the most common" cause of PGD failure.  Stein Cert. Ex. H. at 76:6-16.  Similarly, Dr. Hughes clarified that where his report states that he would refer a patient who refused to undergo amniocentesis or CVS to another organization, he meant that because he runs a laboratory, and does not have a doctor-patient relationship with the patient, he would inform the treating physician of other laboratories that might perform the genetic testing, but not directly provide the patient with a referral.  Stein Cert. Ex. H at 38:3-40:19.  Most critically, Dr. Hughes testified that the opinions in his report are his opinions, and that he continues to concur with the conclusions expressed in that report.  Stein Cert. Ex. H at 80:13-81:6.  Even if Plaintiffs' assertion that Dr. Hughes backed away from his conclusions was correct -- which it is not -- these are fit subjects for cross-examination at trial, but not adequate justification for reopening fact discovery, much less for the deposition of Genesis's counsel Mr. Leuchtman.  In short, Plaintiffs have not advanced any factual or legal basis for reopening fact discovery for the purpose of taking Mr. Leuchtman's deposition.

Here, Plaintiffs have entirely failed to meet the *Johnston Development Group* standard.   As a preliminary matter, Plaintiffs have not made even a threshold showing that the relative quality of information in Mr. Leuchtman's knowledge would justify the taking of the deposition or that the information is not available from another source -- here, Dr. Hughes and Dr. Xu -- that they have already utilized and that is less intrusive into the adversarial process.  Indeed, as set forth above, the information in Mr. Leuchtman's knowledge was either (a) already provided to Plaintiffs through Dr. Hughes's or Dr. Xu's testimony or (b) is not an appropriate topic of inquiry because it remains protected under the attorney-client privilege.   The final prong of the *Johnston Development Group* test requires the Court to consider "the harm to the party's representational rights of its attorney if called upon to give deposition testimony."   *Johnston Development Group*, 130 F.R.D. at 353.   Here, Plaintiffs' stated intention is to use Mr. Leuchtman's deposition as a basis for "[r]aising a question as to the continued appearance of Stephen N. Leuchtman as attorney for the Defendant, challenging his *pro hac vice* status."   Plaintiffs' professed intention to use this deposition to bootstrap themselves into a position where they can file a frivolous disqualification motion is precisely the kind of harassment and litigation misconduct the *Johnston Development Group* court meant to eradicate. *See Intelli-Check, Inc. v. Tricom Card Technologies, Inc.*, 2005 U.S. Dist. LEXIS 38794, at *20 (D.N.J. Nov. 10, 2005) (refusing to indulge "improper and oppressive use of the subpoena power in the absence of a showing of the proposed depositions' relevance to the viable claim or defense" where "[i]t does not require a great stretch of imagination for th[e] Court to infer that [a party's] true purpose in seeking the depositions of [trial counsel] is an effort to lay the groundwork for their eventual disqualification as trial counsel, rather than for any legitimate discovery purpose.").   The Magistrate

Judge's decision denying Plaintiffs' request to depose Mr. Leuchtman should be summarily affirmed.

**POINT III: THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUEST TO RE-DEPOSE NYU PERSONNEL OR TAKE FURTHER DISCOVERY FROM GENESIS REGARDING THE PARTIES' STANDARD PRACTICES WITH RESPECT TO THE IVF REPORTS.**

Plaintiffs contend that they are entitled to re-depose at least two NYU witnesses because, in reviewing the facts with Dr. Hughes at his expert deposition they, for the first time, asked him questions about procedures between NYU and Genesis concerning Genesis's practice of issuing preliminary and final reports to NYU. Stein Cert. Ex. H at 57:19 - 65:1. All parties were aware of the existence of these two reports during the fact discovery period, and had ample opportunity to depose the fact witnesses concerning the reports. Indeed, this court afforded Plaintiffs approximately two years for fact discovery, and Plaintiffs have not set forth a shred of evidence in support of the idea that they could not have obtained this evidence sooner. Blaine Decl. ¶ 3-5. Dr. Hughes himself sat for a fact deposition more than a year ago. *Pl. Br.* at 7. Plaintiffs have not provided this Court with a transcript of that deposition, nor with any evidence that Dr. Hughes was even asked at his fact deposition about the issues into which they now seek to inquire. *See* Stein Cert.

Plaintiffs' failure to conduct an adequate fact deposition of Dr. Hughes during the two year fact discovery period does not justify re-opening fact discovery now. Indeed, if Plaintiffs' approach to discovery was tolerated by this Court, we would be faced with an unbounded iterative process in which Plaintiffs would take an expert deposition, claim it raised "fact" issues, take additional fact discovery, thus necessitating a need to re-depose the experts, which in turn would

raise additional "fact" issues, *ad infinitum*.  The Magistrate Judge acted well within her discretion in denying fact discovery that Plaintiffs should already have taken.


