# EXHIBIT 17



**Lowenstein Sandler**
ATTORNEYS AT LAW

**Sarah Blaine**
Associate
Tel 973 422 6728
Fax 973 422 6729
sblaine@lowenstein.com

June 3, 2010

**VIA ECF**
The Honorable Esther Salas, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   *Grossbaum v. Genesis Genetics Institute, LLC, et al.;*
        Civil Action No. 07-1359(GEB)(ES)

Dear Judge Salas:

This firm, along with Stephen N. Leuchtman, Of Counsel to the Trowbridge Law Firm, P.C., represents defendants Genesis Genetics Institute, LLC and Dr. Mark R. Hughes (collectively, "Genesis") in the above-referenced civil litigation. We write in response to Plaintiffs' June 1, 2010 and June 2, 2010 letters advising the Court of (1) the current status of expert discovery and (2) Plaintiffs' intent to seek the depositions of Genesis's litigation counsel Stephen Leuchtman, Dr. Grifo of NYU, Alexis Adler of NYU, and Dr. Zev Rozenwaks of Weill Cornell Medical College. Fact discovery in this matter remains closed, and Genesis requests that leave to take the depositions of Mr. Leuchtman and Dr. Rozenwaks or otherwise re-open fact discovery be denied.

### Genesis Should Not Be Prejudiced By Plaintiffs' and NYU's Scheduling Disputes

As a preliminary matter, there is one fact on which both Plaintiffs and NYU agree: Genesis has complied with all of its expert discovery obligations, and timely produced both of its liability experts for deposition. *See* L. Stein's June 1, 2010 Letter to the Court (noting that both Dr. Kangpu Xu and Dr. Mark Hughes were deposed "to completion" on May 13, 2010 and May 14, 2010, respectively); J. Hamad's May 20, 2010 Letter to the Court ("Since then, we have completed the depositions of co-defendant's experts."). Genesis, therefore, takes no position with respect to the scheduling disputes Plaintiffs and NYU have seen fit to bring to the Court's attention other than to respectfully request that the Court keep in mind that Genesis has complied with all of its obligations, and therefore should not be prejudiced by the other parties' inability to agree on an expert discovery schedule.

### Plaintiffs Cannot Assert a Good Faith Basis for Taking Four Additional Depositions

As the Court will no doubt recall, this is now Plaintiffs' *fifth* attempt to reopen fact discovery in this matter. *See,* Judge Brown's February 9, 2010 Order affirming Magistrate Judge Salas's September 21, 2009 and November 23, 2009 Orders. Indeed, just a few short weeks ago, on May 11, 2010, this Court entered an order in response to yet another request by Plaintiffs'

Lowenstein Sandler PC   In California, Lowenstein Sandler LLP                                                                www.lowenstein.com

65 Livingston Avenue  Roseland, NJ 07068  Tel 973 597 2500  Fax 973 597 2400                    New York  Palo Alto  Roseland

The Honorable Ester Salas, U.S.M.J.  
Page 2

June 3, 2010

counsel for additional fact discovery: "No additional fact discovery may be taken in this matter." Despite Plaintiffs' submission to this court of a four page letter and ninety page attorney certification, Plaintiffs have failed to set out any stronger a basis for their fifth attempt to reopen fact discovery than they did in any of their four previous (unsuccessful) attempts.

**Mr. Leuchtman's Deposition**

Plaintiffs' request to depose Genesis's lead counsel in this matter, Mr. Leuchtman, is nothing more than harassment, pure and simple. None of Plaintiffs' purported justifications for taking this deposition are sufficient to justify (1) disturbing the law of the case or (2) allowing this intrusion into the attorney-client relationship.

Depositions of opposing counsel are highly disfavored. *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348 (D.N.J. 1990) sets out the test governing whether a party may take the deposition of opposing counsel. Although there is no general prohibition against obtaining the deposition of adverse counsel for the purpose of obtaining relevant, non-privileged information, the Court is nevertheless required to balance the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself. *Id.* at 352. Specifically, the Court must consider "(1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony." *Id.* at 353.

