# EXHIBIT 18

# NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON

A Professional Corporation
Counsellors At Law

LEWIS STEIN*
ALAN D. GOLDSTEIN
RONALD W. BRONSTEIN
PATRICIA E. ROCHE°
LARRY I. KRON
ROBERT D. KOBIN¤
SHARON L. FREEMAN+ ^
SUSAN B. REED
STEVEN J. LOEWENTHAL ◊

20 Commerce Boulevard, Suite E
Succasunna, New Jersey 07876
973-584-1400
Fax: 973-584-8747
Email: nsgbk.office@verizon.net

September 2, 2009

- Of Counsel -
PAUL R. NUSBAUM

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A
*Civil Trial Attorney
°Matrimonial Attorney
^Workers' Compensation Attorney
¤Member Florida Bar
◊Member New York Bar
+Member Pennsylvania Bar

Hon. Esther Salas, U.S.M.J.
US District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

Re:  Grossbaum vs. Genesis Genetics, et al.
     Civil Action No.: 07-CV-1359 (HAA)

Dear Judge Salas:

It never ceases to amaze how a defendant (Genesis Genetics) that has been contemptuous of its discovery obligations for many months should now seek to use that circumstance to defeat a determination on the merits.

This is a medical malpractice case arising from the misdiagnosis of the suitability for in vitro fertilization of embryos by a DNA laboratory that resulted in the birth of a cystic fibrosis baby in March 2005. The science involved is practiced in only three known laboratories in the United States, and is exceptionally specialized. The foundation of any evaluation of the quality of the genetic studies is the laboratory file (medical records). This is not the kind of case which a plaintiff or a counsel can understand and evaluate without the assistance of consultants.

To this end, we started our investigation in January 2007, requesting a copy of the file of Defendant, Genesis Genetics (see letter dated January 26, 2007 annexed hereto). Defendant Genesis Genetics stonewalled the request as well as follow-up request dated March 26, 2007 and Plaintiffs were required to file a suit in March 2007 to satisfy statute of limitations requirement. After locating a process server in Detroit, Michigan, the Summons & Complaint were forwarded on May 3, 2007, along with a process server fee of $50.00. However, due to this Defendant denying access to

Hon. Esther Salas, U.S.M.J.
September 2, 2009
Page Two

the process server, service was not able to be effected (see statement of process server annexed hereto indicating multiple attempts at separate addresses to serve both the corporate Defendant and the individual Defendant, and a delay of almost two months in effectuating service). With still no reply to our requests for a copy of the Genesis Genetics chart, Plaintiffs were forced to condition a second consent to an extension of time to answer upon this Defendant's delivery of a copy of the laboratory records, which was finally accomplished on August 28, 2007. An Answer was finally filed on behalf of Genesis Genetics and Mark Hughes, M.D. on September 17, 2007—almost five months after the process server first attempted service upon these Defendants. Thereafter, following a conference with the Court on December 12, 2007, a joint discovery plan was filed, endorsed by the undersigned, which provided as follows:

> No. 6- Plaintiffs' liability expert's reports are due within 30 days after the completion of all party depositions;
> No. 7- Defense liability reports are due within 60 days of the receipt of Plaintiff's liability expert's reports;
> No. 8- Plaintiff's damage expert's reports are due within 30 days of the receipt of defense liability reports.

Thereafter followed four letters addressed by the undersigned to the Court advising of the difficulties that the Plaintiffs were encountering in moving the discovery forward. Our first letter to the Court dated February 21, 2008 (a copy which is annexed hereto) advised that an oral report from our consultant, Dr. Garry R. Cutting, Professor of Pediatrics and Medicine and Director of the DNA Diagnostic Laboratory, Institute of Genetic Medicine at Johns Hopkins University, that the laboratory records of Genesis Genetics we pursued for more than seven months in 2007 were incomplete since they "did not contain certain studies which, if they existed, would be necessary for his opinions and would enable him to respond to the pertinent legal questions in this case." Our letter of the same day (see copy annexed hereto) was immediately sent to counsel for the Defendant, Genesis Genetics (including local counsel), advising of the deficiencies in the medical records provided. Doing our best to anticipate how long it would take for an appropriate response, we asked for a 45 day extension of the discovery plan referred to above. On March 14, 2008 (three weeks after our request), defense counsel, Steven M. Leuchtman, counsel to Genesis Genetics and Mark Hughes, M.D., wrote as follows:

> My client advises that the materials he has provided to you are all of those which or ever were at anytime in his possession or in the possession of Genesis Genetics.

Hon. Esther Salas, U.S.M.J.
September 2, 2009
Page Three


In June 2008, the parties began requesting Answers to Interrogatories of each other. In compliance with the Court's further scheduling order of June 4, 2008, counsel for the Plaintiffs advised Defendants that the Interrogatories were prepared saved only for Plaintiffs' Certification and inquired as to the Defendants' compliance with the Interrogatory requests. At that time, both defense counsel requested Plaintiffs' indulgence. Defendants were further prodded to answer Interrogatories by our letter of October 31, 2008, which stated:

> We would be reluctant to request the involvement of Judge Salas.

