# PART 7

# EXHIBITS TO DECLARATION OF SARAH BLAINE

# EXHIBIT 30



# PROHIBIT WRONGFUL BIRTH/LIFE LAWSUITS

**Senate Bill 1170 with House committee amendment**
**First Analysis (12-5-00)**

**Sponsor: Sen. William Van Regenmorter**
**House Committee: Family and Civil Law**
**Senate Committee: Judiciary**

## THE APPARENT PROBLEM:

There is a longstanding question in Michigan jurisprudence as to whether or not a person may bring a lawsuit for certain torts known generally as wrongful birth or wrongful life cases. The premise of such a lawsuit is usually based on a breach of duty to the parents that led to the birth of a child. Generally, these cases are based on a failure to diagnose a fetal defect or other problem that might have led the parents to choose to abort the pregnancy.

Although usually lumped together, the courts have delineated three separate and distinct causes of action in this area of law. First, "wrongful life" is a tort that is brought by or on behalf of a child who has been born with birth defects alleging that but for the negligence of the defendant, he or she would not have been born. Second, the tort of "wrongful birth" is distinguished from wrongful life claims because it is brought by the parents of the child rather than the child. The parents assert that but for the failure of the defendant to properly inform them of the existence or evidence of birth defects they would have chosen to abort the pregnancy. Finally, the tort of "wrongful pregnancy or conception" is based upon negligence relating to sterilization or contraception. The assertion is that the parent had taken steps which, but for the defendant's negligence, would have prevented the pregnancy.

Unfortunately, the courts have been inconsistent in deciding whether or not these torts are valid. Generally, Michigan courts have refused to recognize a cause of action for wrongful life; however, to varying degrees wrongful birth and wrongful pregnancy cases have been allowed. In fact, the courts have almost routinely invited the legislature to take action and clarify the law. The lack of statutory authority has lead to conflicting court cases, confusing results and an overall lack of certainty as to the duties and responsibilities of physicians and others in this area.

Legislation has been proposed to resolve this confusion.

## THE CONTENT OF THE BILL:

The bill would address the issue of wrongful life, birth and conception cases by adding a section to the Revised Judicature that would prohibit a person from bringing any of the following:

-- A civil action for damages on a wrongful birth claim that, but for an act or omission of the defendant, a child or children would not or should not have been born.

-- A civil action for damages on a wrongful life claim that, but for the negligent act or omission of the defendant, the person bringing the action would not or should not have been born.

-- A civil action for damages for daily living, medical, educational, or other expenses necessary to raise a child to the age of majority, on a wrongful pregnancy or wrongful conception claim that, but for an act or omission of the defendant, the child would not or should not have been conceived.

The bill's prohibitions would apply regardless of whether a child was born healthy or with a birth defect or other adverse medical condition. The prohibitions would not apply to a civil action for damages for an intentional or grossly negligent act or omission including an act or omission that violated the Michigan Penal Code.

The bill's provisions would only apply to causes of action that arose on or after the bill took effect.

MCL 600.2971

## HOUSE COMMITTEE ACTION:

The House Committee on Family and Civil Law adopted an amendment that specified that the legislation would not be retroactive.

## FISCAL IMPLICATIONS:

According to the House Fiscal Agency, the bill would have no fiscal impact. (12-2-00)

## ARGUMENTS:

### *For:*
The long history of confusion on this issue necessitates that the legislature take action to clarify the law. The bill codifies the position that a number of court cases have taken. In fact, it would codify a recent Michigan appeals court decision (*Taylor* v *Kurpati*, 236 Mich App 315 [1999]). Wrongful birth/life cases are inimical to those who believe that abortion is wrong, but allowing lawsuits when the child is not as healthy as the parents might have hoped raises issues beyond the abortion issue. For example, at what point does a failure to accurately predict something about the child-to-be stop being actionable? What if the mother is hoping for a boy and the doctor wrongly identifies the child as male -- should the mother be allowed to sue? If lawsuits are allowed but restricted to situations where the child suffers from a disability, what level of disability would warrant a lawsuit? Should the courts engage in trying determine if it is better or worse to deal with, say, deafness versus blindness?

Additionally, past courts have been concerned about the difficulty, if not impossibility, of fairly and accurately weighing the costs of care versus the joys that a child can bring. Others have been troubled by the necessity that these cases require a child's parents to take the position, publicly in court, that they would have preferred that their child had not been born. This is a horrible position not merely for the child, but for the parents as well.

