02981.00101-RSE

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ 07068
(973) 618-4100
ATTORNEYS FOR DEFENDANTS-
New York University School of Medicine and New York University Hospitals Center

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as guardians ad litem of the infant, ROSIE GROSSBAUM, | Hon. Garrett E. Brown, Jr. |
| | Civil Action No. 07-1359 (GEB) |
| Plaintiffs, | |
| v. | **BRIEF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER IN RESPONSE TO THE MOTION OF DEFENDANTS GENESIS GENETICS INSTITUTE, LLC AND MARK HUGHES FOR SUMMARY JUDGMENT** |
| GENESIS GENETICS INSTITUTE, LLC of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of New York, ABC CORPS. 1-10, and JOHN DOES 1-10, | |
| Defendants. | |

**BRIEF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND
NEW YORK UNIVERSITY HOSPITALS CENTER IN RESPONSE TO THE MOTION
OF DEFENDANTS GENESIS GENETICS INSTITUTE, LLC
AND MARK HUGHES FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ...................................................................................................................ii

I.      INTRODUCTION ................................................................................................................. 1

II.     COUNTERSTATEMENT OF FACTS .............................................................................. 1

III.    ARGUMENT ....................................................................................................................... 1

   A.   NEW JERSEY LAW ISSUES ....................................................................................... 1

      1.   Causation............................................................................................................... 1

         a.   Choice of Law ................................................................................................. 1

         b.   Because plaintiffs based their decision to proceed with the IVF/PGD processes on
              what Hughes told them, but not on what NYU told them, plaintiffs cannot prove
              the proximate cause element of their case against NYU, although they may prove
              that factor against Genesis/Hughes ........................................................................ 3

         c.   Plaintiffs' precluding abortion as an option defeats their wrongful birth and
              wrongful life claims as to all defendants ................................................................ 5

         d.   Plaintiffs have not produced expert testimony ruling out plaintiffs sexual relations
              during their IVF cycle as the origin of their daughter ........................................... 6

      2.   New Jersey's statute of limitations ......................................................................... 7

   B.   MICHIGAN LAW ISSUES............................................................................................. 8

   C.   NEW YORK LAW ISSUES........................................................................................... 14

      1.   Causation............................................................................................................... 14

      2.   Plaintiff's wrongful birth and wrongful life claims ............................................... 15

      3.   The New York medical malpractice statute of limitations ..................................... 16

      4.   Plaintiffs' experts against Genesis/Hughes........................................................... 19

IV.    CONCLUSION................................................................................................................... 19

# TABLE OF CITATIONS

**Page**

**Cases**

*Agostino v. Quest Diagnositcs Inc.*, 256 F.R.D. 437 (D. N.J. 2009) ............................................. 2

*Becker v. Schwartz*, 46 N.Y.2d 401, 386 N.E.2d 807 (1978) ............................................... 14, 16

*Canesi v. Wilson*, 158 N.J. 490, 730 A.2d 805 (1999)........................................................... 3, 4

*DeChico v Northern Westchester Hospital Center*, 73 A.D.3d 838, 900 N.Y.S.2d 743 (App. Div.
   2010) ....................................................................................................................... 14, 16

*Hummel v. Reiss*, 129 N.J. 118, 608 A.2d 1341 (1992)............................................................ 5, 6

*Jennings v Southwood*, 446 Mich. 125, 521 N.W.2d 230 (1994) .............................................. 8

*P.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453 (2008) ............................................ 1, 2, 9, 12

*Rockefeller v. Moront*, 81 N.Y.2d 560, 618 N.E.2d 119 (1993)............................................... 16

*Rodriguez v Saal*, 43 A.D.3d 272, 841 N.Y.S.2d 232 (App. Div. 2007)................................... 17

*Taylor v. Shelby*, 236 Mich. App. 315, 600 N.W.2d 670 (1999)............................................... 10

*Warriner v. Stanton*, 475 F.3d 497 (3d Cir. 2007)...................................................................... 1

*Weiner v. Lenox Hill Hospital*, 88 N.Y.2d 784, 673 N.E.2d 914 (1996)................................... 17

**Statutes**

CPLR § 214(6)......................................................................................................................... 18

CPLR § 214-a .......................................................................................................................... 16

MCL § 600.2971 ........................................................................................................................ 8

MCL § 600.2971(4) .................................................................................................................... 8

**Rules**

F.R.Civ.P. 56(f)......................................................................................................................... 6

**Treatises**

Restatement 2d Conflict of Laws, § 145, comment b............................................................... 13

## I.      INTRODUCTION

Defendants New York University School of Medicine and New York University Hospitals Center ("NYU defendants") have a crossclaim against defendants Genesis Genetics Institute, LLC and Mark Hughes (collectively, "Genesis/Hughes").  In the event that the Court denies the NYU defendants' motion for summary judgment, they rely on plaintiffs' anticipated opposition to Genesis/Hughes' motion for summary judgment.  Because the details of plaintiffs' opposition were unknown when this brief was filed, the NYU defendants respectfully submit the following points for the Court's consideration concerning the issues raised by Genesis/Hughes' motion for summary judgment.

