02981.00101-RSE

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ 07068
(973) 618-4100
ATTORNEYS FOR DEFENDANTS-
New York University School of Medicine and New York University Hospitals Center

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as guardians ad litem of the infant, ROSIE GROSSBAUM,<br><br>Plaintiffs,<br><br>v.<br><br>GENESIS GENETICS INSTITUTE, LLC of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of New York, ABC CORPS. 1-10, and JOHN DOES 1-10,<br><br>Defendants. | Hon. Garrett E. Brown, Jr.<br><br>Civil Action No. 07-1359 (GEB)<br><br>**BRIEF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER IN OPPOSITION TO THE MOTION OF DEFENDANTS GENESIS GENETICS INSTITUTE, LLC AND MARK HUGHES TO STRIKE PLAINTIFFS' LIABILITY EXPERTS** |

**BRIEF OF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER IN OPPOSITION TO THE MOTION OF DEFENDANTS GENESIS GENETICS INSTITUTE, LLC AND MARK HUGHES TO STRIKE PLAINTIFFS' LIABILITY EXPERTS**

Defendants New York University School of Medicine and New York University Hospitals Center ("NYU defendants") incorporate by reference the facts stated in their Local Rule 56.1 statement and brief in support of their motion for summary judgment and in their

1

response to the Local Rule 56.1 statement of defendants Genesis Genetics Institute, LLC and Mark Hughes (collectively, "Genesis/Hughes") in support of their motions for summary judgment and to strike plaintiffs' experts.

The NYU defendants have a crossclaim against Genesis/Hughes. In the event that the Court denies the NYU defendants' motion for summary judgment, they rely on plaintiffs' anticipated opposition to Genesis/Hughes' motion to strike the testimony and opinions of Dr. Charles Strom and Dr. Gary Cutting against Genesis/Hughes. Because the details of plaintiffs' opposition were unknown when this brief was filed, the NYU defendants respectfully submit the following points for the Court's consideration concerning the testimony of Strom and Cutting against Genesis/Hughes.[1]

Genesis/Hughes' motion to strike focuses exclusively on the opinions of Strom and Cutting that Genesis/Hughes should have used multiplex or marker testing in the PGD analysis that they performed in this case. Based on that narrow focus, Genesis/Hughes' motion primarily contends that the use of such testing cannot be considered the standard of care for the PGD analysis that Genesis /Hughes performed in this case without multiplex or marker testing, because less than a majority of laboratories performing PGD analyses in the United States in 2004 allegedly used multiplex or marker testing. Genesis/Hughes' motion also challenges the experience and the information on which Strom and Cutting criticize Genesis/Hughes.

Although the head-counting analysis presented in Genesis/Hughes' motion has some superficial attraction, it fails to consider the nature of PGD science as Genesis/Hughes described it: "PGD is a highly dynamic, rapidly evolving field of scientific endeavour [, in which]

---

[1] As the NYU defendants established in their Local Rule 56.1 statement and brief in support of their motion for summary judgment, Cutting should be precluded from testifying against the NYU defendants. Nothing in this brief is intended or should be interpreted to be contrary to that position.

2

[t]oday's standard practice is tomorrow's version of the Model T, and tomorrow's methodologies will be obsolete next year." (Genesis/Hughes' motion to strike, p. 14.) That dynamic itself suggests that doing what most other PDG laboratories do in the United States, while comparable laboratories in Europe progress with the dynamic by implementing multiplex or marker testing, may not reflect the standard of care.

