02981.00101-RSE

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ 07068
(973) 618-4100
ATTORNEYS FOR DEFENDANTS-
New York University School of Medicine and New York University Hospitals Center

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as guardians ad litem of the infant, ROSIE GROSSBAUM,<br><br>        Plaintiffs,<br><br>  v.<br><br>GENESIS GENETICS INSTITUTE, LLC of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of New York, ABC CORPS. 1-10, and JOHN DOES 1-10,<br><br>        Defendants. | Hon. Garrett E. Brown, Jr.<br><br>Civil Action No. 07-1359 (GEB)<br><br>**RESPONSE OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER TO THE STATEMENT OF UNDISPUTED MATERIAL FACTS OF DEFENDANTS GENESIS GENETICS INSTITUTE, LLC AND MARK HUGHES PURSUANT TO LOCAL CIVIL RULE 56.1** |

**RESPONSE OF OF DEFENDANTS**
**NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND**
**NEW YORK UNIVERSITY HOSPITALS CENTER**
**TO THE STATEMENT OF UNDISPUTED MATERIAL FACTS OF**
**DEFENDANTS GENESIS GENETICS INSTITUTE, LLC AND MARK HUGHES**
**PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Local Civil Rule 56.1, and solely for the limited purpose of the Court's consideration of the pending motions for summary judgment and for no other purpose,

1

defendants New York University School of Medicine and New York University Hospitals Center (collectively, "NYU defendants") respond to the Statement of Undisputed Material Facts of defendants Genesis Genetics Institute, LLC and Mark Hughes (collectively, "Genesis/Hughes") as follows:

I.      **PLAINTIFFS' INTERACTIONS WITH GENESIS AND NYU**

1. Accepted in part and rejected in part. Accepted that, when plaintiffs Chaya and Menachem Grossbaum ("plaintiffs") were considering becoming engaged, they were informed by Dor Yeshorim in 2000 that previously performed genetic tests conducted by that organization indicated that both Chaya and Menachem were CF carriers. The remainder of paragraph 1 is rejected as not supported by the cited testimony, and as immaterial.

2. Accepted, but subject to the understanding that the percentage relates to natural conception without PGD.

3. Accepted.

4. Accepted, except for the description of Rabbi Tendler as "a leading authority," which is not provided by the cited testimony, and subject to the understanding that, according to the cited testimony, the advice may also have come from two other rabbis who attended the same meeting.

5. Accepted, but subject to the understanding that, according to the cited testimony, the advice may also have come from two other rabbis who attended the same meeting.

6. Accepted.

7. Accepted in part and rejected in part. Accepted that the cited testimony states that plaintiffs lived in Brooklyn from the time they were married in August of 2002 until sometime in 2005. The remainder of paragraph 7 is rejected, because the cited testimony does not support the statement that plaintiffs lived continuously in Brooklyn from the date of their marriage until after

the minor plaintiff's birth, and because the statement and cited testimony do not discuss the plaintiffs' contacts with New Jersey including prenatal care, family interactions, and other matters.

8. Rejected as stated. Accepted that the cited testimony of Mr. Grossbaum and the cited letter indicate that plaintiffs went to NYU for the reasons stated, but on the recommendation of one or more rabbis.

9. Accepted.

10. Accepted, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, plaintiffs first spoke with defendant Hughes in detail about PDG and IVF before they spoke with the NYU defendants' Dr. Licciardi or any of his colleagues; that plaintiffs agreed to proceed with IVF and PGD processes based upon what Hughes said to them about the 2-3% PGD error rate of risk of developing a CF-affected child, rather than on the higher risk provided by NYU; and that plaintiffs would not have decided to proceed if the error rate or risk provided by Hughes had been higher than 2-3%.

