Lewis Stein, Esq.
NUSBAUM, STEIN, GOLDSTEIN,
 BRONSTEIN & KRON, P.A.
20 Commerce Boulevard, Suite E
Succasunna, NJ  07876
nsgbk.office@verizon.net
(973) 584-1400
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as *guardians ad litem* of the infant ROSIE GROSSBAUM, | |
| Plaintiffs, | CIVIL ACTION NO. 07-CV-1359 (GEB) |
| vs. | |
| GENESIS GENETICS INSTITUTE, LLC, of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of NEW YORK, ABC CORPS. 1-10, JOHN DOES 1-10, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS, NEW YORK UNIVERSITY SCHOOL OF MEDICINE'S AND NEW YORK UNIVERSITY HOSPITALS CENTER'S, CLAIMED STATEMENT OF UNDISPUTED MATERIAL FACTS**

[Hereinafter these Defendants are collectively referred to as "Defendant NYU".]

1

1. This statement is undisputed, but its materiality to the factfinder is questioned.

2. Not disputed.

3. Not disputed.

4. Disputed because of the broad and undefined meaning of the word "process" as used in this statement of facts. Leaves open the question as to what aspect of the process was performed by the Co-Defendants.

5. Not disputed.

6. Disputed in part. This undocumented statement of facts contains several factual conclusions which are not supported in the record and disputed by Plaintiffs' experts, namely:

    (a) "Developing and conducting appropriate PGD tests designed to detect the presence or absence of the genes in embryonic cells sent by NYU." This Defendant has provided no evidential support for determining that the PGD tests used by Defendants, Genesis Genetics and Hughes, were appropriate;

    (b) The "designed to detect the presence or absence of the genes" is a misstatement as the testing did not determine the presence or absence of genes since every cell has part of its makeup genetic material;

    (c) "DNA had become contaminated." There is no evidence of contamination. This conclusionary statement is therefore unsupported in the record.

    Plaintiffs do not dispute that Genesis Genetics' and Hughes' PGD steps included submitting a written report to NYU regarding test results and the genetic evaluation of each of the cells.

7. Not disputed except with respect to the statement contained therein, a "consultation with the Plaintiffs concerning the results of the genetic PGD tests and of the embryological evaluation of two best suited embryos", is disputed since:

2

    (a)    The mere statement of a consultation with Plaintiffs concerning the results of genetic PGD tests is not a material fact absent a specification of the content of the consultation and specifically a statement of the recommendations made to the Plaintiffs;

    (b)    The statement, "A decision by the Plaintiffs to proceed with the implantation of the embryos," mischaracterizes the knowledge and information given to the Plaintiffs about the basis of a decision to go forward and proceed with the implantation of the embryos.

8.    Disputed. This is an incomplete recitation of the opinions of Plaintiffs' expert, Dr. Garry Cutting, regarding the shortcomings of the service provided by Dr. Licciardi to the Plaintiffs with respect to informing them of the risks associated with the entire study result provided by Genesis Genetics and Dr. Hughes.

9.    Disputed. This does not constitute a statement of undisputed facts, but attempts to recite in general terms a summary of the alleged negligence by Genesis Genetics and Dr. Mark Hughes. It is substantially incomplete as reflected in the opinion letters of Drs. Cutting and Strom and their subsequent depositions which have been otherwise provided to the Court in Exhibits Nos. 24 and 25 of Defendant, Genesis Genetics' and Mark Hughes', Statement of Undisputed Material Facts.

10.    Disputed. At no time were the Plaintiffs advised to establish any further contact with Dr. Hughes or Genesis Genetics themselves in order to gain information about the decision as to the suitability of the embryos that were studied at Genesis Genetics.

11.    Disputed. This statement is a mere description of the state of mind of NYU's agent, Dr. Licciardi, and is not a statement of material fact. Its conclusionary nature is self-evident.

12.    Disputed. There is nothing in the supporting documentation that would support a conclusion that Plaintiffs understood and accepted "this division of specialties and expertise between Dr. Licciardi and Dr. Hughes." For this to be in any way accepted as fact, this Defendant would have to establish that there was a detailed description of the

      division of the specialties and expertise between the two physicians, and further indicate whether there was any overlapping expertise in the two specialties. None of this was done or provided as the record stands.

13. Disputed. What Dr. Hughes recognized is not a material fact, nor is there sufficient definition as to the experts in the context of this allegation. If Dr. Licciardi had no expertise at all in genetics, then how could he inform the Plaintiffs of the results of the report from Genesis Genetics? It is this demonstrated ignorance of Dr. Licciardi that forms the basis of the conclusion of Dr. Garry Cutting of Johns Hopkins that there was departure from accepted standards of care by Dr. Licciardi in his dealings with the Plaintiffs.

