# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as *guardians ad litem* of the infant ROSIE GROSSBAUM,<br><br>　　　　　　Plaintiffs,<br><br>　-vs-<br><br>GENESIS GENETICS INSTITUTE, LLC, of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of New York, ABC CORPS. 1-10, JOHN DOES 1-10,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br>07-CV-1359 (GEB)(ES)<br><br>Oral Argument Requested |

## GENESIS GENETICS INSTITUTE, LLC AND MARK R. HUGHES'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Thomas E. Redburn, Jr.
Sarah Blaine
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: 973.597.2500
Fax: 973.597.2400

**TROWBRIDGE LAW FIRM, P.C.**
Stephen N. Leuchtman, Of Counsel
1380 East Jefferson Avenue
Detroit, Michigan 48207
313.259.6900, ext. 126
(*admitted pro hac vice*)

*Attorneys for Defendants Genesis Genetics Institute, LLC and Mark R. Hughes*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .............................................................................................................1

    I.    PLAINTIFFS HAVE ASSERTED WRONGFUL BIRTH AND WRONGFUL LIFE CLAIMS. ...................................................................1

    II.    MICHIGAN LAW -- WHICH REJECTS PLAINTIFFS' CAUSES OF ACTION -- GOVERNS PLAINTIFFS' CLAIMS. ..............4

    III.    THE WRONGFUL BIRTH CLAIMS ARE TIME BARRED. ................10

        A.    CPLR 214-a Applies To Plaintiffs' Wrongful Birth Claim Against Genesis. ...............................................................................10

        B.    New Jersey's Discovery Rule Bars Plaintiffs' Wrongful Birth Claim. ....................................................................................12

    IV.    PLAINTIFFS CANNOT PROVE THE CAUSATION AND STANDARD OF CARE ELEMENTS OF THEIR CLAIMS. .................13

CONCLUSION .......................................................................................................16

# TABLE OF AUTHORITIES

**Pages**

**CASES**

*Becker v. Schwartz*,
　386 N.E.2d 807 (N.Y. 1978)..................................................................................5, 10

*Berman v. Allan*,
　80 N.J. 421 (1979) ...............................................................................................3, 4, 7

*Bleiler v. Bodnar*,
　65 N.Y.2d 65 (N.Y. 1985) ..........................................................................................10

*Brocco v. Westchester Radiological Assocs., P.C.*,
　175 A.D.2d 903 (N.Y. App. Div. 1991) ......................................................................10

*Canesi v. Wilson*,
　158 N.J. 490 (1999) ..................................................................................................2, 3

*Gardner v. Pawliw*,
　150 N.J. 359 (1997) .....................................................................................................15

*Jorge v. New York Health & Hospitals Corp*,
　79 N.Y.2d 905 (1992) ...................................................................................................7

*Lopez v. Swyer*,
　62 N.J. 267 (1973) ........................................................................................................12

*Meath v. Mishrick*,
　120 A.D.2d 327 (N.Y. App. Div. 1986) ......................................................................10

*Price v. Benedict Community Health Center, Inc.*,
　No. 96-cv-1295, 1998 U.S. Dist. LEXIS 16748 (N.D.N.Y. Aug. 8, 1998) .......10

*Richner v. Smithkline Beecham Clinical Labs*,
　No. 96 Civ. 2523(SS), 1996 U.S. Dist. LEXIS 10819 (S.D.N.Y. July 29,
　1996) .............................................................................................................................11

*Rodriguez v. Saal*,
　43 A.D.3d 272 (App. Div. 2007)................................................................................11

*Weiner v. Lenox Hill Hospital*,
    88 N.Y.2d 784 (1996) ....................................................................................... 11

*Yanello v. Radiological Health Service*,
    110 A.D.2d 834 (N.Y. App. Div. 1985) ............................................................ 12

**STATUTES**

MCL § 600.2971 ........................................................................................................ 5

CPLR 214-a ...................................................................................................... passim

N.J.S.A. 2A:14-2 ...................................................................................................... 12

**RULES**

Rule 56.1 .................................................................................................................... 5

