02981.00101-RSE

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
425 EAGLE ROCK AVENUE, SUITE 302
ROSELAND, NJ 07068
(973) 618-4100
ATTORNEYS FOR DEFENDANTS
New York University School of Medicine and New York University Hospitals Center

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAYA GROSSBAUM and MENACHEM GROSSBAUM, her spouse, individually and as guardians ad litem of the infant, ROSIE GROSSBAUM,<br><br>        Plaintiffs,<br><br>v.<br><br>GENESIS GENETICS INSTITUTE, LLC of the State of Michigan, MARK R. HUGHES, NEW YORK UNIVERSITY SCHOOL OF MEDICINE and NEW YORK UNIVERSITY HOSPITALS CENTER, both corporations in the State of New York, ABC CORPS. 1-10, and JOHN DOES 1-10,<br><br>        Defendants. | Hon. Esther Salas<br><br>Civil Action No. 07-1359 (ES)<br><br>**SUR-REPLY BRIEF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

**SUR-REPLY BRIEF OF DEFENDANTS NEW YORK UNIVERSITY SCHOOL OF MEDICINE AND NEW YORK UNIVERSITY HOSPITALS CENTER IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. plaintiffs concede that their claims against the nyu defendants are time-barred ................. 1

II. plaintiffs cannot prove the causation element of their wrongful life claim against the nyu defendants ............................................................................................................................ 1

III. conclusion ........................................................................................................................... 5

TABLE OF CITATIONS ................................................................................................................ ii

I. PLAINTIFFS CONCEDE THAT THEIR CLAIMS AGAINST THE NYU DEFENDANTS ARE TIME-BARRED ............................................................................. 1

II. PLAINTIFFS CANNOT PROVE THE CAUSATION ELEMENT OF THEIR WRONGFUL LIFE CLAIM AGAINST THE NYU DEFENDANTS .............................. 1

III. CONCLUSION .................................................................................................................... 5

## TABLE OF CITATIONS

**Page**

**Cases**
*Becker v. Schwartz*, 46 N.Y.2d 401, 386 N.E.2d 807 (1978) .......................................................... 1
*DeChico v Northern Westchester Hospital Center*, 73 A.D.3d 838, 900 N.Y.S.2d 743 (App. Div. 2010) ............................................................................................................................................. 2
*Gardner v. Pawliw*, 150 N.J. 359, 696 A.2d 599 (1997) ................................................................. 4
*Rockefeller v. Moront*, 81 N.Y.2d 560, 618 N.E.2d 119 (1993)..................................................... 2
*Verdicchio v. Ricca*, 179 N.J. 1 (2004) ........................................................................................... 4

**Statutes**
CPLR § 214-a ..................................................................................................................................... 1

I. **PLAINTIFFS CONCEDE THAT THEIR CLAIMS AGAINST THE NYU DEFENDANTS ARE TIME-BARRED**

Although plaintiffs' supplemental brief disagrees with this Court's holding that New York law controls the resolution plaintiffs' claims in this case, plaintiffs' brief concedes that, under New York law, their claims are barred by the New York medical malpractice statute of limitations.[1] That concession establishes that the plaintiffs' last contact with the NYU defendants pertaining to the implantation of the embryos occurred more than two years and six months before the plaintiffs commenced this action. Because plaintiffs ceased treating with the NYU defendants more than two years and six months before plaintiffs commenced this action, the NYU defendants are entitled to summary judgment under the New York statute of limitations governing medical malpractice actions, CPLR § 214-a.

II. **PLAINTIFFS CANNOT PROVE THE CAUSATION ELEMENT OF THEIR WRONGFUL LIFE CLAIM AGAINST THE NYU DEFENDANTS**

In the context of this case, the only claim recognized by New York law is a wrongful life claim by the parents limited to the extraordinary medical expenses that they have reasonably incurred or might incur until their daughter reaches the age of 18, not plaintiffs' claims for emotional distress, claims for expenses beyond their daughter's 18th birthday, or claims by or for their daughter. *Becker v. Schwartz*, 46 N.Y.2d 401, 410-415, 386 N.E.2d 807, 811-814 (1978); *DeChico v Northern Westchester Hospital Center*, 73 A.D.3d 838, 840, 900 N.Y.S.2d 743, 745

---

[1] "Since this Court has in its memorandum opinion concluded that choice of law analysis directs that the law of New York controls this litigation and requires dismissal of Plaintiffs' suit with respect to Genesis Genetics, Plaintiffs are constrained to make no further argument in this Court to the contrary, notwithstanding the comment in NYU's reply brief, and thus would expect the Court consistent with its findings of fact and legal determinations to likewise bar the claims against NYU." (Plaintiffs' supplemental brief, p. 2.)