### POINT IV: THE MAGISTRATE JUDGE ACTED WELL WITHIN HER DISCRETION IN DENYING PLAINTIFFS' REQUEST TO DEPOSE DR. ZEV ROZENWAKS.

Genesis is, frankly, puzzled by Plaintiffs' request to depose Dr. Zev Rozenwaks.  Dr. Rozenwaks is a colleague of Genesis's expert, Dr. Kangpu Xu, and the chairman of Dr. Xu's department.  **He has no other connection to the facts and circumstances of this case.**  Plaintiffs' brief suggests that they are entitled to take Dr. Rosenwaks' deposition because "[i]n his deposition, Dr. Xu went beyond any comment made in his report and thus, created the necessity for fact investigation into the subject of the Weill Cornell experience."  *Pl. Br.* at 22. That, however, is not the argument Plaintiffs made to Magistrate Salas.  Instead, Plaintiffs' original letter to Magistrate Judge Salas suggests they are entitled to depose Dr. Rosenwaks because disagreements between Plaintiffs' experts, Dr. Cutting and Dr. Strom, and Genesis's expert, Dr. Xu, have purportedly "created a cloud over the factual underpinnings of [Dr. Xu's] opinions, and certainly justif[y] further inquiry of Weill Cornell as to what the 'state of the art' analyses were back several years prior to the Grossbaum's study."  Blaine Decl. at 16.  Plaintiffs also now reference a second dispute between their experts and Dr. Xu over the incidence of a particular known shortcoming to this technology: allele drop out. *Pl. Br.* at 22.  Both arguments are waived because they were not presented to Magistrate Judge Salas.  *See Jordan*, 143 F.R.D. at 570-571 (refusal by district court to consider argument not raised before magistrate judge); *Cooper Hospital/University Med. Ctr.*, 183 F.R.D. at 142 (same).

In any event, Plaintiffs' justifications for deposing Dr. Rosenwaks are without merit.  Indeed, we have seen this tactic from Plaintiffs before.  Plaintiffs' purported problem (*i.e.*, their failure to do adequate factual information guided by their experts while fact discovery was open) is due to Plaintiffs' failure to engage the experts that they themselves admitted they needed to guide fact discovery while fact discovery was open.  *See* Blaine Decl. Ex. 18 ("This is not the kind of case which a plaintiff or counsel can understand and evaluate without the assistance of consultants."); Blaine Decl. Ex. 9 ("In this type of case with specialized and highly technical medicine, counsel depends on the experts to guide our fact investigation.").  However, as late as September 21, 2009, which was _more than six weeks after_ fact discovery closed in this matter, Plaintiffs had still failed to engage the experts that they themselves repeatedly stated they needed to "guide fact discovery."  Blaine Decl. Ex. 1 at 18:19-21:6 (Court concluding "we really don't have an identifiable expert at the . . . current moment.").  Plaintiffs have known from day one that other laboratories' experience with PGD and technical aspects of the technology (such as the rate of allele drop out) were issues in this case.  Nor has it ever been a secret that Cornell was one of the five laboratories in the country that performed PGD during the relevant time.  If Plaintiffs thought that Cornell's practices or studies were relevant to this case, they could have served a subpoena during the fact discovery process.

Plaintiffs' failure to adequately and timely prosecute their case does not entitle them to a "discovery mulligan" now, especially here, where they are seeking to depose our expert's boss in an apparent effort to (a) obtain facts they failed to obtain during fact discovery and (b) intimidate and harass our expert.  Such discovery misconduct should not be tolerated by this Court.  Given that Dr. Rozenwaks has no personal knowledge of the material facts of this case, Genesis cannot discern a legitimate basis for allowing Plaintiffs to depose Dr. Rozenwaks.

## POINT V:   PLAINTIFFS' REQUEST TO CHALLENGE THE *PRO HAC VICE* STATUS OF LEAD COUNSEL STEPHEN N. LEUCHTMAN MUST BE DENIED.

Plaintiffs' challenge to Mr. Leuchtman's *pro hac vice* status is procedurally deficient on two grounds.  First, Plaintiffs' notice of motion does not seek to appeal Magistrate Judge Salas's denial of their request to file a motion challenging Mr. Leuchtman's *pro hac vice* status.  As a result, that issue is not properly before the Court.  *See* L. Civ. R. 72.1(c)(1)(A) (A party appealing a Magistrate Judge's order "shall file with the Clerk and serve on all parties a written notice of appeal which shall specifically designate the order or part thereof appealed from and the basis for objection thereto"; *Diaz v. Demane*, 2007 U.S. Dist. LEXIS 94069 at *16 - *22 (D.N.J. Dec. 21, 2007) (denying appeal of Magistrate Judge's order where appellants failed, *inter alia*, to comply with L. Civ. R. 72.1(c)(1)(A)'s requirement that appellants' written notice of appeal identify the order or part thereof appealed from).