Here, Plaintiffs have failed to demonstrate that the information they seek from Mr. Leuchtman's deposition is (a) relevant and (b) non-privileged. Plaintiffs offer three justifications for their request to depose Mr. Leuchtman. First, Plaintiffs argue that "there was a substantial amount of identical language, i.e. even to the extent of identical mispunctuation" in Dr. Hughes's and Dr. Xu's reports. Plaintiffs use this "fact" to draw the mistaken inference that Mr. Leuchtman must have authored both reports, and thereby "made [him]self a fact witness in this case." This argument is refuted by the reports' plain language. Plaintiffs' arguments to the contrary, the only "curiosity" here is how Plaintiffs could have failed to note that the bolded sections in Dr. Hughes's report that contain language identical to that in Dr. Xu's report also contain prefatory language indicating that Dr. Hughes is directly quoting Dr. Xu, such as "As Dr. Kangpu Xu has pointed out in his report. . ." *Cf.* Stein Certification; Exh. E, F.[1] Dr. Xu testified unambiguously that he wrote his own report. *See* Xu Dep. 36:13-16 ("Well, I read the package and then form an opinion and then I put a few points that I think I wanted to express my opinion, then I typed in my computer and I printed."); Xu Dep. 34:7-16; Xu Dep. 44:11-14.

---

[1] Indeed, examination of Exhibits E and F of the Stein Certification quickly reveals that Plaintiffs' counsel bolded the identical language, but not the "As Dr. Kangpu Xu has pointed out in his report language" that indicates that this language is intended to be a direct quotation. The only conclusion to be drawn is that Plaintiffs failed to highlight the language indicating the quotations in an effort to deliberately mislead the Court.



The Honorable Ester Salas, U.S.M.J.                                         June 3, 2010
Page 3

Dr. Xu finalized his report on February 26, 2010 and Mr. Leuchtman, in compliance with the Court's then-current scheduling order, submitted it to Plaintiffs' counsel that same day. As Dr. Hughes immediately and candidly disclosed at his deposition, Mr. Leuchtman assisted in the creation of Dr. Hughes's March 2, 2010 report, which, as discussed above, quoted literally from Dr. Xu's report. No one hid the ball here. Furthermore, one cannot possibly infer that Dr. Xu lied about writing his own report from the mere fact that Dr. Hughes's March 2, 2010 report quoted Dr. Xu's earlier report.

Plaintiffs' second justification for demanding that this Court reopen fact discovery to allow Mr. Leuchtman's deposition is that Dr. Hughes's testimony concerning the origin of his report indicates that due to Dr. Hughes's busy travel schedule, Mr. Leuchtman provided him with an initial draft of the report. *See, e.g.*, Hughes Dep. at 8:19-20 ("He [Mr. Leuchtman] wrote this document, which I edited electronically, signed, and sent back to him, yes."). As Dr. Hughes explained, the expert deadlines were looming near. He was traveling and did not have Plaintiffs' records with him. Dr. Hughes, who is also Mr. Leuchtman's *client* in this matter, therefore requested that his attorney, Mr. Leuchtman, provide him with an initial draft of the expert report, which Dr. Hughes then edited and finalized by putting it on his own letterhead and affixing his electronic signature.[2] Hughes Dep. 6:2-23; 9:21-10:3.

At Dr. Hughes's deposition, he immediately and forthrightly answered questions concerning the authorship of his report. He did not attempt to conceal, evade, or otherwise hide the genesis of this report. To the extent that Plaintiffs wanted to establish Mr. Leuchtman's role in the authorship of Dr. Hughes's report, they were able to do so.[3] However, once Plaintiffs attempted to move beyond the discussion of how the report came to be written and into discussions of Mr. Leuchtman's and Dr. Hughes's communications about their legal theories, case strategy, and other privileged information, Mr. Leuchtman asserted that these communications were protected by the attorney-client privilege and the work product doctrine. Mr. Leuchtman's assertion of privilege in the unusual circumstance before the Court was entirely justified. That is, where the deponent is both the client and the expert, federal courts have held that Fed. R. Civ. P. 26(a)(2) does not force the client to waive the protections of the attorney-client privilege and attorney work product doctrine. *See WPI Termiflex, Inc. v. Meritor Automotive, Inc.*, No. CV 97-478-M, 1999 WL 814338 (D.N.H. 1999) (holding that where a 30(b)(6) designee also serves as expert witness, Rule 26(a)(2)(B)'s disclosure requirements "do not operate to annul the attorney-client privilege between defense counsel and their client."). <u>Plaintiffs have not challenged Genesis's assertion of privilege over these communications</u>. Because Genesis's assertion of privilege is valid, Plaintiffs cannot obtain additional information regarding the contents of these privileged communications through a deposition of Mr. Leuchtman, who will also assert the privilege with

---

[2] Plaintiffs also attempt to make much of the fact that Dr. Hughes affixed an electronic signature to the report. There is no question that this was Dr. Hughes's signature meant to authenticate the report as having been issued by him.
[3] Plaintiffs also attempt to impugn the origin of Dr. Hughes's *curriculum vitae*. As Dr. Hughes unequivocally testified, he recognized the *curriculum vitae*, it has been used many times to introduce him at functions, and although it was not originally prepared by him, it is an accurate summary of his background and qualifications.