With respect to Genesis Genetics' Answers to Interrogatories, our further letter of November 18, 2008 stated:

> My intention is to notify Judge Salas tomorrow that we do not have Answers to Interrogatories on behalf of Defendants, Mark Hughes and Genesis Genetics, in the above referenced matter.

Simultaneous with that letter, Plaintiffs requested the deposition of Defendant, Dr. Mark Hughes. Within a week, parties agreed that Dr. Hughes would be deposed on Friday, January 16, 2009 in New York City. That deposition of Dr. Hughes was cancelled by the doctor and rescheduled for February 19, 2009. In the meantime, depositions of the staff of the Fertility Clinic at NYU Medical Center responsible for implanting the embryos according to the advice from Genesis Genetics began to be scheduled for Wednesday, March 11, 2009. Thereafter, as indicated in my recent letter to the Court of August 25, 2009, Defendant NYU was unwilling to provide their personnel for depositions requiring trips to New York on five separate occasions between March and the end of July of this year. In the interim, by our third letter of January 22, 2009 (see copy annexed hereto), we kept the Court advised of our efforts to continue to undertake depositions of the parties. Our concern, as expressed in said letter, was:

> My concern is the compliance with the Court's scheduling Order should not adversely impact the Plaintiffs' claim.

Notwithstanding the further advice of our consultant that additional records should have been created at Genesis Genetic, and defense counsel's representation that there were no more records, Dr. Mark Hughes admitted in his deposition on February 19, 2009 that there were more records that had not been provided to the Plaintiffs. By letter dated March 5, 2009 (copy which is annexed hereto), Plaintiffs set forth their demand for, once again, a complete copy of the Plaintiffs' chart at Genesis Genetics.

Hon. Esther Salas, U.S.M.J.
September 2, 2009
Page Four

    The missing records, when supplied, were apparently still incomplete. Our consultant advised that the records we had forwarded to him of the laboratory studies were not color-coded and that that color-coding was significant in an evaluation of the laboratory studies at Genesis Genetics. This prompted a further letter dated April 24, 2009 to counsel for Genesis Genetics asking for the color copies of a portion of the records. These requests prompted a further letter to the Court dated May 6, 2009 (see coy of letter annexed hereto), keeping the Court advised of our difficulties in obtaining the complete and useful chart from Genesis Genetics. The requested color coded records came by follow-up letter dated May 8th and prompted our letter to the Court of May 11th advising that we had finally received the complete chart.

    THE COURT SHOULD TAKE NOTE THAT THE FULL AND COMPLETE USEFUL CHART OF THE LABORATORY STUDIES WAS NOT PROVIDED TO THE PLAINTIFFS FOR 30 MONTHS OR UNTIL <u>MAY 8, 2009</u>. IN ESSENCE, THE PLAINTIFFS' EFFORTS TO GAIN EXPERT OPINIONS NECESSARY FOR EVALUATING AND PROCEEDING WITH THE CASE COULD NOT SUCCESSFULLY BE CONCLUDED UNTIL MORE THAN TWO YEARS AFTER THE LITIGATION STARTED.

    Our meeting with our consultant was finally arranged and took place in Baltimore on July 7, 2009.

    One other matter of significance should be mentioned. In the deposition of Dr. Hughes on February 19, 2009, he stated that a technique for genetic analysis that was known to him at the time of the plaintiffs' laboratory studies in July 2004 was not in full clinical use and thus, not used by him. This prompted us to consider, after receipt of the complete chart of Genesis Genetics, consultation with one of the other two laboratories in the United States that were doing these types of studies at that time to determine the credibility of Dr. Hughes' deposition testimony. That brought us into contact with Dr. Svetlana Rechitsky whose report we now await and expect momentarily. Needless to say, by the time we had the complete discovery, including the fact witnesses of the Defendants, we were in the summer months of June, July and August.

    Now comes the New Jersey counsel for Defendants, Genesis Genetics and Dr. Mark Hughes, who was not only not in attendance at any one of the eight depositions that were taken, nor in finally providing the complete useful (color-coded) records of Genesis Genetics, nor answering or propounding Interrogatories, to assert to the Court that the Plaintiffs have been dilatory in the pursuit of their case and therefore, should be penalized with a summary dismissal. Of course, it would never occur to a law firm like

Hon. Esther Salas, U.S.M.J.
September 2, 2009
Page Five

Lowenstein Sandler that a plaintiff pursuing this type of litigation might be conservative in their expenditure and pursuit of damage expert reports until the liability aspect of the case becomes crystal clear so that the damage expert, in the form of a life care planner, could be obtained thereafter. To denigrate Plaintiffs' efforts in this case to proceed in a rational, orderly and attentive manner, as was done in the letter of defense counsel, Sarah Blaine, by suggesting deposition transcripts should have been expedited to meet scheduling orders required by her clients' non-cooperation, offends this writer's sense of justice.

Respectfully submitted,

Lewis Stein

LS:svd
Enclosures
cc:   Sarah Blaine, Esq.
      Stephen N. Leuchtman, Esq.
      Jay Hamad, Esq.