Drawing a clear line prohibiting wrongful birth and wrongful life lawsuits will help to promote the value of life by recognizing that all children are valuable. It will also avoid putting the courts in a position of ascribing relative worth to different disabilities, and it will recognize that the birth of a child, regardless of disability or lack thereof, should not be treated by the state as grounds for a cause of action.

Furthermore, even though the bill would prohibit causes of action for the parents or a child where but for the negligence of another the child would not have been born, a plaintiff in a wrongful conception or pregnancy case would still be able to bring a lawsuit for damages arising from, among other things, the costs related to the pregnancy and birth. Finally and importantly, the entire law is not absolute since it would allow an action for damages based upon an intentional or grossly negligent act or omission.

### *For:*
Wrongful birth cases tacitly put a lower value on the lives of disabled persons. There appears to be an entrenched notion in this area of the law that a reasonable parent would have an abortion upon knowing that the child would be handicapped. In wrongful pregnancy cases, where the child is unwanted but healthy, the courts generally do not assume that abortion is reasonable, although it is usually permissible. But in wrongful birth cases, where the child has a genetic defect, the courts assume the opposite – that abortion is reasonable, although some parents might chose against it. This diminishes the worth of disabled persons and thus, it should not continue.

### *Against:*
The law unfairly blocks an important avenue for recovery for a harm. While many may feel that it diminishes the value of persons with disabilities to allow their parents to recover damages in these cases, it is the cost of caring for the disabled child that is at issue, not the value of the individual. Caring for a seriously disabled child can be a serious burden on the parents, not just financially, but physically and emotionally. It is both unreasonable and unfair to block parents' ability to recover those costs that they end up paying because of someone else's negligence. The fact that some may disapprove of the parent's position that they would have terminated the pregnancy is not good reason to prohibit them access to recover costs for care of that child.

Further, by not allowing these lawsuits the bill could run afoul of the equal protection provisions of the United States Constitution. If any other person has a condition which is negligently diagnosed and suffers harm as a result of the error, he or she has the right to bring a lawsuit against the responsible party. Under the provisions of the bill, a woman who is pregnant would no longer have the right to bring a lawsuit for a negligent diagnosis relating to the status of her pregnancy.

Under *Roe v Wade*, 410 U. S. 113, abortion is a protected right stemming from an individual's right to privacy. The Constitution offers basic protection to a woman's right to choose whether to have an abortion. Under *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U. S. 833, a woman has a right to terminate her pregnancy before viability, and a state law is unconstitutional if it imposes on the woman's decision an "undue burden," i.e., if it has the purpose or effect of placing a substantial obstacle in the woman's path. After viability, the state, in promoting its interest in the potentiality of human life, may regulate, and even proscribe, abortion except where necessary, in appropriate medical judgment, to preserve the life or health of the mother. Since the right to an abortion is a protected right, the question would be whether or not this law had the purpose or effect of creating a substantial obstacle to abortion. As long as a pregnant woman in this country has a right to have an abortion, then it is imperative that she be fully and accurately informed as to all aspects of her pregnancy, not merely those aspects of her pregnancy that might encourage her to choose not to get an abortion.

### *Against:*

Another possible problem stems from medical advances in fetal surgery. There are currently some procedures that may be performed on a fetus while in the womb to correct or improve certain birth defects. It is possible that such procedures (or other similar procedures developed in the future) could be perfected to the degree that they might be significantly more likely to, if not cure, effect a better result than if the surgery is delayed until after the child's birth. In such a situation it is possible that a failure to make an early diagnosis could have a significant impact on the health and well being of the child.

### *Response:*

Such a case would not have to be brought under the wrongful birth/life legal framework. In such a case the child's injuries (as opposed to his or her existence) would be a result of the negligence of the would-be defendant and thus, any case alleging such negligence would likely be able to proceed under the usual medical malpractice or normal negligence laws.

### POSITIONS:

Right to Life of Michigan supports the bill. (12-1-00)

Adopt America Network supports the bill. (12-1-00)

Planned Parenthood Advocates of Michigan opposes the bill. (12-1-00)

The American Civil Liberties Union opposes the bill. (12-2-00)

Analyst: W. Flory

#This analysis was prepared by nonpartisan House staff for use by House members in their deliberations, and does not constitute an official statement of legislative intent.