## II.     COUNTERSTATEMENT OF FACTS

The NYU defendants incorporate by reference the facts stated in their Local Rule 56.1 statement and brief in support of their motion for summary judgment, and the facts stated in their response to Genesis/Hughes' Local Rule 56.1 statement in support of their motions for summary judgment and to strike plaintiffs' experts.

## III.    ARGUMENT

### A.      NEW JERSEY LAW ISSUES

#### 1.      Causation

##### a.      Choice of Law

In their motion for summary judgment, the NYU defendants correctly recognized that choice of law in a diversity case is governed by the rules of the forum state.  *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007), and that this diversity case is governed by New Jersey law, which employs the "most significant relationship" test as found in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement") to choice-of-law questions.  *P.V. v. Camp Jaycee*, 197 N.J. 132, 135-136, 962 A.2d 453, 455 (2008) (adopting test); *Agostino v. Quest*

1

*Diagnositcs Inc.*, 256 F.R.D. 437, 460-461 (D. N.J. 2009) (applying New Jersey's most significant relationship test to plaintiffs' tort and breach of contract claims in class action).

As the New Jersey Supreme Court explained, "Under that standard, the analysis in a personal injury case begins with the [Restatement] section 146 presumption that the local law of the state of the injury will apply.  Once the presumptively applicable law is identified, that choice is tested against the contacts detailed in section 145 and the general principles outlined in section 6 of the Second Restatement.  If another state has a more significant relationship to the parties or issues, the presumption will be overcome.  If not, it will govern." *P.V.*, *supra*, 197 N.J. at 135-136, 962 A.2d at 455.

In *P.V.*, the New Jersey Supreme Court resolved the choice of law issue regarding Pennsylvania law and New Jersey law by applying the law of Pennsylvania, the state in which the injury occurred, rather than the law of New Jersey, the state in which both the injured plaintiff and the accused defendant resided; the state in which their relationship developed, and the state in which the defendant was protected from liability by New Jersey's charitable immunity doctrine.

Guided by *P.V.*, the NYU defendants reasoned that, because the injury in this case occurred in New Jersey where the plaintiffs' daughter was born and where the plaintiffs incurred and will incur the extraordinary expenses involved in her care, New Jersey law presumptively applies, unless some other state has a more significant relationship to the parties or the issues.  Although Genesis/Hughes are based in Michigan and the NYU defendants are based in New York, New Jersey has at least four overarching relationships to this case, besides being presumptively the state whose law applies to this case:  (1) it is the state where the injury occurred and its sequelae continue; (2) it is the state where plaintiffs and their child reside; (3) it

2

is the state which has the most direct and most substantial interest in the economic welfare of plaintiffs and their child; and (4) it has heightened restrictions, applicable as substantive law in its state and federal courts, on the qualifications of experts providing certificates of merit and testimony against medical malpractice defendants such as the NYU defendants.  Accordingly, the NYU defendants concluded that New Jersey law should govern this case.

> **b.**   **Because plaintiffs based their decision to proceed with the IVF/PGD processes on what Hughes told them, but not on what NYU told them, plaintiffs cannot prove the proximate cause element of their case against NYU, although they may prove that factor against Genesis/Hughes**

The NYU defendants' motion for summary judgment focused, in part, on the "reliance" prong of the proximate cause element of New Jersey wrongful birth/wrongful life claims as expressed in the New Jersey Supreme Court's most recent decision in this area of the law. *Canesi v. Wilson*, 158 N.J. 490, 506, 730 A.2d 805, 813 (1999) ("In a wrongful birth case, on the other hand, a plaintiff need not prove that the doctor's negligence was the medical cause of her child's birth defect.  Rather, **the test of proximate causation is satisfied by showing that an undisclosed fetal risk was material to a woman in her position**; the risk materialized, was reasonably foreseeable and not remote in relation to the doctor's negligence; and, **had plaintiff known of that risk**, she would have terminated her pregnancy.  The emotional distress and economic loss resulting from this lost opportunity to decide for herself whether or not to terminate the pregnancy constitute plaintiff's damages.") (emphasis added).