The conflicting testimony of the parties' respective experts on the feasibility and success of multiplex or marker testing creates a classic question of fact on the record of this case for the fact-finder to resolve. Likewise, Genesis/Hughes' challenges to Strom's and to Cutting's experience and information on which they criticize Genesis/Hughes simply raise questions about the experts' credibility, which, like the credibility of Genesis/Hughes' own experts on standard of care and other issues, are inherently matters for the fact-finder to determine.[2]

---

[2] The claims against the NYU defendants in this case are clearly medical malpractice claims. As such, the standards provided in the New Jersey Medical Care Access and Responsibility and Patients First Act ("the Act") govern the qualifications of experts against the NYU defendants in this Court. *Chamberlain v. Giampapa*, 210 F.3d 154, 157, 158-161 (3d Cir. 2000). Under the Act's strict standards, Cutting is clearly not qualified to testify against the NYU defendants, as their motion for summary judgment established.

However, as established in the NYU defendants' brief in opposition to Genesis/Hughes' motion for summary judgment, which is incorporated herein by reference, the claims against Genesis/Hughes are not governed by the Act or by similar medical malpractice case standards, because those claims cannot be considered to be medical malpractice claims, given Hughes' admissions in his specific statement during his telephone consultation with plaintiffs that "We are not your physicians"; in paragraph 1 of his motions declaration that "I am a genetics research scientist specializing in studying the human genome of DNA and the technology of pre-implantation genetic diagnosis ('PGD')"; in his emphatic deposition testimony that: Genesis/Hughes had no doctor-patient relationship with plaintiffs; Hughes was not practicing medicine in connection with the advice and PDG services that he and Genesis gave to and performed for plaintiffs; at the time Hughes and Genesis advised and performed PDG services for plaintiffs, Hughes did not have an active medical license, did not have hospital privileges, and did not see patients; what he did in advising and performing PDG services was science performed under his Ph.D., not medicine under his lapsed M.D.; and even his informed consent discussion with plaintiffs was "[n]ot even remotely" the practice of medicine, but "[i]t's more like a genetic counselor." See paragraph 11 of the NYU defendants' response to Geneis/Hughes' Local Rule 56.1 statement.

3

Additionally, as discussed in the NYU defendants' brief in opposition to Genesis/Hughes' motion for summary judgment, which is incorporated herein by reference, the issues concerning multiplex or marker PGD testing may be legally irrelevant to the questions of duty and causation as to Genesis.

The essence of plaintiff['s negligence claim against Genesis/Hughes is whether those defendants accurately conveyed to the plaintiffs the percentage of risk or success on which they based their decision to proceed with the IVF and PGD processes, and whether the birth of plaintiffs' CF-affected child stemmed from the inherent risk of mis-diagnosis in PGD testing or from a greater risk that Genesis/Hughes unreasonably underestimated and that was unacceptable to a reasonable person in the plaintiffs' position.

Plaintiffs' deposition testimony establishes that they agreed to proceed with IVF and PGD processes based upon what Hughes said to them about the 2-3% PGD error rate of risk of developing a CF-affected child, rather than on the higher risk provided by NYU; and that plaintiffs would not have decided to proceed if the error rate or risk provided by Hughes had been higher than 2-3%.

While that testimony unquestionably forecloses plaintiffs' claim and Genesis/Hughes crossclaim against the NYU defendants, because plaintiffs based their decision on what Hughes told them and not on information from NYU, the testimony does not at all foreclose claims against Genesis/Hughes, even if the fact-finder happens to find that multiplex or marker PGD testing may not have been the standard of care for Genesis/Hughes in this case.

Accordingly, the NYU defendants oppose and respectfully ask the Court to deny Genesis/Hughes' motion to strike the testimony and opinions of Dr. Charles Strom and Dr. Gary Cutting against Genesis/Hughes.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
    COLEMAN & GOGGIN

By: *R. Scott Eichhorn, Esquire*
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ  07068
DIRECT DIAL TELEPHONE:  (973) 618-4154
FAX:  (973) 618-0685
EMAIL:  rseichhorn@mdwcg.com
ATTORNEY FOR DEFENDANTS,
NEW YORK UNIVERSITY SCHOOL OF MEDICINE
and
NEW YORK UNIVERSITY HOSPITALS CENTER

DATED:  February 17, 2011