11. Accepted, but subject to the understanding that: (1) as established by Genesis/Hughes' Exhibit 7 ("We are not your physicians."), by paragraph 1 of Hughes' declaration (Genesis/Hughes' Exhibit 6) ("I am a genetics research scientist specializing in studying the human genome of DNA and the technology of pre-implantation genetic diagnosis ('PGD')"), and by the excerpts of Hughes' deposition testimony attached to this response as Exhibit A (2/19/09 deposition of Mark Hughes, p. 16-17; 5/14/10 deposition of Mark Hughes, p. 27-29), Genesis/Hughes had no doctor-patient relationship with plaintiffs; Hughes was not practicing medicine in connection with the advice and PDG services that he and Genesis gave to and performed for plaintiffs; at the time Hughes and Genesis advised and performed PDG

3

services for plaintiffs, Hughes did not have an active medical license, did not have hospital privileges, and did not see patients; what he did in advising and performing PDG services was science performed under his Ph.D., not medicine under his lapsed M.D.; and even his informed consent discussion with plaintiffs was "[n]ot even remotely" the practice of medicine, but "[i]t's more like a genetic counselor"; (2) there is no indication in the record of this case that Genesis/Hughes were licensed or regulated as medical providers in connection with their PDG-related activities with respect to plaintiffs or to any other clients in 2004; and (3) there is no indication in the record of this case that Genesis/Hughes limited its PDG-related activities to clients from any particular state or that Genesis/Hughes relied on the law of Michigan or New York in performing its PDG-related activities for plaintiffs or for any other clients in 2004.

   12. Accepted, but subject to the understanding that: (1) plaintiff's approximately one-hour consultation with Hughes occurred before their consultation with Dr. Licciardi (see Genesis/Hughes Exhibit 13 at CG004 (3/25/04 email from Hughes to Hooper at NYU stating in pertinent part, "Chaya Morgenstern and Mendel Grossbaum will be coming in next week, Tuesday I think, for an initial visit with Fred Licciardi. I have spoke with the couple at length. They can start IVF whenever it is convenient for them and NYU."); and (2) as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, plaintiffs first spoke with defendant Hughes in detail about PDG and IVF before they spoke with the NYU defendants' Dr. Licciardi or any of his colleagues; that plaintiffs agreed to proceed with IVF and PGD processes based upon what Hughes said to them about the 2-3% PGD error rate of risk of developing a CF-affected child, rather than on the higher risk provided by NYU; and that plaintiffs would not have decided to proceed if the error rate or risk provided by Hughes had been higher than 2-3%.

4

13. Accepted.

14. Accepted in part and rejected in part. Rejected that plaintiffs sent their payment to Genesis at NYU's instructions, because the cited Exhibit 29 establishes that Genesis' Sharon Wiltse provided those instructions directly to Mrs. Grossbaum; the remainder of paragraph 14 is accepted.

15. Accepted.

16. Accepted.

17. Accepted, but subject to the understanding that it is for the fact-finder to determine the credibility of the plaintiffs' testimony.

18. Accepted, but subject to the understanding that it is for the fact-finder to determine the credibility of the plaintiffs' testimony.

19. Rejected, because Exhibit 26 has not previously been introduced during discovery; it has not been properly authenticated or proven reliable; and it does not support the statement for which it is cited.

20. Accepted in part and rejected in part. Accepted, but subject to the understanding that it is for the fact-finder to determine the credibility of the plaintiffs' testimony. Rejected, because Exhibit 26 has not previously been introduced during discovery; it has not been properly authenticated or proven reliable; and it does not support the statement for which it is cited.

21. Accepted.

22. Accepted.

23. Accepted in part and rejected in part. Accepted, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, (1) the one-page 7/19/04 evaluation report from Genesis/Hughes indicated that embryo

7 was also genetically suitable for implantation, and (2) although two other communications from Genesis to NYU exist in the Genesis chart for the plaintiffs, a more formal analytical report and a note, there is no evidence of record that either of those communications were sent to, or received by, NYU; to the contrary, the evidence of record demonstrates that neither of those documents were part of the NYU records.  Rejected that "only NYU personnel, and though them the Grossbaums, had knowledge of the quality of the embryos," because Genesis/Hughes, as the PGD testers, knew or should have known the actual genetic condition of the embryos.