14. Disputed. There is no way in which objective fact as to what was recognized or not recognized by Dr. Hughes can be established. In addition, it is disputed if Dr. Hughes undertook to go into pertinent details about the various aspects of PGD with Plaintiffs when the question of addressing allele dropout, a risk of misdiagnosis in the Plaintiffs' particular field, was discussed.

15. Not disputed, but the limitations of the statement must be recognized. The legal issue in the case is the extent to which there was an increased risk of misdiagnosis by the testing of Genesis Genetics and Dr. Hughes. Moreover, learned treatises that have been provided to the Defendants advised that proper testing of Plaintiffs' genetic mutations could have reduced the risk of misdiagnosis to less than 0.05 percent from the 25 percent of natural selection. While this is not 0, it is pretty close to it and a far cry from 25 percent.

16. No response to this is being made since it is pure argument.

17. Disputed. Plaintiffs never understood that the risk of PGD misdiagnosis of their embryos was as high as 10 percent, and were misled by Dr. Hughes into believing that the risk was minimal, even lower than the claimed 2 to 3 percent. (See Declaration of Chaya Grossbaum; Pl. Exh. 3.)

18. Disputed. This is not a statement of material facts with respect to what Dr. Hughes claims to tell patients in the abstract.

4

19. Disputed. Plaintiffs' claim that Dr. Hughes while saying the risk was not 0, minimized the risk, even of 2 to 3 percent of misdiagnosis.

20. Not disputed.

21. Not disputed.

22. Disputed. This is not a statement of material fact, but merely a response to hypothetical question at the time of Plaintiff's deposition.

23. While Plaintiffs accept as fact the Defendant NYU's statement contained herein, it would be inappropriate not to recognize that Dr. Hughes disputed the content of this statement of fact in his deposition of May 13, 2010.

24. Plaintiffs do not dispute that the documents referred to in this paragraph appeared in the Genesis Genetics chart, but did not appear as part of the NYU records.

25. Not disputed.

26. Not disputed.

27. Not disputed.

28. Disputed on the basis that Plaintiffs note the distinction between a recommendation which said, "okay for transfer" and a description which said "carrier at worst."

29. Not disputed.

30. Disputed as to the content. The designation carrier at worst if reliable was okay for transfer, but their reliability was challenged by Dr. Strom's expert report.

31. Disputed. What Dr. Licciardi understood and did not understand cannot be established as an undisputed fact since Dr. Licciardi's understanding of the genetics report was considered inadequate as per Dr. Garry Cutting.

32. Disputed since the statement of fact fails to take into consideration the effect that allele dropout would have on these specific types of mutations presented by these Plaintiffs. The cited reference to the deposition of Dr.

    Samuel Pang is merely supported by the opinion testimony of Defendant's expert.

    This over simplification ignores the effects of ADO on the entire embryo sampling reported by Genesis Genetics. Defendant is relying on expert opinion, which is not an undisputed statement of fact.

33. Disputed. This statement assumes the validity of a description of the embryos as "carrier at worst."

34. Depending on the definition of "morphologically," disputed. The Plaintiffs have no knowledge as to whether Dr. Licciardi "morphologically" evaluated the embryos. The cited reference only demonstrates that there was a consultation between Dr. Licciardi and the embryologist, Alexis Adler, and the respective contributions to any conclusion is undetermined and not demonstrated by the text.

35. Disputed. There is no dispute that Embryo 10 was reported as "okay for transfer" and that it had not grown well enough to be sufficiently viable for implantation and instead Embryos 7 and 8 were selected for implantation; however, it is disputed that both were genetically suitable based on the contested opinions of Drs. Strom and Cutting. This paragraph constitutes medical opinion and not a statement of fact. (See Strom report; Genesis Exh. 25.)

36. Disputed. This is a hypothetical question based on Dr. Licciardi's understanding of ADO and assumes a total absence of knowledge required of Dr. Licciardi about ADO, which is the basis of Dr. Cutting's opinion as to the negligence of Defendant NYU. (See Cutting report; Genesis Exh. 24.)

37. Not disputed as a general reference to a consultation between Dr. Licciardi and the Plaintiffs; however, disputed as to the dichotomy of the information provided to the Plaintiffs by Dr. Licciardi, who held himself out as an expert in evaluating suitability for transfer to the extent of making decisions for implantation.

6

38. Disputed as to the nature of Plaintiffs' understanding of what Dr. Hughes' genetic evaluation indicated, but not disputed that the Plaintiffs consented to the implantation of Embryos 7 and 8. The accuracy of the transcription of the deposition testimony is not disputed.

39. Disputed. This is opinion testimony and not a statement of fact since there is no scientific test known as reflected in Dr. Strom's testimony. (See Strom Dep. 5/4/10 T:128-3; NYU Exh. I.)