Defendants Genesis Genetics Institute, LLC and Mark R. Hughes (collectively "Genesis") offer this reply brief in further support of their January 20, 2011 Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Nothing in Plaintiffs' opposition brief or NYU's brief in "Response" to Genesis's Motion for Summary Judgment alters the conclusion that Genesis is entitled to judgment in its favor as a matter of law: Plaintiffs' claims against Genesis are wrongful birth and wrongful life claims, not negligence claims. New Jersey's choice-of-law rules dictate that Michigan (or, alternatively, New York) law governs Plaintiffs' claims against Genesis. Neither Michigan nor New York recognize wrongful life claims. Michigan also does not recognize wrongful birth claims, and Plaintiffs' wrongful birth claims are barred by the New York statute of limitations. Plaintiffs' and NYU's arguments that New Jersey law governs -- which essentially boil down to "the baby's birth in New Jersey is determinative" -- are totally inconsistent with New Jersey choice-of-law principles. Even if New Jersey law does apply, Plaintiffs' wrongful birth claims are time barred. Finally, Plaintiffs have failed to proffer sufficient evidence to establish causation and the proper standard of care.

## ARGUMENT

### I. PLAINTIFFS HAVE ASSERTED WRONGFUL BIRTH AND WRONGFUL LIFE CLAIMS.

Plaintiffs argue that their claims are for "negligence, with informed consent features" rather than for wrongful birth and wrongful life. *See* Pl. Br. at 12-16, 21. Plaintiffs do not dispute that nothing Genesis did in Michigan to cells that had been removed from embryos that remained in New York <u>caused</u> those embryos to develop CF genetic mutations they would not otherwise have had (or increased this

risk). Rather, Plaintiffs allege that "[t]he primary malpractice claim is that Defendant Genesis failed to use appropriate standards in testing the Plaintiffs' embryos for the presence of the cystic fibrosis compound heterozygous gene mutations, failed to advise of the fact that appropriate testing was available at another institution nearby and failed to advise of the increased risk of misdiagnosis based on the samplings that were provided to Genesis." Pl. Br. at 21-22.

In *Canesi v. Wilson*, 158 N.J. 490, 506 (1999), the New Jersey Supreme Court distinguished wrongful birth and wrongful life claims from informed consent-based negligence claims. It explained: "In an informed consent case, the plaintiff must additionally meet a two-pronged test of proximate causation: she must prove that the undisclosed risk actually materialized and that it was medically <u>caused by</u> the treatment. In a wrongful birth case, on the other hand, a plaintiff need not prove that the doctor's negligence was the medical cause of her child's birth defect." *Id.* (emphasis added).[1]

In *Canesi*, when the pregnant plaintiff learned that she was pregnant, she informed her doctor of her concern that a drug she had ingested might cause birth defects. Her doctor dismissed her concerns, and did not warn her that the drug had been associated with birth defects. The New Jersey Supreme Court dismissed her informed consent negligence claim, holding that this claim was properly foreclosed at summary judgment because plaintiffs could not establish that ingesting the drug was the medical cause of the child's birth defect. *Id.* at 507-508. Nevertheless, the *Canesi* court held that plaintiffs' <u>wrongful birth</u> claim survived summary judgment, because in a wrongful birth claim, "[t]he appropriate proximate cause question . . . is whether the doctors' inadequate disclosure deprived the parents of

---

[1] If New Jersey law applies, *Canesi* is controlling authority, and indeed, Genesis cited *Canesi* for this proposition in its opening brief. Opp. Br. at 12. Plaintiffs, however, did not even cite to – much less attempt to distinguish – *Canesi*.

their deeply personal right to decide for themselves whether to give birth to a child who could possibly be afflicted with a physical abnormality." *Id.* at 515. As in *Canesi*, the Grossbaums cannot establish that Genesis's alleged negligence medically caused Rosie Grossbaum's CF. As a matter of law, therefore, they cannot succeed on their negligence theory.