(App. Div. 2010). See also, CPLR 105 [j] (age of majority); *Rockefeller v. Moront*, 81 N.Y.2d 560, 564 n. 2, 618 N.E.2d 119, 121 n. 2 (1993) (same).[2]

The injury involved in the adult plaintiffs' limited wrongful life claim is "the parents' loss of reproductive choice." (6/10/11 District Court Opinion ("Opinion"), p. 12; citations omitted.) New York law requires the parents to prove causation of that injury under the traditional tort law concept of "but for" proximate cause. *Becker*, *supra*, 46 N.Y.2d at 410, 412-413, 386 N.E.2d at 811, 813 (describing causation in "proximate cause" and "but for" terms); *DeChico*, *supra*, 73 A.D.3d at 840, 900 N.Y.S.2d at 745 (same).

Under the "but for" proximate cause standard, plaintiffs cannot prove their restricted wrongful life claim, because the record in this case conclusively establishes that plaintiffs based their decision to proceed, both at the beginning of the IVF/PGD processes and at the time of implantation of the embryos, on information provided to them by Genesis, not on information provided by the NYU defendants.

- In their responses to the NYU defendants' statement of facts, plaintiffs admitted that they decided to go forward with the IVF/PGD process based upon their discussion with Dr. Hughes and his assurance that the success rate would be 97-98%, with a risk rate of 2-3%. (NYU Exhibit B, p. 69-72, 82, 120-122, 141-142, 213-214; NYU Exhibit C, p. 31-32, 36-39, 48, 69-70; NYU statement of facts/plaintiffs' response ¶ 19.)

- In paragraph 17 of their response to the statement of facts, plaintiffs assert that they "were misled by Dr. Hughes into believing that the risk was minimal, even lower than the claimed 2 to 3 percent."

- Plaintiffs also admitted that, if Mrs. Grossbaum had been told that the success rate was less than 97-98% and the risk higher than 2-3%, but still far better than the inherent 25%

---

[2] The Court should grant summary judgment and dismiss all of the plaintiffs' claims other than the adult plaintiffs' claim for wrongful life limited to the extraordinary medical expenses that they have reasonably incurred or might incur until their daughter reaches the age of 18.

2

- risk, she probably would <u>not</u> have had the embryos implanted.  (NYU Exhibit B, p. 213-214; NYU statement of facts/plaintiffs' response ¶ 20.)
- Plaintiffs also admitted that Mr. Grossbaum was guided by and followed his wife's decisions regarding the process.  (NYU Exhibit C, p. 36-39; NYU statement of facts/plaintiffs' response ¶ 21.)
- In their opposing brief, plaintiffs conceded that if they "were told that there was a substantial risk greater than **what Dr. Hughes had told them**, they would have not likely gone through with the pregnancy."  (Plaintiffs' opposition brief, p. 24-25; emphasis added.)  Plaintiffs also conceded that they "clearly understood that they had a minimum if any risk of a cystic fibrosis **based on Dr. Hughes' communication**," and that they would probably have not implanted the embryos if Genesis' diagnosis of the embryos indicated a higher risk of developing a CF-affected child.  (Plaintiffs' brief, p. 24-25; emphasis added.)
- Plaintiffs' expert Dr. Strom confirmed at his deposition that the Genesis PGD report indicated that the "Carrier at worst" embryos, <u>including</u> <u>embryo 7</u>, were genetically eligible for implantation, as was embryo 8, one of the two "Carrier maternal - -OK for transfer" embryos involved in this case.  (NYU Exhibit I, Deposition of Charles Strom, p. 124; NYU statement of facts/plaintiffs' response ¶ 41.)
- Plaintiffs' other expert Dr. Cutting admitted at his deposition that the "call" section of the Genesis PGD report provided Genesis/Hughes' genetic evaluation of the embryos; that "carrier at worst" meant that **"the worst this could be is a carrier,"** a meaning which was "**obvious**"; and that the only mention of ADO and "possibly affected" was with respect to embryo 2.  (NYU Exhibit L, p. 70, 76-77, 218-219, emphasis added.)
- Plaintiffs understood that Dr. Hughes's genetic evaluation indicated that the embryos were CF carriers, but not CF-affected, just like the plaintiffs themselves were CF carriers but not affected, and they consented to the implantation of embryos 7 and 8.  (Exhibit B, 154-156; Exhibit C, p. 58-61.)