Second, Plaintiffs' apparent appeal of Judge Salas's denial of their request to challenge Genesis lead counsel Stephen Leuchtman's *pro hac vice* status is predicated on entirely different grounds than the concerns raised in their June 1, 2010 and June 2, 2010 letters.  Because Plaintiffs did not make these arguments before the Magistrate Judge, who heard the application in the first instance, these new arguments are waived on appeal.  *See Jordan*, 143 F.R.D. at 570-571 (refusal by district court to consider argument not raised before magistrate judge); *Cooper Hospital/University Med. Ctr.*, 183 F.R.D. at 142 (same).

Before the Magistrate Judge, Plaintiffs sought to challenge Mr. Leuchtman's *pro hac vice* status based on their assertion that his objections (to form and based on privilege) at Dr. Hughes's deposition were improper speaking objections.  Blaine Decl. Ex. 16.  Plaintiffs' brief in support of appeal, however,

makes no mention of these grounds; rather, it asserts -- for the first time -- that Mr. Leuchtman's *pro hac vice* status should be revoked because of his involvement with the drafting of the expert report submitted by *his client*, Dr. Hughes, and *Plaintiffs'* tactical decision to harass Mr. Leuchtman by seeking his deposition in this matter.  *Pl. Br.* at 25.   Plaintiffs' current argument is therefore not properly before this Court.

Magistrate Judge Salas denied Plaintiffs' request because "Plaintiffs have not pointed this Court to any evidence to support the contention that Mr. Leuchtman acted improperly during depositions in this case."  July 13 2010 Letter Order at 3.  Given that Plaintiffs' proposed motion to revoke Mr. Leuchtman's *pro hac vice* status had no factual basis, was wasteful of the Court's and the parties' time, and was clearly intended to harass Mr. Leuchtman and his clients, Magistrate Judge Salas's decision to deny Plaintiffs a further hearing on this matter was entirely proper.  Indeed, Plaintiffs apparently concede this point given that they have predicated their appeal of this issue on grounds entirely different than those presented to the Magistrate Judge.

Plaintiffs' current argument that Mr. Leuchtman's *pro hac vice* status should be revoked is similarly without merit.  Even if properly before the Court, Plaintiffs now argue that Mr. Leuchtman's participation in creating the first draft of the expert report submitted <u>by his client</u>, Dr. Hughes, warrants revocation of his *pro hac vice* status.  *Pl. Br.* at 25-26.  Plaintiffs, however, cite no authority whatsoever for the proposition that an attorney commits an ethical violation by participating in the drafting of an expert witness report where <u>his client</u> is the expert witness, and where, as here, there is no question that the client was entirely forthcoming about Mr. Leuchtman's role in drafting the report.

Plaintiffs' citation before this Court to *Chambers v. Heidelberg, USA, Inc.*, 2007 WL 1544255 (D.N.J. May 25, 2007) only highlights the frivolous nature

of their application to revoke Mr. Leuchtman's *pro hac vice* status.  The *Chambers* court revoked lead counsel's *pro hac vice* status where there was conclusive evidence that lead counsel (1) violated Local Civil Rule 101.1(c)(4) by filing papers with the Court that were not signed by local counsel; (2) placed local counsel's signature on the papers filed with the Court without local counsel's knowledge or approval; (3) specifically intended to mislead the Court into believing the requirements of Local Civil Rule 101.1(c)(4) had been met, when in fact they had not; and, (4) after her conduct became known to the Court, lied to the Court about whether she had even attempted to contact local counsel before filing papers in violation of Local Civil Rule 101.1(c)(4).   Nothing even remotely approaching this kind of deliberately deceptive conduct has been established here. On both procedural and substantive grounds, Plaintiffs' attempts to challenge Mr. Leuchtman's *pro hac vice* status should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' appeal of Magistrate Judge Salas's July 13, 2010 Letter Order denying (1) their application for additional discovery and (2) their attempt to challenge the *pro hac vice* admission of Genesis counsel Stephen N. Leuchtman should be denied.  The Magistrate Judge's Letter Order should be affirmed in its entirety.

Respectfully submitted,

By:

    s/ Sarah Blaine
    Sarah Blaine

**LOWENSTEIN SANDLER PC**
Attorneys At Law
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
*Attorneys for Defendants Genesis Genetics
Institute, LLC and Dr. Mark Hughes*