The Honorable Ester Salas, U.S.M.J.  June 3, 2010
Page 4

respect to these communications. Thus, Plaintiffs cannot obtain any further facts from a deposition of Mr. Leuchtman than they have already elicited from Dr. Hughes.

Plaintiffs' assertion that Dr. Hughes backed away from opinions expressed in his report is also categorically false, and, in any event, would not justify a deposition of Genesis's attorney. As is appropriate at an expert deposition, Dr. Hughes clarified his opinions. Specifically, he testified that a common cause of misdiagnosis in the PGD context is due to unprotected intercourse, but that there is no way to prove that this is "the most common" cause of PGD failure. Hughes Dep. 76:6-16. Similarly, Dr. Hughes clarified that where his report states that he would refer a patient who refused to undergo amniocentesis or CVS to another organization, he meant that because he runs a laboratory, and does not have a doctor-patient relationship with the patient, he would inform the treating physician of other laboratories that might performing the genetic testing, but not directly provide the patient with a referral. Hughes Dep. at 38:3-40:19. Most critically, Dr. Hughes testified that the opinions in his report are his opinions, and that he continues to concur with the conclusions expressed in that report. Hughes Dep. 80:13-81:6. Even if Plaintiffs' assertion that Dr. Hughes backed away from his conclusions was correct -- which it is not -- these are fit subjects for cross-examination at trial, but not adequate justification for reopening fact discovery, much less for the deposition of Genesis's counsel Mr. Leuchtman. In short, Plaintiffs have not advanced any factual or legal basis for reopening fact discovery for the purpose of taking Mr. Leuchtman's deposition.

Here, Plaintiffs have entirely failed to meet the *Johnston Development Group* standard. As a preliminary matter, Plaintiffs have not made even a threshold showing that the relative quality of information in Mr. Leuchtman's knowledge would justify the taking of the deposition or that the information is not available from another source -- here, Dr. Hughes -- that they have already utilized and that is less intrusive into the adversarial process. Indeed, as set forth above, the information in Mr. Leuchtman's knowledge was either (a) already provided to Plaintiffs through Dr. Hughes's testimony or (b) is not an appropriate topic of inquiry because it remains protected under the attorney-client privilege. The final prong of the *Johnston Development Group* test requires the Court to consider "the harm to the party's representational rights of its attorney if called upon to give deposition testimony." *Johnston Development Group*, 130 F.R.D. at 353. Here, Plaintiffs' stated intention is to use Mr. Leuchtman's deposition as a basis for "[r]aising a question as to the continued appearance of Stephen N. Leuchtman as attorney for the Defendant, challenging his *pro hac vice* status." Plaintiffs' professed intention to use this deposition to bootstrap themselves into a position where they can file a frivolous disqualification motion is precisely the kind of harassment and litigation misconduct the *Johnston Development Group* court meant to eradicate. *See Intelli-Check, Inc. v. Tricom Card Technologies, Inc.*, Civ. No. 04-5108(HAA), 2005 U.S. Dist. LEXIS 38794, at *20 (D.N.J. Nov. 10, 2005) (refusing to indulge "improper and oppressive use of the subpoena power in the absence of a showing of the proposed depositions' relevance to the viable claim or defense" where "[i]t does not require a great stretch of imagination for th[e] Court to infer that [a party's] true purpose in seeking the depositions of [trial counsel] is an effort to lay the groundwork for their eventual disqualification as trial counsel, rather than for any legitimate discovery purpose."). Plaintiffs' request to depose Mr. Leuchtman should be summarily denied.



The Honorable Ester Salas, U.S.M.J.    June 3, 2010
Page 5

### The NYU Fact Witness's Re-Depositions

Although we presume that the NYU Defendants will oppose this portion of Plaintiffs' motion in more detail, there is no question that Plaintiffs' request for additional fact discovery must be denied on procedural grounds. There is no question that this Court has ruled -- on at least four separate occasions -- that fact discovery is closed in this matter. *See, e.g.,* Judge Brown's February 9, 2010 Order affirming Magistrate Judge Salas's September 21, 2009 and November 23, 2009 Orders. Most recently, on May 11, 2010, this Court entered an order stating "No additional fact discovery may be taken in this matter."