Because plaintiffs' testimony established that the risk information conveyed by NYU was not material to the plaintiffs' decision to proceed with the IVF and PGD processes, but rather that the material factor in their decision was the lower risk information provided to them by Hughes, plaintiffs could not establish the proximate causation element of their claims against the

3

NYU defendants, entitling those defendants to summary judgment in their favor as a matter of law.

The situation is just the opposite with respect to Genesis/Hughes. They cannot obtain summary judgment in their favor on this proximate cause element, because what Hughes said to plaintiffs was unquestionably the proximate cause of plaintiffs' decision to go through the IVF/PGD processes.

Moreover, under New Jersey law, as *Canesi* established, medical causation is not a factor in the plaintiffs' wrongful birth and wrongful life claims against Genesis/Hughes. To paraphrase *Canesi*, plaintiffs "need not prove" that Genesis/Hughes' negligence was the "medical cause" of their daughter's CF; they need only prove that Genesis/Hughes negligently estimated or reported the risk for CF, which was material to plaintiffs, and that that risk was realized. *Canesi*, *supra*, 158 N.J. at 506, 730 A.2d at 813.

Genesis/Hughes' motion refers to a 5% risk quoted by Hughes to the plaintiffs and the motion asserts that the actual risk posed to and realized by the plaintiffs was in that 5% range. (Genesis/Hughes' summary judgment brief, p. 36-37.)   However, as noted in the NYU defendants' motion for summary judgment and their Local Rule 56.1 statement and exhibits, the risk that Hughes quoted to plaintiffs was 2%-3%.   Moreover, Genesis/Hughes' motion for summary judgment and their Local Rule 56.1 statement and exhibits do not include the details of the various experts' testimony about the risks involved in this case, and thus fail to establish that there is no genuine issue of material fact that the actual risk presented to and realized by the plaintiffs was truly within the range provided by Hughes, not higher than that range.

Genesis/Hughes noted in their motion for summary judgment that they had the threshold burden to show that there is no genuine issue of fact and that they were entitled to summary

4

judgment as a matter of law.  (Genesis/Hughes' summary judgment brief, p. 10.)  However, with respect to the proximate cause issue under *Canesi*, Genesis/Hughes have not sustained their primary burden.  Consequently, Genesis/Hughes cannot obtain summary judgment on that issue.

> **c.    Plaintiffs' precluding abortion as an option defeats their wrongful birth and wrongful life claims as to all defendants**

However, Genesis/Hughes' motion for summary judgment raises another point farther along the proximate causation analysis under New Jersey law, on which all defendants, including the NYU defendants, would be entitled to summary judgment in their favor as a matter of law: plaintiffs do not have a valid wrongful birth claim or a valid wrongful life claim under New Jersey law, because those claims are predicated on the defendant's deprivation of the mother's right to abort a pregnancy, and plaintiffs' testimony in this case demonstrates that abortion was entirely out of the question for them even before they decided to begin the IVF/PGD processes. (Genesis/Hughes' summary judgment brief, p. 32-33.)

The New Jersey Supreme Court's decision in *Hummel v. Reiss*, 129 N.J. 118, 126, 608 A.2d 1341, 1346 (1992) (no cause of action based upon a birth that occurred before *Roe v. Wade*, when eugenic abortion was not available), underscores the linkage between liability and abortion in New Jersey wrongful birth/wrongful life jurisprudence.  On that point, the Court explained that "[t]he breaches of duty in *Procanik*, *Berman*, and *Schroeder* all revolve, at least in part, around the defendant-doctor's failure to diagnose a condition that might have caused the parents to terminate the pregnancy had they been informed of that condition.  The wrongful-life and -birth causes of action are, therefore, dependent on a woman's right to terminate a pregnancy for reasons other than the mother's health." *Hummel*, 129 N.J. at 126, 608 A.2d at 1345.

Further underscoring the point, the New Jersey Supreme Court summarized its analysis and holding by stating, "In 1971, then, when Kelly Hummel was born, the state of the law was

such that the defendants in *Berman, Schroeder*, and *Procanik* could not have been liable. Even had the respective doctors diagnosed Down's Syndrome (*Berman*), cystic fibrosis (*Schroeder*), or rubella (*Gleitman, Procanik*), the parents of the impaired children would have had no recourse: no abortion was legally available to them in New Jersey." *Hummel*, 129 N.J. at 126, 608 A.2d at 1345.