      24.    Accepted, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, including the deposition testimony of Hughes, the one-page 7/19/04 evaluation report from Genesis/Hughes indicated that embryo 7 was also genetically suitable for implantation.

      25.    Accepted in part and rejected in part.  Accepted that embryos 7 and 8 were implanted in Chaya Grossbaum on July 19, 2004 after receipt of and in reliance on the Genesis/Hughes PGD analytical report, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, including the deposition testimony of Hughes, the report indicated that embryo 7 was also genetically suitable for implantation.  The remainder of paragraph 25 is rejected as immaterial.

      26.    Accepted in part and rejected in part.  Accepted as to the timing of CVS and amnio testing.  The remainder of paragraph 25 is rejected as immaterial, because plaintiffs testified that they told Hughes that they would not undergo such testing, and because, as established by Hughes' deposition testimony (Genesis/Hughes' Exhibit 2, p. 44; Genesis/Hughes' Exhibit 18, p. 34-38), Genesis/Hughes' interest in such testing was limited to their quality control objectives, and there is "no link" between amnio's "picking up" and affected

fetus and abortion; "Amniocentesis is not a search and destroy mission"; and because, as indicated in Dr. Strom's expert report (Genesis/Hughes' Exhibit 25), Genesis/Hughes' quality control objectives could have been satisfied by other means, but Genesis/Hughes manifested no interest in quality control in this case.

27. Accepted in part and rejected in part. Accepted that plaintiffs signed the agreements as stated and that they had no intent to and did not undergo CVS or amnio for reasons including those stated. Rejected as immaterial, because abortion was not a requirement of Genesis/Hughes and is not a legal requirement in this case.

28. Accepted in part and rejected in part. Rejected, for the reasons stated in paragraph 7 above, that plaintiffs were New York residents when their child was born. The remainder of paragraph 28 is accepted.

29. Accepted in part and rejected in part. Rejected, for the reasons stated in paragraph 7 above, that plaintiffs were New York residents when their child was born. The remainder of paragraph 29 is accepted.

**II.   THE IVF/PGD PROCESS**

30. Accepted.

31. Accepted.

32. Accepted, but subject to the understanding that Genesis was a high-volume and leading PGD laboratory.

33. Accepted in part and rejected in part. Accepted that, in 2004, at least one PGD lab in the United States used multiplex or genetic marker testing and that Genesis did not. The remainder of paragraph 33 is rejected, because the feasibility and success of such testing is a question of fact on the record of this case, given the conflicting testimony of the respective experts on that issue, and given the inherent question of the experts' credibility, which is a matter

for the fact-finder to determine; because Genesis/Hughes' head-counting analysis does not establish the standard of care; and because the feasibility and use of such testing may be legally irrelevant to the questions of duty and causation as to Genesis.

34.     Rejected for the reasons stated in paragraph 33 above.

35.     Accepted in part and rejected in part.  Rejected that the failure rate of single cell PGD was less than 5% in early-to-mid 2004 and that Genesis' rate was then lower, because the reports and testimony of some of the experts in this case such as Hughes and Dr. Strom present a material question about the accuracy of the quoted success rate, and because the quoted success rate may be legally irrelevant in this case.  Rejected that "predicting" ADO was a problem, because that statement is not supported by the cited references, and because ADO was detectable by single-cell PGD, but was detected and reported by Genesis/Hughes only with respect to embryo 2 in this case.  Rejected that Hughes quoted only the 5% rate to plaintiffs, because, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, Hughes quoted an error rate of 2-3% PGD error rate at Genesis to plaintiffs; plaintiffs agreed to proceed with IVF and PGD processes based upon that rate and not upon the 10% rate provided by NYU; and that plaintiffs would not have decided to proceed if the error rate or risk provided by Hughes had been higher than 2-3%.  Accepted, with the exceptions noted above in this paragraph, that plaintiffs believed and Dr. Xu opined that Hughes otherwise fully informed plaintiffs about the nature and risks of the PGD process to be conducted by Genesis/Hughes.