40. Not disputed.

41. Disputed. The recount of Dr. Strom's testimony is inaccurate. Dr. Strom never said that they were "genetically suitable for implantation." He merely said that they were eligible. There is a difference in meaning between the two terms. So, Plaintiff does not agree that this statement is undisputed, especially since elsewhere Dr. Strom in his entire report and testimony criticizes the use of the studies that the term suitability of the embryos were implanted.

42. Disputed. Not a statement of fact, but an argument as to the effectiveness of a dispute between the parties. In particular, Dr. Cutting criticized Dr. Licciardi for not recognizing the significance of ADO in evaluating the Genesis Genetics/Hughes report.

43. Disputed. Once again, Plaintiff is confronted with an attempt by Defendant to mischaracterize the nature of the malpractice alleged and the relative specialties. Dr. Cutting's comments discrediting Dr. Licciardi's practice related to Dr. Licciardi's involvement in the genetic determinations regarding suitability for implantation. Dr. Licciardi was provided with a report of a genetic laboratory. Dr. Cutting's testimony required him to understand the genetics of the report so that he could have made a determination regarding implantation, or at least advice the patients of the risks associated with the genetic studies. Dr. Cutting is not opining, nor is the Plaintiff complaining, about the procedure by which IVF is accomplished, that is, the removal of the embryos, the fertilization of the embryos or the implantation process. It is the genetic aspects of the practice of obstetrics and gynecology that Dr. Cutting is complaining of for which he

is eminently qualified by virtue of the medical qualifications otherwise presented.

44. Disputed. See response to No. 43 above.

45. Disputed. This is argument and not an undisputed statement of fact. Clearly, as with the two previous claims of undisputed statements of material facts, these are disputed facts on their face.

46. Disputed. See response to No. 43 through No. 45 above.

47. Same as No. 46 above.

48. Disputed. This is argument and an attack on an expert's qualifications. Clearly, the Plaintiff submits that Dr. Cutting's qualifications are well within the parameters of the issues before the Court.

49. Disputed. Again, this is an attempt to incorporate opinions and arguments, and not an undisputed statement of fact.

50. Not disputed.

51. Not disputed.

52. Disputed. Not material to any issue to be resolved by the Court on summary judgment.

53. Disputed. Not material to any issue before the Court on summary judgment.

54. Not disputed.

55. Disputed. On its face, the statement in this paragraph is in conflict with Dr. Cutting's opinions and therefore is not an undisputed statement of fact.

56. Disputed. This is not a statement of fact, but an argument on the quality of the opinions offered by Dr. Cutting, which is clearly a matter for the ultimate factfinder.

57. Disputed. This is argument. Dr. Cutting opined that Dr. Licciardi failed to meet the standard regarding his use of PGD (genetic) information in this IVF work.

58. Disputed. This paragraph appears to be reporting Dr. Cutting's impression of Dr. Licciardi's knowledge and skill in this capacity of advising the Plaintiffs; however, in fact the cited reference is to Dr. Licciardi's deposition transcript and appears to be a self-serving statement in Dr. Licciardi's deposition and in no way addresses the negligence asserted by Dr. Cutting.

59. Disputed. Again, this Defendant in citing to the fact that a conversation existed does not in any way provide evidence as to the complete content of the deposition. That content was explained by the Plaintiff, Chaya Grossbaum, in her deposition. That conversation is also not reported in the records of NYU. Those records do not document that Dr. Licciardi advised the Plaintiff of limitations presented by the Genesis Genetics report and the risks that the Plaintiff would encounter in accepting the implantation of the embryos selected by NYU. Those limitations are described in Pl. Exh. 9 and Exh. 10. NYU disputes receipt of Exh. 9 and 10. Nonetheless, Exh. 10 serves to elaborate on the meaning of the information provided in the report that NYU received. Dr. Cutting indicated that Dr. Licciardi should have understood those limitations from the report received from Genesis Genetics and advised the Plaintiffs before implantation. The advice was not given.

60. Disputed. This paragraph on its face presents a conflict in testimony between the Plaintiffs' expert and the Defendant's position, and cannot be considered an undisputed statement of fact.

61. Disputed. Likewise, this is not an undisputed statement of material facts. This is merely a factual and legal argument presented by the evidence which can only be resolved after testimony and an opportunity to evaluate the credibility of the various experts.

62. Disputed. Likewise, this is nothing more than argument.

63. Disputed. This paragraph contains argument about the efficacy of Dr. Cutting's opinions and is not an undisputed statement of facts.

64.  Disputed.  Same response as No. 63 above.

          NUSBAUM, STEIN, GOLDSTEIN,
          BRONSTEIN & KRON, P.A.

          By:  /s/ Lewis Stein, Esq.
          20 Commerce Boulevard, Suite E
          Succasunna, NJ  07876
          (973) 584-1400
          Fax (973) 584-8747
          nsgbk.office@verizon.net
          Attorneys for Plaintiffs

Date:  February 15, 2011