Ignoring *Canesi*, Plaintiffs argue that "[t]he issue is not whether Rosie Grossbaum would never have been born and the Plaintiffs would never have become the parents of a child with cystic fibrosis. The issue is whether Rosie Grossbaum, the product of the union of Chaya and Menachem Grossbaum, would have been a child born from an embryo free of the cystic fibrosis disease." Pl. Br. at 15. But Plaintiffs' argument highlights exactly why this is a wrongful birth case, and not a negligence case. If, as Plaintiffs argue, Genesis had properly diagnosed the embryo that became Rosie Grossbaum as being afflicted with CF, then the Grossbaums would not have implanted that embryo, and their child would have been born from a <u>different embryo</u> -- meaning that a <u>different child</u>, not the Infant Plaintiff Rosie Grossbaum, would have been born. That is the <u>sine qua non</u> of a wrongful birth or wrongful life claim.[2]

Plaintiffs' reliance on *Berman v. Allan* reinforces this point. Pl. Br. at 15. The *Berman* court distinguished birth-related medical malpractice actions – in which the alleged negligence caused (or at least increased the risk of) the bad outcome – from wrongful birth claims: "Here, defendants' alleged negligence neither caused the mongoloid condition nor increased the risk that such a condition

---

[2] Indeed, there is a 50% chance that the "different embryo" would have been male. That male child would not have been named "Rosie," thus demonstrating that Plaintiffs' claim is that but for defendants' negligence, <u>Rosie Grossbaum</u> would not have been born. Of course, even if that other child had been a healthy female that the Grossbaums named Rosie, she still would have been a different child with different (CF-unaffected) DNA.

would occur." Pl. Br. at 15 (citing *Berman v. Allan*, 80 N.J. 421, 427 (1979)). Similarly, Genesis's alleged negligence neither caused the CF condition nor increased the risk that such a condition would occur; rather, Plaintiffs claim that Genesis's alleged negligence led to the birth of Rosie Grossbaum <u>instead of some other (healthy) child</u>.

Although Plaintiffs correctly argue that the Michigan statute precluding wrongful birth and wrongful life claims does not cut off suits for traditional medical malpractice resulting in fetal injury, such as claims associated with negligently performed fetal surgery, the point is irrelevant. Pl. Br. at 14. The Michigan Legislature's Legislative Analysis of the statute makes clear that this exception is limited to cases where "the child's <u>injuries</u> (as opposed to his or her existence) would be a result of the negligence of the would-be defendant." (Michigan Legislative History, *see* Ex. 30 (emphasis added)). That is not what Plaintiffs contend here. Rosie Grossbaum's CF is not "a result of the negligence of the would-be defendant," but rather was caused by "the presence of the cystic fibrosis compound heterozygous gene mutations," which Plaintiffs allege Genesis negligently failed to <u>diagnose</u>, thereby allegedly depriving Plaintiffs of the choice to decide not to transfer the improperly-diagnosed embryo. In short, Plaintiffs claim that if Genesis had not been negligent, Rosie Grossbaum would not have been born. That is a claim for wrongful birth/wrongful life, which is plainly barred under Michigan law.

## II. MICHIGAN LAW -- WHICH REJECTS PLAINTIFFS' CAUSES OF ACTION -- GOVERNS PLAINTIFFS' CLAIMS.

No party disputes that New Jersey's choice-of-law rules govern this Court's determination of which state's substantive law applies to Plaintiffs' claims, nor is there any significant factual dispute related to the choice-of-law analysis (although the parties disagree as to the significance of the agreed-upon facts). Plaintiffs also

do not deny the consequences of applying each of the three potentially relevant states' laws to their claims against Genesis: if Michigan law applies, Plaintiffs' wrongful birth and wrongful life claims are barred by application of MCL § 600.2971;[3] if New York law applies, Plaintiffs' wrongful life claim is barred by *Becker v. Schwartz*, 386 N.E.2d 807 (N.Y. 1978), and Plaintiffs' wrongful birth claim is untimely pursuant to CPLR 214-a; and if New Jersey law applies, Plaintiffs' wrongful birth claim is untimely. Further, under New Jersey law, Plaintiffs' claims fail because they have not marshaled sufficient evidence to survive summary judgment on the elements of standard of care and causation.

The facts that are relevant to the choice of law analysis are not disputed: Plaintiffs were residents of Brooklyn, New York from August 22, 2002 until approximately August of 2005, five months after Rosie Grossbaum was born.[4] (RSUF ¶ 7.)[5] In March of 2004, Plaintiffs, who had been in contact with NYU's IVF program, placed a call to Genesis's Mark Hughes at Genesis's Michigan facility as required by Genesis's informed consent process. (RSUF ¶ 12.) As a

---

[3] NYU argues that Genesis has manufactured a false conflict because the Michigan statute, which prohibits civil actions for wrongful birth and wrongful life, has a limited exception for intentional or grossly negligent actions, such as those that violate the Michigan penal code. But Plaintiffs do not allege gross negligence by Genesis in their complaint or opposition papers, and certainly do not claim that Genesis ever violated the Michigan penal code. Within the bounds of the law, Plaintiffs are the masters of their complaint, and NYU's conclusory allegations of gross negligence, even if supported by the facts (which they are not), are irrelevant where Plaintiffs have not made such assertions themselves or substantiated them with actual evidence.