The only acceptable conclusion from the record is that the birth of plaintiffs' CF-affected child stemmed from the information provided by Genesis and the inherent risk of misdiagnosis in PGD testing (which was always known by the plaintiffs to be a potential result), rather than from

3

a lack of understanding or a faulty acceptance or explanation by Dr. Licciardi of the evaluation actually conveyed by the Genesis/Hughes' PGD report, that embryos 7 and 8 were genetically suitable for implantation.

Furthermore, plaintiffs cannot satisfy their burden of proving that their child developed from embryo 7, the "Carrier at worst" embryo which plaintiffs contend should not have been implanted, rather than from embryo 8, the "Carrier maternal - -OK for transfer" whose implantation plaintiffs do not criticize.

If, as plaintiffs contend, the testimony of Drs. Grifo and Pang that plaintiffs' daughter grew from embryo 8 "is challenged by the testimony of Plaintiffs' expert, Dr. Charles Strom, who expressly disclaimed [that] science allows one to determine which of two embryos resulted in the pregnancy that brought forth the cystic fibrosis baby" (plaintiffs' opposition brief, p. 25), there is more to the summary judgment record than a run-of-the-mill conflict between the defendants' experts and the plaintiffs' expert. Because plaintiffs have the burden of proof, the testimony of their expert precludes a jury's finding that the baby grew from embryo 7. Consequently, there is no basis to allow a jury to consider plaintiffs' claim against the NYU defendants for implanting embryo 7 under the New York "but for" proximate causation standard.

Plaintiffs cannot avoid the dismissal of their claim against the NYU defendants under New York law by resorting to inapplicable New Jersey law and its far less exacting "increased risk of harm" causation standard under *Gardner v. Pawliw*, 150 N.J. 359 (1997), and *Verdicchio v. Ricca*, 179 N.J. 1 (2004).

Under *Gardner*, which involved the failure of a physician to perform a diagnostic test, and under *Verdicchio*, which also involved a physician's failure to diagnose, the far more lenient "increased risk" causation standard may be applicable in lieu of the stringent "but for" causation

standard when the claim involves a pre-existing condition and is brought against a defendant whose duty it was to protect the patient from the further development of that condition. *Gardner*, 150 N.J. at 376-377.

However, the rationale of the "increased risk" causation standard does not fit the NYU defendants in this case. As this Court recognized in a related context "it is undisputed that Genesis Defendants provided genetic diagnoses of Plaintiffs' embryos, with the understanding that Plaintiffs would rely on their diagnoses for purposes of conceiving a child that would not be afflicted with CF….Genesis Defendants performed specialized diagnostic tests on the Grossbaums' embryos for purposes of determining whether those embryos could be implanted. Genesis Defendants thus played an integral part in the medical reproductive treatment provided to Plaintiffs, because, unlike NYU Defendants' IVF and implantation services, their PGD tests were the only part of the process that had the potential of diagnosing flaws with embryos prior to pregnancy." (Opinion, p. 21-22; citations omitted.)

### III. CONCLUSION

The Court should grant the NYU defendants' motion for summary judgment and dismiss plaintiffs' claims on both the statute of limitations and the causation issues.

    Respectfully submitted,

    MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN

    By: *R. Scott Eichhorn, Esquire*
    425 EAGLE ROCK AVENUE, SUITE 302
    ROSELAND, NJ  07068
    DIRECT DIAL TELEPHONE:  (973) 618-4154
    FAX:  (973) 618-0685
    EMAIL:  rseichhorn@mdwcg.com
    ATTORNEY FOR DEFENDANTS,
    NEW YORK UNIVERSITY SCHOOL OF MEDICINE
    and

DATED:  July 7, 2011    NEW YORK UNIVERSITY HOSPITALS CENTER