Plaintiffs cannot provide sufficient grounds for changing the law of the case at this late stage. Defendant Genesis has complied with all of its discovery obligations and, unlike the other parties, produced its experts for depositions that have been completed. Genesis respectfully requests that the Court not allow Plaintiffs to drag these proceedings out further with additional fact depositions of these NYU witnesses. This court afforded Plaintiffs approximately two years for fact discovery, and Plaintiffs have not set forth a shred of evidence in support of the idea that they could not have obtained this evidence sooner. Dr. Hughes himself sat for a fact deposition more than a year ago. Plaintiffs have not provided this Court with a transcript of that deposition, nor with any evidence that Dr. Hughes was even asked at his fact deposition about the issues into which they now seek to inquire. Plaintiffs' failure to conduct an adequate fact deposition of Dr. Hughes during the two year fact discovery period does not justify re-opening fact discovery now. Indeed, if Plaintiffs' approach to discovery was tolerated by this Court, we would be faced with an unbounded iterative process in which Plaintiffs would take an expert deposition, claim it raised "fact" issues, take additional fact discovery, thus necessitating a need to re-depose the experts, which in turn would raise additional "fact" issues, *ad infinitum.*

### The Deposition of Dr. Zev Rozenwaks of Weill Cornell Medical Center

Genesis is, frankly, puzzled by Plaintiffs' request to depose Dr. Zev Rozenwaks. Dr. Rozenwaks is a colleague of Genesis's expert, Dr. Kangpu Xu, and the chairman of Dr. Xu's department. **He has no other connection to the facts and circumstances of this case.** Plaintiffs' letter suggests that they are somehow entitled to a court order allowing them to depose non-party Dr. Rozenwaks because disagreements between Plaintiffs' experts, Dr. Cutting and Dr. Strom, and Genesis's expert, Dr. Xu, have purportedly "created a cloud over the factual underpinnings of [Dr. Xu's] opinions, and certainly justif[y] further inquiry of Weill Cornell as to what the 'state of the art' analyses were back several years prior to the Grossbaum's study." Plaintiffs also reference a second dispute between their experts and Dr. Xu over the incidence of a particular known shortcoming to this technology: allele drop out. They apparently also seek Dr. Rozenwaks's deposition in an attempt to resolve this fact dispute.

We have seen an earlier version of this argument before. Plaintiffs' purported problems (*i.e.,* their failure to do adequate factual information guided by their experts while fact discovery was open) is due to Plaintiffs' failure to engage the experts that they themselves admitted they needed to guide fact discovery while fact discovery was open. *See* L. Stein's Sept. 2, 2009 Letter to the



The Honorable Ester Salas, U.S.M.J.  June 3, 2010
Page 6

Court, at 1 ("This is not the kind of case which a plaintiff or counsel can understand and evaluate without the assistance of consultants."); L. Stein's Oct. 13, 2009 Letter to the Court, at 2 ("In this type of case with specialized and highly technical medicine, counsel depends on the experts to guide our fact investigation."). However, as late as September 21, 2009, which was *more than six weeks after* fact discovery closed in this matter, Plaintiffs had still failed to engage the experts that they themselves repeatedly stated they needed to "guide fact discovery." *See Trans. of Case Management Conference*, at 18:19-21:6 (Court concluding "we really don't have an identifiable expert at the . . . current moment."). Plaintiffs' failure to adequately and timely prosecute their case does not entitle them to a do-over of fact discovery now, especially here, where they are seeking to depose our expert's boss in an apparent effort to (a) obtain facts they failed to obtain during fact discovery and (b) intimidate and harass our expert. Such discovery misconduct should not be tolerated by this Court. There is no reason why Plaintiffs could not have explored the "state of the art" during the ample time allotted for fact discovery, and their failure to do so is entirely of their own making.

Given that Dr. Rozenwaks has no personal knowledge of the material facts of this case, Genesis cannot discern a legitimate basis for allowing Plaintiffs to depose Dr. Rozenwaks. We reserve the right to seek sanctions against Plaintiffs for the costs of responding to their application.

### Defendants' Objections at the Expert Depositions Were Not Improper

Finally, as even a cursory review of the deposition transcripts provided by Plaintiffs will reveal, Plaintiffs' allegations of misconduct by defense attorneys at the depositions is similarly without merit. Defense counsel's objections to form were entirely proper, and to the extent that there is colloquy by Mr. Leuchtman on the record, it is largely, if not entirely, directed toward establishing the basis for his assertion of privilege on behalf of his client.

Please do not hesitate to contact us if we can be of further assistance to the Court prior to this afternoon's telephone conference, which is scheduled for 4:30 p.m.

Respectfully submitted,

Sarah Blaine

SB:ep

21121/2
06/03/10 14479967.1

cc:   All counsel via ECF

**Lowenstein Sandler**
ATTORNEYS AT LAW