Because New Jersey law holds that parents of impaired children and impaired children themselves have no recourse when abortion was not legally available to the parents to terminate the pregnancy in question, there should be no recourse when abortion was not personally available to the parents. On this ground, the Court should enter summary judgment in favor of all defendants, including the NYU defendants.[1]

> **d.    Plaintiffs have not produced expert testimony ruling out plaintiffs sexual relations during their IVF cycle as the origin of their daughter**

Another causation point raised in Genesis/Hughes' motion for summary on which all defendants, including the NYU defendants, would be entitled to summary judgment in their favor as a matter of law is the fact that plaintiffs have not produced expert testimony that their daughter originated from one of the two implanted embryos, but not from plaintiffs' sexual intercourse during the IVF cycle. (Genesis/Hughes' summary judgment brief, p. 33-35.)

---

[1]    Under the controlling version of F.R.Civ.P. 56, which became effective on December 1, 2010, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." F.R.Civ.P. 56(f) ("Judgment Independent of the Motion"). Plaintiffs had notice of these grounds though Genesis/Hughes' motion for summary judgment; the Rule itself alerted plaintiffs that summary judgment could be entered for the NYU defendants; and plaintiffs have the opportunity and a reasonable time to respond to these grounds.

Although the NYU defendants do not concede the failure risk factors for over-the-counter spermicides and for condoms belatedly introduced by Genesis/Hughes without proper authentication and expert support, Genesis/Hughes' summary judgment motion raises the legally pertinent contention that plaintiffs do have the legal burden of proving factual causation through expert testimony that rules out the plaintiffs' admitted sexual relations, during their IVF cycle in which Mrs. Grossbaum's fertility was enhanced, as the origin of their daughter, but neither of their experts addressed that issue in their reports or in their deposition testimony. (Genesis/Hughes' summary judgment brief, p. 33-35.)

Plaintiffs' burden of proof on their informed consent claim (to the extent that such a claim exists in this case) and on their wrongful birth and wrongful life claims includes establishing factual causation through admissible expert testimony that plaintiffs' sexual relations did not lead to the development of their daughter.  On the present record, plaintiffs cannot satisfy that burden.  On that basis, therefore, the Court should enter summary judgment for all defendants.

### 2.       New Jersey's statute of limitations

Genesis/Hughes contends that plaintiffs' wrongful birth claim is barred by New Jersey's two-year statute of limitations and its discovery rule, because plaintiffs agreed in writing to undergo CVS or amnio testing, and such testing would have revealed that plaintiffs' unborn child was CF-affected no later than October of 2004, more than two years before plaintiffs commenced this action on March 23, 2007.  (Genesis/Hughes' summary judgment brief, p. 31-32.)

The record establishes that plaintiffs made the same written promise to the NYU defendants.  (See, *e.g.*, Genesis/Hughes' Local Rule 56.1 Exhibit 13 at CG091.)  Therefore, if the Court accepts the argument and grants summary judgment to Genesis/Hughes on the New Jersey

statute of limitations, it should grant summary judgment on that basis to the NYU defendants as well.

### B.      MICHIGAN LAW ISSUES

Genesis/Hughes' motion for summary judgment presents an unacceptable choice of law analysis aimed solely to shield them from all liability under a Michigan statute, MCL § 600.2971, whose first three subdivisions prohibit "any person" from bringing a civil action for "wrongful birth," for "wrongful life," or for "wrongful pregnancy or wrongful conception." (Genesis/Hughes' summary judgment brief, p. 13-28.)

However, before addressing Genesis/Hughes' choice of law analysis, it is important in the overall context of their motion for summary judgment to note that the Michigan statute on which Genesis/Hughes heavily rely expressly permits wrongful birth, wrongful life, and wrongful pregnancy or wrongful conception claims when they arise from the defendant's gross negligence.  MCL § 600.2971(4) ("The prohibition stated in subsection (1), (2), or (3) does not apply to a civil action for damages for an intentional or grossly negligent act or omission, including, but not limited to, an act or omission that violates the Michigan penal code, 1931 PA 328, MCL 750.1 to 750.568.").

For statutorily mentioned "gross negligence," the Michigan courts use the definition adopted by the Michigan Supreme Court from its state's government tort liability act.  *Jennings v Southwood*, 446 Mich. 125, 136-137, 521 N.W.2d 230, 235 (1994).  Under that definition, gross negligence means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id.*, 446 Mich. at 136, 521 N.W.2d at 235.  When viewed in a light most favorable to the plaintiffs, the facts asserted in plaintiffs' complaint and developed during discovery arguably might establish gross negligence on the part of Genesis/Hughes if proven to a jury's satisfaction.  Genesis/Hughes' knowledge that both plaintiffs were CF carriers; Hughes'

low estimation of the risk of giving birth to a CF-affected baby after PGD testing by his laboratory compared to the error rate of other laboratories; Genesis/Hughes' knowledge and expectation that their report would alone determine the genetic element of the selection of embryos for implantation; and the "go ahead" provided by that report might be developed to lead a jury to consider that Genesis/Hughes were grossly negligent.