36.     Rejected, because the reports and testimony of the plaintiffs' experts indicate that Genesis/Hughes may have misread or misstated in their PGD report the genetic suitability of the implanted embryos regardless of the nature of the test performed; because the reports and the testimony of the various experts indicate that Hughes failed to quote the accurate risk of

8

misdiagnosis and development of a CF-affected child to the plaintiffs; and, because the feasibility and use of multiplex or marker testing may be legally irrelevant to the questions of duty and causation as to Genesis.

      37.     Rejected for the reasons stated in paragraph 36 above.

### III. ADDITIONAL FACTS REGARDING GENESIS/HUGHES *DAUBERT* MOTION[1]

      38.     Rejected for the reasons stated in paragraph 36 above.

      39.     Rejected for the reasons stated in paragraph 36 above.

      40.     Rejected for the reasons stated in paragraph 36 above.

      41.     Rejected for the reasons stated in paragraph 36 above.

      42.     Rejected for the reasons stated in paragraph 36 above.

      43.     Rejected for the reasons stated in paragraph 36 above.

      44.     Rejected for the reasons stated in paragraph 36 above.

      45.     Rejected for the reasons stated in paragraph 36 above.

      46.     Rejected for the reasons stated in paragraph 36 above.

      47.     Rejected for the reasons stated in paragraph 36 above.

      48.     Rejected for the reasons stated in paragraph 36 above.

      49.     Rejected for the reasons stated in paragraph 36 above.

      50.     Rejected for the reasons stated in paragraph 36 above.

      51.     Accepted in part and rejected in part. Rejected that Cutting was retained primarily to offer an opinion against the NYU defendants, because, as established by the NYU

---

[1] Genesis/Hughes' *Daubert* motion seeks to prevent plaintiffs' experts from testifying about the feasibility and use of multiplex or marker PGD testing in 2004, but those experts could address other issues pertinent to the questions of duty and causation on the part of Genesis/Hughes. Consequently and contrary to Genesis/Hughes' mistaken assertion, the Court's grant of Genesis/Hughes' *Daubert* motion does not require the Court to grant Genesis/Hughes' motion for summary judgment.

defendants' Local Rule 56.1 statement and its supporting evidence, Cutting viewed his purpose in this case as "offering an expert opinion on diagnostic procedures in PGD." The remainder of paragraph 50 is accepted, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

      52.    Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

      53.    Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

      54.    Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

      55.    Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

56.  Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

57.  Rejected for the reasons stated in paragraph 36 above, but subject to the understanding that, as established by the NYU defendants' Local Rule 56.1 statement and its supporting evidence, and their motion for summary judgment, Cutting is not qualified to testify against the NYU defendants and such testimony should be precluded by the Court.

58.  Rejected for the reasons stated in paragraph 36 above.

59.  Rejected for the reasons stated in paragraph 36 above.

60.  Rejected for the reasons stated in paragraph 36 above.

61.  Rejected for the reasons stated in paragraph 36 above.

62.  Rejected for the reasons stated in paragraph 36 above.

63.  Rejected for the reasons stated in paragraph 36 above.

64.  Rejected for the reasons stated in paragraph 36 above.

> Respectfully submitted,
>
> MARSHALL, DENNEHEY, WARNER,
>   COLEMAN & GOGGIN
>
> By: *R. Scott Eichhorn, Esquire*
> 425 EAGLE ROCK AVENUE, SUITE 302
> ROSELAND, NJ  07068
> DIRECT DIAL TELEPHONE:  (973) 618-4154
> FAX:  (973) 618-0685
> EMAIL:  rseichhorn@mdwcg.com
> ATTORNEY FOR DEFENDANTS,
> NEW YORK UNIVERSITY SCHOOL OF MEDICINE and
> NEW YORK UNIVERSITY HOSPITALS CENTER

DATED:  February 17, 2011