[4] NYU's attempt to manufacture a fact issue on this point is futile given that Plaintiffs concede that they remained New York residents until five months after Rosie Grossbaum's birth. Pl. Opp. Br. at 3; *cf.* NYU Resp. Br. at 11.

[5] References to "RSUF ¶ __" are to Genesis's Reply Statement of Undisputed Material Facts Pursuant To Rule 56.1, submitted herewith.

result of Plaintiffs' conversation with Hughes and decision to move forward with Dr. Liccardi, NYU, which was, of course, located in New York, ordered -- with Plaintiffs' knowledge and consent -- a diagnostic laboratory test (for pre-implantation genetic diagnosis of Plaintiffs' IVF-produced embryos) from Genesis, who performed the test at its Michigan laboratory. On July 19, 2004, Genesis faxed the test results from Michigan to NYU. (RSUF ¶ 23.) Later that day, an NYU physician transferred two embryos tested by Genesis into Chaya Grossbaum's uterus. (RSUF ¶ 25.) That concluded Genesis's involvement with Plaintiffs until Plaintiffs sued them on March 23, 2007. (*Id*.) As explained in Genesis's opening brief, these facts mandate applying the law of Michigan (or, alternatively, New York) to the claims against Genesis.[6]

Plaintiffs' choice of law analysis relies on immaterial facts. First, Plaintiffs argue that <u>Chaya</u> Grossbaum was born and raised in New Jersey. That fact (although undisputed) is irrelevant. Plaintiffs had been New York residents for two years prior to the PGD testing. Plaintiffs can no more argue that New Jersey law applies because Chaya Grossbaum was born and raised there than they can argue that Minnesota law applies because Menachem Grossbaum was born and raised in that state. Under New Jersey's choice-of-law rules, the only relevant question vis-à-vis Plaintiffs' residency is where they lived when they were

---

[6] NYU's suggestion that Genesis somehow has no right to challenge the application of New Jersey law at summary judgment is patently without merit. Genesis's decision not to contest personal jurisdiction is irrelevant to which state's law governs the claims against it. Moreover, choice-of-law could not be resolved at the pleadings stage because the relevant facts required development in discovery. Indeed, NYU knows full well that Genesis's position throughout this litigation has been that choice-of-law is an issue. For example, on March 11, 2009, Genesis's counsel noted on the record at a deposition "I am not sure . . . if New Jersey law controls this case." Supp. Blaine Decl. Ex. 36 at 71:15-16.

interacting with Genesis between March and July 2004, which was New York. Similarly, Plaintiffs' intent to move to New Jersey after their child's birth is not pertinent. Plaintiffs do not allege that they communicated this intent to Genesis, nor was Genesis (unlike NYU) informed of Plaintiffs' intent to engage a New Jersey midwifery practice. (RSUF ¶ 29.) Likewise, Plaintiffs' actual move to New Jersey <u>five months after</u> the birth is a fortuitous event that has no bearing on the choice-of-law analysis.

Plaintiffs and NYU allege that because Rosie Grossbaum was born in New Jersey, the injury occurred in New Jersey. They are wrong. Rosie Grossbaum's birth in New Jersey is, at most, the consequence of an alleged injury that occurred nine months earlier when Genesis rendered its PGD test results. The legally-cognizable injury in wrongful birth and wrongful life claims <u>is the parents' loss of their liberty interest in determining whether to commence or continue a specific pregnancy</u>, <u>not</u> the birth of the disabled child. Here, Plaintiffs suffered their alleged injury in New York on July 19, 2004, when Genesis and NYU allegedly "deprived [them] of the option to accept or reject a parental relationship with the child and thus caused them to experience mental and emotional anguish upon their realization that they had given birth to a child afflicted with" CF. *See Berman*, 80 N.J. at 433; *see also Jorge v. New York Health & Hospitals Corp*, 79 N.Y.2d 905 (1992). Rosie Grossbaum's birth in New Jersey is not itself a legally-cognizable injury under the Plaintiffs' tort theories, and is therefore not a material factor in the choice-of-law analysis. The relevant injury here occurred in New York, and the conduct by Genesis that allegedly caused that injury occurred in Michigan.