Of course, it is not necessary for this brief to prove plaintiffs' case under the exception to the Michigan statute. What is germane is that Genesis/Hughes' motion for summary judgment fails to mention the exception for gross negligence in Section 600.2971(4). Gross negligence inherently involves issues for resolution by the fact-finder, but Genesis/Hughes' motion for summary judgment does not fulfill its threshold burden of showing that, as a matter of law, plaintiffs will not be able to prove that Genesis/Hughes' conduct fits within the gross negligence exception. On that ground alone, the Court should deny Genesis/Hughes' motion for summary judgment under the Michigan statute.

Even if gross negligence on the part of Genesis/Hughes were not involved in this case, the Court should still reject Genesis/Hughes' claim to immunity under the Michigan statute, because a New Jersey Court would find that the statute is so completely inimical to the public policy of New Jersey as to be completely unacceptable and inapplicable in this case.

As noted previously, New Jersey's "most significant relationship" choice of law analysis in a personal injury case such as this begins with the presumption that New Jersey law, as the law of the place of the injury in this case, will apply, and the analysis surrenders that presumption only when another state has a more significant relationship to the parties or issues. That analysis suggests, and the New Jersey Supreme Court's opinion in *P.V.* proves, that where

the relationships to the other state do not clearly dominate, then the law of the place of the injury applies.

The overarching choice is one of policy, and the policies of Michigan and New Jersey are so diametrically opposed concerning wrongful birth and kindred claims that the New Jersey Supreme Court could not reasonably be expected to yield to the Michigan law in the circumstances of this case.

Michigan's statute codified the retreat made by the Michigan Court of Appeals in *Taylor v. Shelby*, 236 Mich. App. 315, 600 N.W.2d 670 (1999).  (See, *e.g.*, Genesis/Hughes' Local Rule 56.1 Exhibit 26; see also Genesis/Hughes' summary judgment brief, p. 15, noting that *Taylor* "rejected prior Michigan case law allowing such [wrongful birth] suits to go forward".)  The rationales expressed in *Taylor* and the reasons for the Michigan statute parallel the long-abandoned rationales and public policy declarations of the New Jersey Supreme Court in *Gleitman v. Cosgrove,* 49 N.J. 22, 227 A.2d 689 (1967).  *Taylor* and the Michigan statute returned Michigan to a legal position from which New Jersey law has far advanced, and there is no reason to believe that the New Jersey Supreme Court would retreat from that advance by applying the Michigan statute to insulate Genetics/Hughes in this case.

Contrary to Genesis/Hughes' analysis, a proper examination of the individual choice of law factors confirms that New Jersey would not yield to provide immunity to Genesis/Hughes under the Michigan statute, because, as between New Jersey and Michigan, New Jersey is the state where the injury occurred and Michigan's relationships to the parties and to the issue of Genesis/Hughes' liability in this case are not sufficiently substantial to displace the presumptively applicable law of New Jersey.[2]

---

[2]          Moreover, at this late stage of the case's development, it is incongruous for

The place where the injury to the plaintiffs occurred in the context of this case was clearly not Michigan.  Plaintiffs seek damages linked to the emotional effect of the birth of their child as a CF-affected person and to the extraordinary financial effect of caring and providing for their CF-affected child.  As between New Jersey and Michigan, those impacts relate directly to New Jersey.

The place where the conduct causing the injury occurred was Michigan as far as Genetics/Hughes are concerned, but that factor should not be given much weight, let alone dispositive weight in displacing New Jersey law in favor of the Michigan statute.  The Michigan statute prohibits persons from bringing civil actions, and nothing in *Taylor* or in the statute's legislative history manifests an intent to extend the impact of that prohibition beyond Michigan citizens and Michigan courts.  Fundamentally, Michigan does not have the power to prohibit citizens of other states from bringing lawsuits in their home courts, and nothing in Genesis/Hughes' analysis argues to the contrary.