NYU also argues that New Jersey law governs because the "sequelae" to the injury occurred in New Jersey. The initial "sequelae" to the injury, however, occurred in New York. Plaintiffs first learned that Rosie Grossbaum had tested positive for a genetic disorder by a letter they received at their home in New York

shortly after her birth.  (RSUF ¶ 28.)  The next day, Chaya Grossbaum spoke by telephone from her New York home with Rosie Grossbaum's pediatrician who informed her that "they believed the issue was cystic fibrosis."  (*Id.*)  He explained "a little bit about what cystic fibrosis was" and referred her to a specialist.  (*Id.*)  Therefore, the Grossbaums' initial emotional distress was suffered in New York, <u>not</u> New Jersey.  Indeed, for five months following the diagnosis, the Plaintiffs continued to live in New York, so even though Rosie Grossbaum was treated in New Jersey, bills for that treatment were sent to Plaintiffs in New York.  Thus, even crediting NYU's argument that the location of the "sequelae" is relevant, that factor weighs in favor of choosing New York law, <u>not</u> New Jersey law.

NYU's arguments that New Jersey's law governs the claims against Genesis because "it is the state where plaintiffs and their child [currently] reside" and "it is the state which has the most direct and most substantial interest in the economic welfare of plaintiffs and their child" are similarly unavailing.  *See* NYU Br. at 2-3, Feb. 17, 2011.  While it is true that because the Grossbaums are now New Jersey residents, New Jersey might presently have an interest in their economic welfare, that interest cannot justify applying New Jersey law to Plaintiffs' tort claims against Genesis, where all contacts occurred in Michigan or New York.  The choice of what law to apply to a case cannot depend merely on a plaintiff's fortuitous, subsequent relocation to a state in which none of the conduct giving rise to the cause of action occurred.  New Jersey had no connection whatsoever to the factual complex that gave rise to the Plaintiffs' purported causes of action against Genesis.  That did not change when the Plaintiffs later decided to move there.

NYU also argues that the fact that the "conduct causing the injury" occurred in Michigan is irrelevant to the analysis.  *See* NYU Br. at 11, Feb. 17, 2011.  This argument, which NYU predicates on traditional torts where the parties are unknown to each other prior to the injury (*e.g.*, car accidents), is inapposite here,

where the parties were known to each other prior to the tort, and indeed, Plaintiffs sought out Genesis and <u>contracted</u> with it to provide PGD services to them. Where the tort arises from a voluntary contractual relationship between the parties, their reasonable expectations concerning which state's law might apply are highly relevant to the Court's choice-of-law analysis.

Furthermore, <u>contra</u> NYU, Michigan's interests are without question negatively impacted by applying New Jersey law in this case. NYU Br. at 13, Feb. 17, 2011. Michigan has determined as a matter of public policy that permitting wrongful birth and wrongful life suits is ethically abhorrent in all circumstances because the possibility of such causes of action resulting in the promotion of eugenics is impermissibly great. The motives of any particular plaintiff in bringing such claims are irrelevant. Permitting such a cause of action to go forward against a Michigan laboratory clearly offends that policy interest. Rather, it is New Jersey that has no proverbial dog in this hunt. Its only even arguable interest derives from the Plaintiffs' fortuitous decision to re-locate here after the events giving rise to their purported claims took place. That cannot be enough by itself to justify application of its law.[7]

---

[7] NYU's argument that Michigan "does not have the power to prohibit citizens of other states from bringing lawsuits in their home courts" is pure sophistry. NYU Br. at 11, Feb. 17, 2011. Michigan's Legislature undoubtedly has power to decide which tort causes of action it will recognize under its own state's law, and if Michigan law applies to this suit under New Jersey's choice-of-law principles, it is that law as determined by the Michigan's Legislature and courts that governs. Indeed, we note that New York also presumably has no power to "prohibit citizens of other states from bringing lawsuits in their home courts," but that has not stopped NYU from belatedly embracing the defenses to Plaintiffs' claims it might enjoy under New York law. *See id*. at 15-16.