The domicile, residence, nationality, place of incorporation and place of business of the parties are factors that do not displace New Jersey law in favor of the Michigan statute.  Although Genesis/Hughes insist that plaintiffs were residents of New York until after the birth of their child, the record is far from clear on that point, especially in the context of a grant of summary judgment as a matter of law in favor of Genesis/Hughes.  Moreover, the plaintiffs were clearly New Jersey residents when they filed this lawsuit, and there is no reason to conclude, as Genesis/Hughes insinuate, that the plaintiffs moved to New Jersey or even sued in New Jersey as

Genesis/Hughes to insist that they have no relationship to New Jersey and that they should not be subjected to New Jersey law.  Notably, Genesis/Hughes raised no objection to being sued in this Court, and they have never previously asserted that New Jersey should have nothing to do with them.

11

a forum-shopping tactic.  Thus, while Genesis/Hughes were and remain citizens of Michigan, that fact does not displace New Jersey for Michigan.

As between Michigan and New Jersey, the place where the relationship between plaintiffs and Genesis/Hughes is centered is not Michigan.  At best, Michigan happened to be one state among three, but not the state whose special statutory prohibition must control.

In a related context, the consideration of interstate comity does not make the Michigan statute a dominating factor.  Declining to implement that statute in this case would not affect the statute's viability in Michigan.  *P.V.*, *supra*, 197 N.J. at 152-153, 962 A.2d at 466.

Likewise, Genesis/Hughes' purported reliance on the immunity it might enjoy as a by-product of Michigan's prohibitory statute hardly justifies applying that statute to this case.  The New Jersey Supreme Court has consistently "dismissed the notion that a corporation could reasonably expect automatic immunization when conducting affairs outside the state."  *P.V.*, *supra*, 197 N.J. at 154, 962 A.2d at 467.  Instead, the Court has held that "any blanket reliance" on the defendant's domestic law "as a defense to conduct occurring in a foreign jurisdiction could not be justified."  *Id.*  Genesis/Hughes might have a reasonable expectation for protection under the Michigan statute from lawsuits brought by Michigan residents in Michigan courts, but they have no such expectation when dealing as they do with residents of other states.

Additionally, comment b to Section 145 of Restatement 2d of Conflict of Laws minimizes the value of Genesis/Hughes' alleged reliance on the Michigan statute:  "the protection of the justified expectations of the parties, which is of extreme importance in such fields as contracts, property, wills and trusts, is of lesser importance in the field of torts.  This is because persons who cause injury on nonprivileged occasions, particularly when the injury is unintentionally caused, usually act without giving thought to the law that may be applied to

12

determine the legal consequences of this conduct. Such persons have few, if any, justified expectations in the area of choice of law to protect, and as to them the protection of justified expectations can play little or no part in the decision of a choice of law question." Restatement 2d Conflict of Laws, § 145, comment b.

The interests underlying the field of tort law do not make Michigan law dominant in this case. Michigan's primary interest is not immunizing parties such as Genesis/Hughes. Instead, the expressed interests behind the statute are the promotion of life and avoidance of eugenic abortion through the prohibition of lawsuits. By contrast, New Jersey has moved beyond those interests to the promotion of compensation for those who must bear the extraordinary expenses and, for the mother, some of the emotional impact from negligent genetic advice. The Michigan statute may have a consequential protection for genetic practitioners, but that protection is and should be limited to Michigan. Conversely, New Jersey's compensatory interest has a related regulatory impact. As noted above, Michigan's interests are not disturbed by declining to import Michigan's statute into this New Jersey-venued case. However, applying the Michigan statute to this case would be inimical to New Jersey's interests. As between Michigan law and New Jersey law, this factor does not make Michigan law a dominant interest to a New Jersey Court.

The interests of judicial administration play no role in Genesis/Hughes' analysis, which simply dismisses that factor as "largely irrelevant to the case at bar, because New Jersey's connection to the case is so weak that the forum's law cannot apply to Plaintiff's claims against Genesis." (Genesis/Hughes' summary judgment brief, p. 23.) On the question of the application of the Michigan statute, however, what is relevant is that no aspect of judicial administration favors the substitution of Michigan's statute.

The final factor, the competing interests of the states, requires no additional discussion. As between Michigan and New Jersey, the interests are diametrically opposed, but despite Genesis/Hughes' self-serving assertions, it cannot be said that Michigan law must dominate over New Jersey law on the issue of the application of Michigan's prohibitory statute.

Consequently, the Court should deny Genesis/Hughes motion for summary judgment under Michigan law.