### III. THE WRONGFUL BIRTH CLAIMS ARE TIME BARRED.

#### A. CPLR 214-a Applies To Plaintiffs' Wrongful Birth Claim Against Genesis.

Plaintiffs do not dispute that if New York law applies to their claims against Genesis, then CPLR 214-a bars their wrongful birth claim and *Becker v. Schwartz*, 386 N.E.2d 807 (N.Y. 1978), bars their wrongful life claim.  NYU, however, argues that Plaintiffs' wrongful birth claim against Genesis is <u>not</u> a medical malpractice claim vis-à-vis Genesis and, therefore, CPLR 214-a does not apply.  NYU is wrong.  Courts applying New York law have repeatedly held that CPLR 214-a applies to all defendants -- including nurses, hospitals, laboratories, pathologists, and other medical specialists -- in actions sounding in medical malpractice, which are defined as those actions in which the challenged conduct constitutes medical treatment <u>or bears a substantial relationship to the rendition of medical treatment by a licensed physician</u>.  *See, e.g., Price v. Benedict Community Health Center, Inc.*, No. 96-cv-1295, 1998 U.S. Dist. LEXIS 16748, at *10-11 (N.D.N.Y. Aug. 8, 1998) (holding that claims against "clinical laboratories," which are defined as facilities for the "microbiological, immunological, chemical, hematological, biophysical, cytological, pathological, <u>genetic</u>, or other examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease" are medical malpractice claims governed by CPLR 214-a) (emphasis added); *see also Bleiler v. Bodnar*, 65 N.Y.2d 65 (N.Y. 1985) (CPLR 214-a applies to claims against hospital and nurse); *Brocco v. Westchester Radiological Assocs., P.C.*, 175 A.D.2d 903 (N.Y. App. Div. 1991) (CPLR 214-a applies to claims against radiologists); *Meath v. Mishrick*, 120 A.D.2d 327 (N.Y. App. Div. 1986) (CPLR 214-a applies to claims against pathologists).

In *Richner v. Smithkline Beecham Clinical Labs*, No. 96 Civ. 2523(SS), 1996 U.S. Dist. LEXIS 10819 (S.D.N.Y. July 29, 1996), then Judge (now Justice) Sotomayor examined whether CPLR 214-a applied to claims that a laboratory improperly diagnosed a patient's tissue samples. The *Richner* court explained that "[w]hen the incompetence alleged is of a specialized medical nature and substantially related to medical *diagnosis* and treatment, the action it gives rise to is by definition one for medical malpractice rather than for simple negligence." *Id.* at *5 (internal quotations omitted; emphasis added by Judge Sotomayor). Here, the pre-implantation genetic <u>diagnosis</u> test Genesis performed upon orders from the Grossbaums' NYU doctors was of a specialized medical nature . . . and substantially related to Chaya Grossbaum's medical diagnosis and treatment. Therefore, there is no question that as against Genesis, this is a medical malpractice claim, and CPLR 214-a's 30-month limitations period applies. Because Genesis's alleged malpractice occurred on July 19, 2004 -- the date on which its laboratory test results were communicated to NYU and Plaintiffs -- but Plaintiffs did not file suit until March 23, 2007, more than 33 months later, Plaintiffs' wrongful birth claim against Genesis is time barred.

NYU's citations to *Rodriguez v. Saal*, 43 A.D.3d 272 (App. Div. 2007), and *Weiner v. Lenox Hill Hospital*, 88 N.Y.2d 784 (1996), are not to the contrary. In those cases, defendants were not engaged to provide services to particular patients in connection with medical diagnosis and treatment. As a result, those courts reasoned that the harm caused by defendants' allegedly negligent organ harvesting (*Rodriguez*) or blood collection (*Weiner*) sounded in negligence, not medical malpractice, "[b]ecause the challenged conduct was not linked to the medical treatment of a particular patient. . ." *Weiner*, 88 N.Y.2d at 786. Here, unlike in *Rodriguez* or *Weiner*, Genesis was expressly engaged by particular patients -- the Grossbaums -- to provide diagnostic testing of the Grossbaums' embryos.