### C.    NEW YORK LAW ISSUES

#### 1.    Causation

Although New York law differs from New Jersey law in several respects concerning wrongful birth and kindred claims, New York law, like New Jersey law requires the plaintiff to prove causation. *Becker v. Schwartz*, 46 N.Y.2d 401, 410-415, 386 N.E.2d 807, 811-814 (1978) (precluding parents' claims for emotional distress and child's claims, including post-minority extraordinary expenses, but recognizing parents' claim for extraordinary medical expenses until child reaches the age of majority, and requiring proof of causation ["Irrespective of the label coined, plaintiffs' complaints sound essentially in negligence or medical malpractice. As in any cause of action founded upon negligence, a successful plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party."  46 N.Y.2d at 410, 386 N.E.2d at 811]); *DeChico v Northern Westchester Hospital Center*, 73 A.D.3d 838, 840, 900 N.Y.S.2d 743, 745 (App. Div. 2010) ("Specifically, the plaintiff must establish that malpractice by a physician deprived the parent of the opportunity to terminate the pregnancy within the legally permissible time period or that the child would not have been conceived but for the defendants' malpractice (*see **Becker v Schwartz, 46 NY2d at 410***).")

14

As to the NYU defendants, plaintiffs cannot prove causation for two reasons.  First, they based their decision on the risk information that Hughes provided to them, not on the risk information provided by the NYU defendants.  Second, plaintiffs' experts have not ruled out the plaintiffs' sexual relations as the origin of their daughter.  While Genesis/Hughes may also be entitled to summary judgment on the second ground, they are clearly not entitled to summary judgment on the first ground.

### 2.   Plaintiff's wrongful birth and wrongful life claims

Although the NYU defendants contended in their brief in support of their motion for summary judgment that the Court should apply New Jersey law to this case, the NYU defendants' arguments focused principally on the issues regarding the qualifications of Dr. Cutting to testify as an expert in plaintiffs' medical malpractice claim brought in this New Jersey-based Court, and on the issue regarding the proximate cause element of plaintiffs' claims in their broadest reach.  The first issue implicated New Jersey law, because plaintiffs chose to initiate and to prosecute their medical malpractice claim in a New Jersey Court, and thus assumed the obligation to proffer an expert witness on liability who would satisfy the strict requirements for such experts that apply in both the state and the federal courts in New Jersey. The second issue encompassed all of plaintiffs' asserted claims in the breadth accepted by New Jersey law, and necessarily in the narrower scope recognized under New York law.  The NYU defendants' arguments on those issues did not, however, preclude the application of New York law on the scope and viability of plaintiffs' claims.

In this brief the NYU defendants presented their choice of law analysis against the application of Michigan's prohibitory statute.  Although presented in the context of New Jersey's relationships on that issue, the choice of law analysis would reach the conclusion that Michigan's law would not dominate over New York's law when considered in the context of New York's

relationships, and thus the NYU defendants' arguments on the Michigan statute issue did not preclude the application of New York law on the scope and viability of plaintiffs' claims.

Consequently, if the Court is persuaded to apply New York law to plaintiffs' wrongful birth and wrongful life claims under the jurisprudence developed from *Becker* through *DeChico*, *supra*, the NYU defendants as well as Genesis/Hughes would be entitled to judgment in their favor on the parents' emotional distress claim and their child's claim, limiting the plaintiffs' cause of action to extraordinary medical expenses until their daughter reaches the age of 18.[3]

### 3. The New York medical malpractice statute of limitations

Likewise, once the record in this case crystallizes to answer the presently open question as to when Mrs. Grossbaum ceased treating with the NYU defendants, they may be entitled to judgment under the New York 30-month statute of limitations governing medical malpractice actions, CPLR § 214-a ("**An action for medical malpractice** must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure.") (emphasis added).

However, the Court should reject Genesis/Hughes' invocation of the New York statute of limitations, because the claims against those defendants cannot be considered to be medical malpractice claims.

To the contrary, Genesis/Hughes' various admissions make it clear that there was no doctor-patient relationship between them and the plaintiffs, and that the PGD services that Genesis/Hughes performed in this case were scientific services performed by genetic scientists,

---

[3]     Under current New York law, 18 not 21 is the age of majority.  See, CPLR 105 [j]; *Rockefeller v. Moront*, 81 N.Y.2d 560, 564 n. 2, 618 N.E.2d 119, 121 n. 2 (1993).

not medical services performed as licensed medical providers, and completely independent of the IVF medical services provided by the NYU defendants:

➢ Hughes' notes recording the important points of his telephone consultation with plaintiffs contain the specific admission that "We are not your physicians";

➢ paragraph 1 of Hughes' motions declaration admits that "I am a genetics research scientist specializing in studying the human genome of DNA and the technology of pre-implantation genetic diagnosis ('PGD')";

➢ during his deposition testimony, Hughes emphatically admitted that:

• Genesis/Hughes had no doctor-patient relationship with plaintiffs;

• Hughes was not practicing medicine in connection with the advice and PGD services that he and Genesis gave to and performed for plaintiffs;

• at the time Hughes and Genesis advised and performed PGD services for plaintiffs, Hughes did not have an active medical license, did not have hospital privileges, and did not see patients;

• what he did in advising and performing PGD services was science performed under his Ph.D., not medicine under his lapsed M.D.;

• and even his informed consent discussion with plaintiffs was "[n]ot even remotely" the practice of medicine, but "[i]t's more like a genetic counselor."