Plaintiffs' claims against Genesis therefore sound in medical malpractice and are time barred pursuant to CPLR 214-a.[8]

### B. New Jersey's Discovery Rule Bars Plaintiffs' Wrongful Birth Claim.

Plaintiffs agree that under New Jersey law, wrongful birth causes of action are governed by a two year limitations period. *See* N.J.S.A. 2A:14-2. Plaintiffs also agree that the *Lopez* rule -- which only tolls the statute until the date on which the Plaintiffs could have learned of the basis for the claims -- applies to wrongful birth claims. *Lopez v. Swyer*, 62 N.J. 267 (1973); Pl. Br. at 34-36. Here, Plaintiffs could have learned of Rosie Grossbaum's CF-positive status by the 16th week of pregnancy by following through on their written agreement with Genesis to undergo CVS or amnio. They did not, and that decision has legal consequences for Plaintiffs. The statute of limitations began to run in October 2004, the date by which CVS or amnio testing should have occurred, because that is the date on which Plaintiffs could (and should) have learned of Rosie Grossbaum's CF. Irrespective of why Plaintiffs chose not to have the testing, as a matter of law they were imputed with constructive knowledge of Rosie Grossbaum's CF-affected status as of that date. Since they did not file suit until March 23, 2007, more than

---

[8] New York's continuous treatment doctrine precludes an award of summary judgment in NYU's favor on statute of limitations grounds because NYU did not transfer Chaya Grossbaum's records to her obstetrical care provider until November 19, 2004, which was less than 30 months before Plaintiffs filed suit. (RSUF ¶ 29.) Genesis, however, is not subject to the continuous treatment doctrine which "generally does not apply to an independent laboratory since such a laboratory generally does not have a continuing or other relevant relationship with the patient, nor, as an independent contractor, does it act as the agent for the treating doctor or otherwise act in relevant association with the physician." *Yanello v. Radiological Health Service*, 110 A.D.2d 834 (N.Y. App. Div. 1985).

two years after they could have discovered the basis for their claims, the Grossbaums' wrongful birth claim is time barred.

### IV. PLAINTIFFS CANNOT PROVE THE CAUSATION AND STANDARD OF CARE ELEMENTS OF THEIR CLAIMS.

Genesis's opening brief argues that Plaintiffs cannot establish that Rosie Grossbaum developed from an embryo tested by Genesis rather than one created by Plaintiffs through sexual intercourse. Plaintiffs cannot establish the causation element of their claim because the evidence would require a jury to impermissibly speculate as to whether Rosie Grossbaum developed from a Genesis-tested embryo or a naturally created embryo. If she was born from a naturally created embryo, then Plaintiffs cannot establish that Genesis deprived them of their choice to begin a pregnancy with a CF-affected child and Genesis is entitled to summary judgment.

Plaintiffs argue that they followed NYU's instructions concerning whether to have intercourse during the IVF cycle;[9] that Genesis did not provide expert testimony criticizing Plaintiffs' conduct; that Genesis's motion misrepresents Chaya Grossbaum's testimony regarding the timing of sexual intercourse; and that Chaya Grossbaum could not have gotten pregnant naturally during her cycle.

None of Plaintiffs' arguments hold water. First, whether Plaintiffs followed NYU's instructions concerning intercourse is irrelevant to whether Rosie

---

[9] On the facts at bar, NYU's failure to instruct the Grossbaums to abstain from intercourse while on fertility medications constituted actionable negligence. When IVF is used to treat infertility, there is no need for the couple to abstain from intercourse that might cause a pregnancy -- after all, whether a pregnancy results from the IVF procedure or from the couple's intercourse, the desired result -- a pregnancy -- will have been achieved. However, it is critical that egg donors or fertile couples seeking PGD to prevent birth defects abstain from intercourse while taking fertility medications to prevent naturally occurring pregnancies. (RSUF ¶ 20.) NYU's failure to instruct the Grossbaums on this point was actionable negligence that forms a basis for Genesis's cross-claim against NYU.

-13-

Grossbaum developed from a Genesis-tested embryo; the relevant question is whether Plaintiffs have proffered evidence that Rosie Grossbaum developed from a Genesis-tested embryo rather than from the Grossbaums' July 2004 intercourse while Chaya Grossbaum was taking fertility medications. They have not.