See paragraph 11 of the NYU defendants' response to Genesis/Hughes' Local Rule 56.1 statement, which is incorporated herein by reference.

The divide that Hughes makes between himself, his company, what they do and the practice of medicine irrefutably separates Genesis/Hughes from the protection of the New York medical malpractice statute of limitations.  See, *Rodriguez v Saal*, 43 A.D.3d 272, 841 N.Y.S.2d 232 (App. Div. 2007) (even when lumped with claims against medical service providers, a claim involving the adequacy of testing and screening procedures in harvesting and providing organs for transplant is not a medical malpractice claim under § 214-a); *Weiner v. Lenox Hill Hospital*, 88 N.Y.2d 784, 788, 673 N.E.2d 914, 916 (1996) ("The core issue in this case--the adequacy of

17

the Hospital's blood testing and screening procedures--does not implicate questions of medical competence or judgment linked to the treatment of Korn, but turns instead on the Hospital's independent duties as a blood-collection center.  Unlike the inquiry in a medical malpractice case, whether the Hospital breached its duty to exercise due care in its blood-collection activities does not in any measure depend on an analysis of the medical treatment furnished to Korn.").

That Genesis/Hughes may have developed a particular test for the plaintiffs' combination of carrier genes, likely based on Genesis/Hughes' development of tests for each type of carrier gene regardless of the source, does not make Genesis/Hughes medical care practioners, a status that Hughes persistently declined to assume during the development of this case and under oath. How those genetic screens were developed; how the embryonic cells were genetically tested; what genetic risks Hughes advised the plaintiffs about; and the genetic test results conveyed to Dr. Licciardi involve duties on the part of Genesis/Hughes that are completely independent of the duties owed by the NYU defendants, and whether Genesis/Hughes breached their duties does not in any measure depend on an analysis of the medical treatment rendered by the NYU defendants.  The case against Genesis/Hughes is a straightforward negligence case, perhaps a geneticist malpractice case, but certainly not a medical malpractice case.

New York has a three-year limitations period for "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort."  CPLR § 214(6).  That is the statute which applies to plaintiffs' claims against Genesis/Hughes.  Under that statute, plaintiffs timely filed their case on March 23, 2007, even if the trigger date for the statute were stretched back to the delivery of Genesis/Hughes' report on July 19, 2004, the trigger date asserted by Genesis/Hughes. (Genesis/Hughes' summary judgment brief, p. 30.)

18

Genesis/Hughes' motion for summary judgment under the New York statute of limitations for medical malpractice cases should be denied.

### 4.   Plaintiffs' experts against Genesis/Hughes

For the reasons provided in the NYU defendants' brief in opposition to Genesis/Hughes' motion to strike the testimony of plaintiffs' experts Strom and Cutting against Genesis/Hughes, which is incorporated herein by reference, the NYU defendants oppose and respectfully ask the Court to deny Genesis/Hughes' motion.

## IV.   CONCLUSION

The Court should grant summary judgment in favor of the NYU defendants on all claims made against them in this case, and it should make that grant of summary judgment a final order. In the event that the Court does not grant summary judgment in favor of the NYU defendants on all claims made against them in this case, the Court should deny Genesis/Hughes' motion for summary judgment under Michigan law; deny Genesis/Hughes' motion to strike the testimony and opinions of Strom and Cutting against Genesis/Hughes; and limit the plaintiffs' cause of action to extraordinary medical expenses until their daughter reaches the age of 18.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
    COLEMAN & GOGGIN

By: *R. Scott Eichhorn, Esquire*
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ  07068
DIRECT DIAL TELEPHONE:  (973) 618-4154
FAX:  (973) 618-0685
EMAIL:  rseichhorn@mdwcg.com
ATTORNEY FOR DEFENDANTS,
NEW YORK UNIVERSITY SCHOOL OF MEDICINE and
NEW YORK UNIVERSITY HOSPITALS CENTER

DATED:  February 17, 2011

19