Furthermore, Genesis did provide expert evidence criticizing Plaintiffs' conduct. Genesis's outside liability expert, Dr. Kangpu Xu, opined "[w]ith this in mind, it is speculation to say that the bad result in this case was caused by the implantation of an affected embryo, as opposed to any of a number of other causes, including intercourse or unprotected sex by the Grossbaums." (RSUF ¶ 20.) Indeed, even Plaintiffs' expert, Dr. Charles Strom, testified that he could not rule out that the pregnancy in this case developed from "a non-implanted embryo." (*Id.*)

Plaintiffs' assertion that Genesis misrepresented Chaya Grossbaum's testimony regarding the timing of the couple's intercourse is unsupported. Chaya Grossbaum states that the couple followed NYU's instructions regarding intercourse, and that she does not recall when they were instructed to abstain. The July 14, 2004 IVF Semen Collection Record indicates that the Grossbaums had intercourse on July 14, 2004 at 7:45 a.m. and that they had abstained for two days prior, indicating that they also had intercourse on July 12, 2004. (RSUF ¶ 17.) This comports with Chaya Grossbaum's testimony that the Grossbaums used spermicide for intercourse other than on the morning of the egg retrieval (when they used a sterilized collection condom). (RSUF ¶ 18.)

Similarly, Plaintiffs' arguments that Chaya Grossbaum could not have gotten pregnant during her IVF cycle are nonsensical. Although during the egg retrieval procedure, the physician attempts to remove all of the eggs the woman has produced, this process is far from 100% accurate, and, indeed, the risk of multiple pregnancies enhanced by use of fertility medications during the IVF cycle is the primary reason that egg donors are cautioned not to have intercourse during

-14-

the IVF cycle (RSUF ¶ 20.) Similarly, even the most sensitive pregnancy tests cannot detect very early pregnancies. That is why women undergoing IVF do not learn whether a pregnancy has been established until approximately 10 days after embryo transfer. Plaintiffs' failure to meet their burden on causation mandates entry of summary judgment in favor of Genesis.

In a last ditch attempt to avoid the consequences of Genesis's causation analysis, Plaintiffs argue that the "increased risk" causation standard set forth in *Gardner v. Pawliw*, 150 N.J. 359 (1997), governs their claim. *See* Pl. Br. at 20-21. In *Gardner*, which is <u>not</u> a wrongful birth case, the pregnant plaintiff reported symptoms of fetal distress shortly before her due date. *Id.* at 365. Her doctor dismissed her concerns and "did not perform any other diagnostic tests." *Id.* Within a week, the fetus died in utero. *Id.* at 366. The Court held that ". . . the plaintiff must demonstrate to a reasonable degree of medical probability that the failure to give the test <u>increased</u> the risk of harm from the preexistent condition." *Id.* at 387. The *Gardner* plaintiffs could proceed on an "increased risk" theory because, they alleged, had diagnostic tests been ordered, the findings would have resulted in an immediate caesarean delivery which would have increased the likelihood of the baby's survival. Here, unlike in *Gardner*, the Grossbaums cannot establish that Genesis's actions <u>increased</u> the risk that <u>Rosie Grossbaum</u> would develop CF; that is, to succeed on the causation standard set forth in *Gardner*, the Grossbaums would have to establish that Genesis's actions caused Rosie Grossbaum's CF (or made it worse). There is simply no evidence to support such a claim. Therefore, *Gardner's* increased risk standard is inapplicable.

Finally, for the reasons set forth in Genesis's Motion to Strike Plaintiffs' Experts reply brief, Plaintiffs have failed to proffer competent expert testimony sufficient to satisfy their burden of establishing the applicable standard of care.

-15-

## CONCLUSION

For the foregoing reasons and those set forth in Genesis's opening brief, the Court should grant the Motion for Summary Judgment filed by Genesis Genetics Institute, LLC and Mark R. Hughes in its entirety, and dismiss these defendants from the litigation.

Respectfully submitted,

**TROWBRIDGE LAW FIRM, P.C.**
Stephen N. Leuchtman, Of Counsel
1380 East Jefferson Avenue
Detroit, Michigan  48207
313.259.6900, ext. 126

-and-

Thomas E. Redburn, Jr.
Sarah Blaine
**LOWENSTEIN SANDLER PC**
Attorneys At Law
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500

        s/     Thomas E. Redburn, Jr.
*Attorneys for Defendants Genesis Genetics Institute, LLC and Mark R. Hughes*